UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

WILLIAM DURLING, CHRIS
BELLASPICA, TOM WOLFF, MICHAEL
MORRIS, and RICHARD SOBOL, for
themselves and all others similarly situated,

                Plaintiffs,

      -against-

PAPA JOHN'S INTERNATIONAL, INC.,

           Defendant.

-------------------------------------------------------- X

Case No. 7:16-cv-03592

**ANSWER TO CLASS/COLLECTIVE
ACTION COMPLAINT**

Defendant Papa John's International, Inc. ("Papa John's"), by and through its attorneys,

Seyfarth Shaw LLP, and for its Answer to Plaintiffs' Class/Collective Complaint ("Complaint")

state as follows:

## NATURE OF THE ACTION

## COMPLAINT ¶1:

    This action seeks to redress Defendant's systematic policy and practice of paying its
delivery drivers hourly wages that are well below the minimum wage mandated by the Fair
Labor Standards Act of 1938, 29 U.S.C. §§201 *et seq.* ("FLSA"), the New York Labor Law,
N.Y. Lab. Law, Art. 19 § 650 *et seq.*, ("NYLL"), the Pennsylvania Minimum Wage Act of 1968,
43 P.S. §§ 333.101, *et seq.* ("PMWA"), the New Jersey Wage and Hour Law, N.J.S.A.
34:11¬56a, *et seq.* (NJWHL) and the Delaware Minimum Wage Act, 19 Del. C. § 901 *et seq.*
("DMWA").

## ANSWER:

    Papa John's admits that Plaintiffs bring their claims as stated but denies that Papa John's
engaged in any of the conduct or practices alleged.  Papa John's denies the remaining allegations
in Paragraph 1.

## COMPLAINT ¶2:

    The FLSA, NYLL, PMWA, NJWHL and DMWA, like virtually all minimum wage laws,
require employers to provide their employees with sufficient reimbursements for employment-
related expenses ("kickbacks") to ensure that employees' hourly wages equal or exceed the
required minimum wage after such expenses are counted against the hourly wages. However,

Defendant systematically under-reimbursed its delivery drivers for vehicular wear and tear, gas and other driving-related expenses, thereby ensuring that all of Defendant's delivery drivers are effectively paid well below the minimum wage.

**ANSWER:**

Papa John's admits that the FLSA, NYLL, PMWA and DMWA require employers to compensate employees minimum wage, but denies the remaining allegations in Paragraph 2.

**COMPLAINT ¶3:**

PJI has tried to shield itself from liability for its blatant minimum wage violations by operating through franchisees. But PJI, which operates numerous corporate-owned Papa John's stores, is also a joint employer of all of the delivery drivers at the franchised Papa John's stores and devised and disseminates the policies and practices that cause drivers at both corporate and franchise stores to be uniformly under-reimbursed. Indeed, PJI directly profits by unlawfully driving down costs associated with paying drivers because doing so increases net income at the corporate stores and increases the fees it obtains from franchises, because those fees are tied to overall franchisee profits.

**ANSWER:**

Papa John's admits that its affiliates operate numerous corporate-owned Papa John's stores, but denies the remaining allegations in Paragraph 3.

**COMPLAINT ¶4:**

Plaintiffs bring this claim as a collective action pursuant to 29 U.S.C. §216(b) for all delivery drivers Defendant employed during the maximum limitations period.

**ANSWER:**

Papa John's admits that Plaintiffs purport to bring claims on behalf of a collective action. Papa John's denies that class or collective action treatment is appropriate or that the alleged collective action can be certified. Papa John's denies the remaining allegations in Paragraph 4.

**COMPLAINT ¶5:**

Plaintiff Durling brings his NYLL claim as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed at a Papa John's store in New York as delivery drivers during the maximum allowable limitations period.

**ANSWER:**

Papa John's admits that Plaintiff Durling purports to bring his NYLL claim on behalf of a class. Papa John's denies that class action treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 5.

**COMPLAINT ¶6:**

Plaintiff Bellaspica brings his PMWA claim as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed at a Papa John's store in Pennsylvania as delivery drivers during the maximum allowable limitations period.

**ANSWER:**

Papa John's admits that Plaintiff Bellaspica purports to bring his PMWA claim on behalf of a class.  Papa John's denies that class action treatment is appropriate or that the alleged class can be certified.  Papa John's denies the remaining allegations in Paragraph 6.

**COMPLAINT ¶7:**

Plaintiff Wolff brings his NJWHL claim as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed at a Papa John's store in New Jersey as delivery drivers during the maximum allowable limitations period.

**ANSWER:**

Papa John's admits that Plaintiff Wolff purports to bring his NJWHL claim on behalf of a class.  Papa John's denies that class action treatment is appropriate or that the alleged class can be certified.  Papa John's denies the remaining allegations in Paragraph 7.

**COMPLAINT ¶8:**

Plaintiff Morris brings his DMWA claim as a class action pursuant to Fed. R. Civ. P. 23 for all persons employed at a Papa John's store in Delaware as delivery drivers during the maximum allowable limitations period.

**ANSWER:**

Papa John's admits that Plaintiff Morris purports to bring his DMWA claim on behalf of a class.  Papa John's denies that class action treatment is appropriate or that the alleged class can be certified.  Papa John's denies the remaining allegations in Paragraph 8.

<u>**JURISDICTION AND VENUE**</u>

**COMPLAINT ¶9:**

This court has jurisdiction of this action under the FLSA, 29 U.S.C. § 216(b), and under 28 U.S.C. § 1331 (federal question jurisdiction).

**ANSWER:**

Papa John's admits the allegations in Paragraph 9.

**COMPLAINT ¶10:**

Jurisdiction is also authorized pursuant to 28 U.S.C. § 1332(d), as minimal diversity exists, there are more than 100 class members, and the amount in controversy exceeds $5,000,000.00.

**ANSWER:**

Papa John's admits the allegations in Paragraph 10.

**COMPLAINT ¶11:**

Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because Mr. Durling resides in this District, worked for Defendant in this District and suffered the losses at issue in this District.  Defendant also is a joint employer and operator who is liable for operations at multiple Papa John's pizza stores in this District; Defendant maintains significant business contacts within this District; and Defendant engaged in the unlawful conduct alleged in this Complaint within this District.

**ANSWER:**

Papa John's denies the allegations in Paragraph 11.

## THE PARTIES

**COMPLAINT ¶12:**

Mr. Durling is an adult resident of Poughkeepsie, New York, in Dutchess County, who worked as a part-time delivery driver for a Papa John's Pizza store at 187 Church Street in Poughkeepsie, New York from January 2015 to June 2015.

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12.

**COMPLAINT ¶13:**

Mr. Bellaspica is an adult resident of Levittown, Pennsylvania, in Bucks County, who worked as a full-time delivery driver for a Papa John's Pizza store on Street Road in Bensalem, Pennsylvania from December 2011 to September 2012.

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13.

27665971v.3

**COMPLAINT ¶14:**

Mr. Wolff is an adult resident of Medford, New Jersey, in Burlington County, who worked as a part-time delivery driver for a Papa John's Pizza store at 617 Sokes Road in Medford, New Jersey from September 2012 through October, 2014.

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 14.

**COMPLAINT ¶15:**

Mr. Morris is an adult resident of Middletown, Delaware, in New Castle County, who worked as a full-time delivery driver for a Papa John's Pizza store at 386 Main Street in Middletown, Delaware from approximately December 2011 through January 2013.

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15.

**COMPLAINT ¶16:**

Mr. Sobol is an adult resident of Louisville, Kentucky, in Jefferson County, who has worked as a full-time delivery driver for a corporate-owned Papa John's Pizza store at 5363 Dixie Highway in Louisville, Kentucky from 2011 to present.

**ANSWER:**

Papa John's admits that Plaintiff Sobol worked as a delivery driver for a corporate-owned Papa John's Pizza store at 5363 Dixie Highway in Louisville, Kentucky from approximately October 2012 to present. Papa John's denies the remaining allegations in Paragraph 16.

**COMPLAINT ¶17:**

PJI employs more than 21,500 employees, as either a direct or joint employer, and operates more than 4,600 pizza stores worldwide. PJI directly operates the store where Plaintiff Sobol works, and jointly operates the stores where Plaintiffs Durling, Bellaspica, Wolff and Morris have worked. PJI is a Delaware corporation and maintains its corporate headquarters and principal place of business in Jeffersontown, Kentucky. Throughout the relevant period, PJI devised, implemented and accomplished the improper acts and practices described herein.

**ANSWER:**

Papa John's admits it is a Delaware corporation, maintains its corporate headquarters and principal place of business in Jeffersontown, Kentucky. Papa John's denies the remaining allegations in Paragraph 17.

## BACKGROUND FACTS

### JOINT EMPLOYMENT AND VICARIOUS LIABILITY ALLEGATIONS

**COMPLAINT ¶18:**

In a callous attempt to reap profits from Papa John's stores by under-reimbursing delivery drivers while, at the same time, attempting to shield itself from liability from wage and hour lawsuits brought by those drivers, PJI has adopted a policy and practice of selling certain of its stores to local owners as a franchise. This franchise relationship is little more than a façade, the purpose of which is to help PJI avoid liability for its unlawful wage practices.

**ANSWER:**

Papa John's denies the allegations in Paragraph 18.

**COMPLAINT ¶19:**

Indeed, PJI obtains significant profits from all Papa John's restaurants, including the franchise stores. PJI receives fees and royalties that are directly tied to the profits its franchises make, so the less its franchisees pay to their delivery drivers, the more money PJI's makes (to the direct detriment of the drivers). Therefore, PJI has a direct interest in its franchisees adopting its unlawful driver reimbursement policies.

**ANSWER:**

Papa John's denies the allegations in Paragraph 19.

**COMPLAINT ¶20:**

Moreover, all Papa John's franchise stores hold themselves out to the public and to their delivery drivers as being "Papa Johns." Deliveries and orders are all performed through PJI's website and/or its uniform order and delivery system and there is no functional difference, either to the public or to delivery drivers, between a franchise store and a corporate store. Franchises are also required to purchase dough and tomato sauce directly from PJI, and they must purchase all of the other ingredients either from PJI or from an approved source.

**ANSWER:**

Papa John's admits that PJI (and/or its affiliates) and its franchisees use a common point-of-sale system in the United States that, among other things, tracks certain online order and delivery information and relays some of that information to franchisees. Papa John's further admits that franchisees are required to purchase Papa John's proprietary dough and tomato sauce directly from PJI. Papa John's denies the remaining allegations in Paragraph 20.

**COMPLAINT ¶21:**

Throughout the Class Period, PJI was actively and directly engaged in the day-to-day operation and management of all Papa John's restaurants, including those where Plaintiffs worked.  PJI supervises, controls, manages and/or assists all individuals and business entities who own, operate, supervise, control and/or manage Papa John's restaurants, both corporate and franchise.

**ANSWER:**

Papa John's denies the allegations in Paragraph 21.

**COMPLAINT ¶22:**

PJI establishes standardized procedures for hiring delivery drivers.  Franchisees receive a "Papa John's Franchise Team Member Handbook" ("Handbook") drafted and provided by PJI, and franchisees are instructed to operate in accordance with the rules and to follow directions provided in the Handbook with respect to the hiring, training and supervising their delivery drivers.  When employees, including Plaintiffs, are hired by Papa John's franchisees, their employers tell them they work for Papa John's.  Plaintiffs all understood themselves to be Papa John's employees.

**ANSWER:**

Papa John's denies the allegations in Paragraph 22.

**COMPLAINT ¶23:**

Defendant also advertises itself as the employer in job postings for delivery driver positions at franchisee-owned restaurants.  When delivery drivers apply for job postings online with PJI, they are often directed to interviews with Papa John's franchisees.

**ANSWER:**

Papa John's denies the allegations in Paragraph 23.

**COMPLAINT ¶24:**

Defendant's delivery drivers also perform their jobs in accordance with standard policies, systems, procedures and requirements that PJI promulgated.  PJI's Handbook directed franchisees on how to classify their various workers, including delivery drivers, and provided the tasks and responsibilities for each of those various classifications.

**ANSWER:**

Papa John's denies the allegations in Paragraph 24.

27665971v.3

## COMPLAINT ¶25:

Moreover, PJI promulgates the policy by which delivery drivers are under-reimbursed. PJI instructs its franchises to pay its drivers at or near the tipped minimum wage applicable in each state or local area, and it instructs its franchises as to the amount to reimburse drivers for each delivery.

## ANSWER:

Papa John's denies the allegations in Paragraph 25.

## COMPLAINT ¶26:

That PJI controls the manner in which franchisees reimburse delivery drivers is demonstrated by the fact that all of the Papa John's franchises at which Plaintiffs were employed follow the same policy as Papa John's corporate stores.  This is no mere coincidence.

## ANSWER:

Papa John's denies the allegations in Paragraph 26.

## COMPLAINT ¶27:

Thus, at the end of each pay period, Defendant's delivery drivers receive wages that were determined by PJI policies, systems, and procedures.  Defendant specifically directed franchisees to reimburse delivery drivers at the rates at issue in this action.

## ANSWER:

Papa John's denies the allegations in Paragraph 27.

## COMPLAINT ¶28:

Defendant's delivery drivers also interface with PJI-provided computerized systems, programs and databases to perform their jobs.  This includes PJI's proprietary point-of-sale technology, which PJI required restaurants throughout North America to use and which allow PJI to directly oversee its franchisees' operations.[1]  PJI's system was used in the stores where Plaintiffs worked at as the timekeeping system that identifies the deficient wages at the heart of this action, and was instrumental in integrating franchisees into PJI's nationwide business.

---

[1] *See* Papa John's International, Inc. Form 10-K filing for the Fiscal Year ended December 29, 2013, available at http://ir.papajohns.com/secfiling.cfm?filingid=1104659-14-13226&cik= ("Our proprietary PROFIT System, point-of-sale technology ("POS"), is in place in all North America traditional Papa John's restaurants. ...  We believe the PROFIT System also enhances restaurant-level marketing capabilities.  Polling capabilities allow us to obtain restaurant operating information, providing us with timely access to sales and customer information.  The PROFIT System is also closely integrated with our digital ordering solutions in all domestic traditional Papa John's restaurants, enabling Papa John's to offer nationwide digital ordering to our customers.") (accessed April 8, 2016).

**ANSWER:**

Papa John's admits that it uses a proprietary point-of-sale system for its corporate-owned stores, and that it requires franchisees in the United States to use the same point-of-sale system for a portion of their restaurant operations. Papa John's further admits that a Papa John's affiliate uses Papa John's proprietary point-of-sale system as a timekeeping system in the store where Plaintiff Sobol worked. Papa John's is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28 regarding whether any of the other Plaintiffs' franchisee employers used Papa John's point-of-sale system for timekeeping purposes. Papa John's denies the remaining allegations in Paragraph 28.

**COMPLAINT ¶29:**

Defendant's delivery drivers performed their jobs using materials and technology that PJI selected and supplied, including PJI's proprietary point-of-sale technology, which tracked individual delivery orders and tasks.

**ANSWER:**

Papa John's denies the allegations in Paragraph 29.

**COMPLAINT ¶30:**

Defendant's delivery drivers were supervised in the performance of their work according to criteria set by PJI.  PJI established the roles and responsibilities of various supervisors, managers and shift leaders in its Handbook.  Defendant's delivery drivers were required to follow and abide by common work, time and compensation policies, systems, procedures and requirements that PJI promulgated.

**ANSWER:**

Papa John's denies the allegations in Paragraph 30.

**COMPLAINT ¶31:**

PJI is a joint employer of its franchisees' delivery drivers because, inter alia, it has the right to: hire and fire them, set their wages, control the work they perform, direct the manner in which they perform their work, inspect and supervise their work, promulgate policies and procedures governing their employment (including the work, time, compensation and overtime policies and procedures at issue here), enforce these policies and procedures, and calculate the compensation they received.

**ANSWER:**

Papa John's denies the allegations in Paragraph 31.

**COMPLAINT ¶32:**

Defendant has hidden behind its franchise model -- which allows it to reap annual revenues of over $1.2 billion -- to disclaim any responsibility for the policies and practices it allows, encourages at its franchisees' restaurants, despite being aware that those policies violate state and federal law.

**ANSWER:**

Papa John's denies the allegations in Paragraph 32.

**COMPLAINT ¶33:**

The wage theft at issue in this action is neither an isolated incident, nor is it due to the actions of "rogue" franchisees. Rather, the serial underpayment of delivery drivers is an integrated part of Defendant's business model intended to maximize profits while using franchisees as a shield to mitigate liability.

**ANSWER:**

Papa John's denies the allegations in Paragraph 33.

**COMPLAINT ¶34:**

Multiple civil and criminal actions against PJI and its franchisees have identified widespread, systemic violations throughout Defendant's franchise network.[2] This ongoing pattern of frequent violations led New York Attorney General Eric Schneiderman to repeatedly call on PJI "to step up and stop the widespread lawlessness plaguing [its] businesses and harming the workers who make and deliver [its] food."[3]

---

[2] *See* Jessica Mason Pieklo, *Papa John's Ordered to Pay Almost $800,000 in Wage Theft Case*, REWIRE, Feb. 9, 2015, https://rewire.news/article/2015/02/09/papa-johns-ordered-pay-almost-800000-wage-theft-case/ (reporting on wage theft case against New York Franchisee Emstar Pizza, Inc.); Laila Kearney, *Papa John's To Pay $2 Million After Short-Changing New York Delivery Workers*, HUFFINGTON POST, Mar. 5, 2015, http://www.huffingtonpost.com/2015/03/05/ papa-johns-franchise-ord_n_6811852.html (reporting on wage violations case against New York franchisee New Majority Holdings, LLC); James McNair, *Papa John's to Settle Claims it Underpaid Delivery Drivers*, KENTUCKY CENTER FOR INVESTIGATIVE REPORTING, Aug. 7, 2015, http://kycir.org/2015/08/07/papa-johns-to-settle-claims-it-underpaid-delivery-drivers-in-six-states/ (reporting on under-reimbursement case against PJI on behalf of drivers in Missouri, Florida, Illinois, North Carolina, Arizona, and Maryland); Dave Jamieson, *Papa John's Stores To Dish Up Half A Million Dollars In Wage Theft Case*, HUFFINGTON POST, Oct. 15, 2015, http://www.huffingtonpost.com/entry/papa-johns-wage-theft-case_us_ 561fc478e4b050c6c4a4854b (reporting on wage theft case against four New York franchisees); Dave Jamieson, *Papa John's Franchisee Gets Jail Time For Failing To Pay Full Wages*, HUFFINGTON POST, Nov. 16, 2015, http://www.huffingtonpost.com/entry/papa-johns-wage-theft_us_ 564a16e9e4b045bf3df02826 (reporting on wage theft case against a New York franchisee BMY Foods).

[3] *Papa John's To Pay $2 Million After Short-Changing New York Delivery Workers, supra* note 2; *Papa John's Stores To Dish Up Half A Million Dollars In Wage Theft Case, supra* note 2.

**ANSWER:**

Papa John's denies the allegations in Paragraph 34.

**COMPLAINT ¶35:**

PJPA, LLC ("PJPA"), the franchisee that employed Plaintiffs Bellaspica, Wolff and Morris (the "PJPA Plaintiffs") provides a typical example of PJI's abuse of the franchise system to profit at delivery drivers' expense while, at the same time, attempting to use legal trickery to evade liability.

**ANSWER:**

Papa John's denies the allegations in Paragraph 25.

**COMPLAINT ¶36:**

PJPA was a profitable company and PJI profited from having PJPA as a franchisee. PJI and its franchisees have benefitted from an intensely intertwined financial relationship.  In November 2008, PJI loaned PJPA approximately $9 million in startup money.  PJPA has paid down that loan to approximately $2,200,000, and also paid PJI millions of dollars in royalties and other fees.  Yet, shortly after the PJPA Plaintiffs sued PJPA for the unlawful wage practices at issue, PJI indicated that it would require full payment of the balance due (in addition to other moneys PJPA regularly paid PJI) and refused to negotiate any further payment plan or any accommodation to allow PJPA to pay the drivers for the minimum wage violations that occurred when PJPA followed PJI's policy.

**ANSWER:**

Papa John's admits that on November 8, 2008, PJPA, L.L.C. entered into a promissory note and agreement with an affiliate of Papa John's, which had a maximum principal amount of $8,898,004.31. Papa John's denies the remaining allegations in Paragraph 36.

**COMPLAINT ¶37:**

In the action against PJPA for under-reimbursing its drivers in violation of minimum wage law, the PJPA Plaintiffs obtained conditional class certification, and won numerous discovery motions as well as a temporary restraining order.  Nonetheless, solely because of PJI's actions, the PJPA Plaintiffs were severely limited in their recovery from PJPA.  After the PJPA Plaintiffs filed suit, PJI abruptly and deliberately placed PJPA under significant financial hardship by requiring PJPA to immediately pay off the remainder of its outstanding loan balance and indicating it would not provide PJPA with any funds to resolve the legal claims against it. As part of the PJPA litigation, U.S. Magistrate Judge Timothy R. Rice (E.D. Pa.) appointed an independent economic expert to review PJI's finances. After an extensive review of PJPA's finances, this expert concluded that -- due to PJI's decision to recall its loan to PJPA and withhold further financial assistance until PJPA settled the lawsuit against it -- PJPA could only

afford to pay its aggrieved delivery drivers a fraction of the value of their claims.[4]  PJI was thus able, through its financial control over PJPA, to effectively prevent PJPA from adequately reimbursing its drivers for the wage and hour violations that were due to PJI's policies and that, ultimately, padded PJI's profits.

**ANSWER:**

Papa John's denies the allegations in Paragraph 37.

**COMPLAINT ¶38:**

By using its franchisees as a liability shield, Defendant is able to limit delivery drivers' recoveries in suits against its franchisees. For example, by calling due a loan to PJPA in response to the litigation against the franchisee, Defendant siphoned off the funds that would have been otherwise available to compensate the drivers it harmed through its unlawful policies. At the same time, PJI was guaranteed to make money because -- in addition to repaying the loan -- PJPA and other franchisees also paid PJI substantial additional sums for PJI's guidance in running the business.

**ANSWER:**

Papa John's denies the allegations in Paragraph 38.

**COMPLAINT ¶39:**

Because Defendant has deliberately used its franchisees as a liability shield and, through its economic control over those franchisees, sought to limit delivery drivers' ability to recover for blatant minimum wage violations, Plaintiffs are entitled to tolling on their claims against Defendant for the maximum allowable limitations period.

**ANSWER:**

Papa John's denies the allegations in Paragraph 39.

**DEFENDANT'S FAILURE TO PAY MINIMUM WAGES TO DELIVERY DRIVERS**

**COMPLAINT ¶40:**

The majority of food and drink orders placed at Defendant's restaurants are for home delivery.

---

[4] *See* Settlement Agreement at 4-5, *Bellaspica v. PJPA*, No. 13-3014 (E.D. Pa. Mar. 25, 2016) (Dkt. No. 139 – Attachment 3).

**ANSWER:**

Papa John's admits that the majority of food and drink orders placed at Papa John's-

owned restaurants are for delivery. Papa John's denies the remaining allegations in Paragraph 40.

**COMPLAINT ¶41:**

During a typical ten-hour shift, delivery drivers spend about seven hours "on the road" making deliveries.

**ANSWER:**

Papa John's denies the allegations in Paragraph 41.

**COMPLAINT ¶42:**

Throughout the relevant period, Defendant required its delivery drivers to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries.  These vehicles, typically two- and four-door passenger cars, weigh less than 10,000 pounds.

**ANSWER:**

Papa John's admits that it requires delivery drivers working at Papa John's-owned stores to maintain and provide a safe, functioning, insured and legally-operable automobile to make deliveries, which typically weigh less than 10,000 pounds. Papa John's denies the allegations in Paragraph 42 with respect to any franchisee employee who may become a member of any alleged class or collective action, and on that basis denies the remaining allegations in Paragraph 42.

**COMPLAINT ¶43:**

Throughout the relevant period, Defendant required its delivery drivers to bear the "out-of-pocket" costs associated with their vehicles, including costs for gasoline, vehicle depreciation, insurance, maintenance and repairs.

**ANSWER:**

Papa John's denies the allegations in Paragraph 43.

**COMPLAINT ¶44:**

For decades, the Internal Revenue Service ("IRS") has calculated and published a standard mileage reimbursement rate ("IRS rate") for businesses and employees to use in computing the minimum deductible costs of operating an automobile for business purposes.

13

**ANSWER:**

Papa John's admits that the IRS publishes an optional standard mileage rate used to calculate the allowable business deduction for the cost of operating an automobile for business, medical or moving purposes. Papa John's denies the remaining allegations in Paragraph 44.

**COMPLAINT ¶45:**

In 2010, the IRS rate was $0.50 per mile. From January through June 2011, the IRS rate was $0.51 per mile.  From July 2011 through December 2012, the IRS rate was $0.555 per mile; in 2013, the IRS rate was $0.565 per mile; in 2014, the IRS rate is $0.56 per mile; in 2015, the IRS rate was $0.575 per mile; in 2016 the IRS rate was $0.54 per mile.

**ANSWER:**

Papa John's admits that the IRS published optional standard mileage rate used to calculate the allowable business deduction for the cost of operating an automobile for business, medical or moving purposes were the amounts stated in Paragraph 45 for those respective years. Papa John's denies the remaining allegations in Paragraph 45.

**COMPLAINT ¶46:**

Since 2010, many reputable companies that study the cost of owning and operating a motor vehicle and/or estimating reasonable reimbursement rates for vehicular travel, including the American Automobile Association, have set the average cost of operating a vehicle at more than $0.50 per mile.

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46.

**COMPLAINT ¶47:**

Defendant's delivery drivers typically experienced lower gas mileage, more rapid vehicle depreciation, higher insurance rates and greater vehicular expenses than the average business driver because they typically drove in urban areas, in "start-and-stop" traffic, on a tight schedule, at night, and in inclement weather.

**ANSWER:**

Papa John's denies the allegations in Paragraph 47.

**COMPLAINT ¶48:**

Thus, during the relevant period, the actual "out-of-pocket" costs that Defendant's delivery drivers paid to provide a safe, functioning, insured and legally-operable automobile for their deliveries was at least $0.54 per mile.

14

**ANSWER:**

Papa John's denies the allegations in Paragraph 48.

**COMPLAINT ¶49:**

During the relevant period, Defendant's delivery drivers made an average of five deliveries per hour which required them to drive an average of 25 miles each hour (five miles per delivery), meaning they paid "out-of-pocket" about $13.50 per hour to provide, operate and maintain their vehicles.

**ANSWER:**

Papa John's denies the allegations in Paragraph 49.

**COMPLAINT ¶50:**

When Defendant's delivery drivers worked "on the road," they were paid an hourly wage at or above the tipped minimum, plus a set amount per delivery to ostensibly offset their "out-of-pocket" costs. However, this set amount always provided delivery drivers with less than the tipped minimum wage plus the amount of their actual "out-of-pocket" costs incurred by Defendant's drivers.

**ANSWER:**

Papa John's denies the allegations in Paragraph 50.

**COMPLAINT ¶51:**

For example, PJPA paid its delivery drivers $6.00 per hour plus $1.00 per delivery to offset their "out-of-pocket" vehicle costs, an average total wage of $11.00 per hour, which is well under the actual "out of pocket" cost of $13.50 its delivery drivers incurred each hour. As a result, instead of receiving at least the tipped minimum wage of $2.83 per hour, Defendant's delivery drivers had to pay $2.50 per hour to cover their "out-of-pocket" vehicle costs, a difference of $5.33 per hour – and a clear minimum wage violation.

**ANSWER:**

Papa John's denies the allegations in Paragraph 51.

## FLSA COLLECTIVE ACTION ALLEGATIONS

**COMPLAINT ¶52:**

Plaintiffs bring a collective action pursuant to 29 U.S.C. §216(b) on behalf of a proposed collective defined to include:

All persons Defendant employed (either directly or through its franchisees) as a delivery driver during any workweek in the maximum limitations period. Excluded from the class are any delivery drivers who worked for franchisees other than PJPA that are currently involved in class or collective litigation relating to delivery driver under-reimbursement; also excluded are any delivery drivers who participated in the settlement with PJI in *Perrin v. Papa John's Int'l, Inc.*, No. 09-1135 (E.D. Mo. Jan. 12, 2016).

**ANSWER:**

Papa John's admits that Plaintiffs purport to bring claims on behalf of a collective action. Papa John's denies that class or collective action treatment is appropriate or that the alleged collective action can be certified.  Papa John's denies the remaining allegations in Paragraph 52.

**COMPLAINT ¶53:**

Plaintiffs reserve the right to modify the proposed collective definition at a later stage of litigation.

**ANSWER:**

Papa John's denies the allegations in Paragraph 53.

**COMPLAINT ¶54:**

Plaintiffs are members of the proposed collective they seek to represent because they worked for Defendant as delivery drivers during the relevant period and suffered the minimum wage violation alleged above relating to work "on the road."

**ANSWER:**

Papa John's denies the allegations in Paragraph 54.

**COMPLAINT ¶55:**

This action may be properly maintained as a collective action on behalf of the putative Class because, during the relevant period:

a.      Plaintiffs and the Class members had the same employers;

b.      Plaintiffs and the Class members performed the same type of work;

c.      Plaintiffs and the Class members were governed by the same compensation policies, practices and systems;

d.      Plaintiffs and the Class members were subjected to the same policies relating to the payment of supplemental wages to offset vehicle maintenance costs;

16

     e.      Plaintiffs and the Class members were governed by the same payroll policies, practices and systems;

     f.      Defendant's labor relations and human resources systems were centrally-organized and controlled, and controlled the policies and practices at issue in this case.

**ANSWER:**

Papa John's denies the allegations in Paragraph 55.

**COMPLAINT ¶56:**

Plaintiffs estimate that the collective group, including both current and former employees over the relevant period, will include thousands of members.  The precise number of members should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from the Class members as part of the notice and "opt-in" process provided by 29 U.S.C. §216(b).  Given the composition and size of the Class, its members may be informed of the pendency of this action directly via U.S. mail, e-mail and/or the posting of written notices at Defendant's work sites.

**ANSWER:**

Papa John's denies the allegations in Paragraph 56.

## STATE LAW CLASS ACTION ALLEGATIONS

**COMPLAINT ¶57:**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff William Durling brings this class action on behalf of himself and the following Class of similarly-situated individuals:

All persons Defendant employed (either directly or through its franchisees) in New York as a delivery driver during any workweek in the maximum limitations period (the "New York Class"). Excluded from the class are any delivery drivers who worked for franchisees other than PJPA that are currently involved in class or collective litigation relating to delivery driver under-reimbursement; also excluded are any delivery drivers who participated in the settlement with PJI in *Perrin v. Papa John's Int'l, Inc.*, No. 09-1135 (E.D. Mo. Jan. 12, 2016).

**ANSWER:**

Papa John's admits that Plaintiff Durling purports to bring claims on behalf of a class. Papa John's denies that class treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 57.

**COMPLAINT ¶58:**

The New York Class specifically excludes Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant; and the Court and Court personnel.

**ANSWER:**

Papa John's admits that Plaintiffs purport to bring claims on behalf of a New York class. Papa John's denies that class or collective action treatment is appropriate or that the alleged collective or class can be certified.  Papa John's denies the remaining allegations in Paragraph 58.

**COMPLAINT ¶59:**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Chris Bellaspica brings this class action on behalf of himself and the following Class of similarly situated individuals:

All persons Defendant employed (either directly or through its franchisees) in Pennsylvania as a delivery driver during any workweek in the maximum limitations period (the "Pennsylvania Class").  Excluded from the class are any delivery drivers who worked for franchisees other than PJPA that are currently involved in class or collective litigation relating to delivery driver under-reimbursement; also excluded are any delivery drivers who participated in the settlement with PJI in *Perrin v. Papa John's Int'l, Inc.*, No. 09-1135 (E.D. Mo. Jan. 12, 2016).

**ANSWER:**

Papa John's admits that Plaintiff Bellaspica purports to bring claims on behalf of a class. Papa John's denies that class treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 59.

**COMPLAINT ¶60:**

The Pennsylvania Class specifically excludes Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant; and the Court and Court personnel.

**ANSWER:**

Papa John's admits that Plaintiffs purport to bring claims on behalf of a Pennsylvania class.  Papa John's denies that class treatment is appropriate or that the alleged class can be certified.  Papa John's denies the remaining allegations in Paragraph 60.

18

**COMPLAINT ¶61:**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Tom Wolff brings this class action on behalf of himself and the following Class of similarly situated individuals:

All persons Defendant employed (either directly or through its franchisees) in New Jersey as a delivery driver during any workweek in the maximum limitations period (the "New Jersey Class"). Excluded from the class are any delivery drivers who worked for franchisees other than PJPA that are currently involved in class or collective litigation relating to delivery driver under-reimbursement; also excluded are any delivery drivers who participated in the settlement with PJI in *Perrin v. Papa John's Int'l, Inc.*, No. 09-1135 (E.D. Mo. Jan. 12, 2016).

**ANSWER:**

Papa John's admits that Plaintiff Wolff purports to bring claims on behalf of a class. Papa John's denies that class treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 61.

**COMPLAINT ¶62:**

The New Jersey Class specifically excludes Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant; and the Court and Court personnel.

**ANSWER:**

Papa John's admits that Plaintiffs purport to bring claims on behalf of a New Jersey class. Papa John's denies that class treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 62.

**COMPLAINT ¶63:**

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Michael Morris brings this class action on behalf of himself and the following Class of similarly situated individuals:

All persons Defendant employed (either directly or through its franchisees) in Delaware as a delivery driver during any workweek in the maximum limitations period (the "Delaware Class"). Excluded from the class are any delivery drivers who worked for franchisees other than PJPA that are currently involved in class or collective litigation relating to delivery driver under-reimbursement; also excluded are any delivery drivers who participated in the settlement with PJI in *Perrin v. Papa John's Int'l, Inc.*, No. 09-1135 (E.D. Mo. Jan. 12, 2016).

**ANSWER:**

Papa John's admits that Plaintiff Morris purports to bring claims on behalf of a class. Papa John's denies that class treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 63.

**COMPLAINT ¶64:**

The Delaware Class specifically excludes Defendant; any parent, subsidiary, or affiliate of Defendant; any entity in which Defendant has or had a controlling interest, or which Defendant otherwise controls or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendant; and the Court and Court personnel.

**ANSWER:**

Papa John's admits that Plaintiffs purport to bring claims on behalf of a Delaware class. Papa John's denies that class treatment is appropriate or that the alleged class can be certified. Papa John's denies the remaining allegations in Paragraph 64.

## CLAIMS FOR RELIEF

### COUNT I - VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (On Behalf Of The FLSA Collective)

**COMPLAINT ¶65:**

Plaintiffs repeat, reallege, and incorporate by reference each of the foregoing allegations as though fully set forth herein.

**ANSWER:**

Papa John's restates its answers to the preceding paragraphs and incorporates its answers, as relevant, as if fully set out herein.

**COMPLAINT ¶66:**

Defendant is an "employer" as defined by 29 U.S.C. § 203(d).

**ANSWER:**

Papa John's denies the allegations in Paragraph 66 because it is not an "employer" of any of the Plaintiffs or putative members of the collective or class actions alleged in the Complaint.

**COMPLAINT ¶67:**

Plaintiffs and the collective group members are "employees" as defined by 29 U.S.C. § 203(e)(1) and "tipped employees" as defined by 29 U.S.C. § 203(t).

20

**ANSWER:**

Papa John's admits the allegations in Paragraph 67 with respect to Plaintiff Sobol only. Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 67 with respect to the other Plaintiffs or any other franchisee employee. Papa John's denies the remaining allegations in Paragraph 67.

**COMPLAINT ¶68:**

The direct and supplemental wages Defendant paid to Plaintiff and the collective group members are "wages" as defined by 29 U.S.C. § 203(m).

**ANSWER:**

Papa John's denies the allegations in Paragraph 68.

**COMPLAINT ¶69:**

Defendant is an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of 29 U.S.C. § 203(s)(1)(A).

**ANSWER:**

Papa John's admits the allegations in Paragraph 69.

**COMPLAINT ¶70:**

Plaintiffs and the putative Class members are similarly situated individuals within the meaning of 29 U.S.C. §216(b) with the FLSA's requirements, and Plaintiffs and the putative Class members were covered employees entitled to the FLSA's protections.

**ANSWER:**

Papa John's denies the allegations in Paragraph 70.

**COMPLAINT ¶71:**

This Count arises from Defendant's violation of the FLSA, 29 U.S.C. § 206(a)(1), for failing to pay Plaintiffs and the putative Class members the required minimum wage for each hour they worked.

**ANSWER:**

Papa John's denies the allegations in Paragraph 71.

**COMPLAINT ¶72:**

Throughout the relevant period, the federal minimum wage rate for non-tipped employees was $7.25 per hour and the federal minimum wage rate for tipped employees was $2.83 per hour.

27665971v.3

**ANSWER:**

Papa John's admits the allegations in Paragraph 72.

**COMPLAINT ¶73:**

Defendant failed to pay Plaintiffs and the putative Class members the required minimum wage for their work "on the road."

**ANSWER:**

Papa John's denies the allegations in Paragraph 73.

**COMPLAINT ¶74:**

Defendant paid its delivery drivers $6.00 per hour plus $1.00 per delivery, an average total wage of $11.00 per hour.  However, based on nationally-accepted minimum reimbursement calculations for business travel, Plaintiffs and the Class members wound up having to pay "out-of-pocket" about $13.50 per hour to provide, operate and maintain their vehicles.  Since Plaintiffs and the Class members experiences a net loss of $2.50 each hour they worked "on-the-road", Defendant's wage system for this work presents a clear FLSA violation.

**ANSWER:**

Papa John's denies the allegations in Paragraph 74.

**COMPLAINT ¶75:**

In failing to ensure that Plaintiffs and the collective group members received at least the tipped minimum wage rate for each hour they worked "on-the-road," Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

**ANSWER:**

Papa John's denies the allegations in Paragraph 75.

**COMPLAINT ¶76:**

Defendant has no good faith justification or defense for failing to pay Plaintiffs and the collective group members all wages mandated by the FLSA.

**ANSWER:**

Papa John's denies the allegations in Paragraph 76.

## COUNT II - VIOLATION OF THE NEW YORK LABOR LAW
### (On Behalf Of The New York Class)

**COMPLAINT ¶77:**

Plaintiff William Durling repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

**ANSWER:**

Papa John's restates its answers to the preceding paragraphs and incorporates its answers, as relevant, as if fully set out herein.

**COMPLAINT ¶78:**

Through its conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff Durling and the other members of the New York Class.

**ANSWER:**

Papa John's denies the allegations in Paragraph 78.

**COMPLAINT ¶79:**

The unpaid wages at issue in this litigation are "Wages" as defined by NYLL § 190(1).

**ANSWER:**

Papa John's denies the allegations in Paragraph 79.

**COMPLAINT ¶80:**

Plaintiffs and the Class members are "Employees" as defined by NYLL § 190(2).

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80 with respect to any franchisee employee who may become a member of the alleged New York Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 80.

**COMPLAINT ¶81:**

Defendant is an "Employer" as defined by NYLL § 190(3).

**ANSWER:**

Papa John's denies the allegations in Paragraph 81 with respect to any franchisee employee who may become a member of the alleged New York Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 81.

**COMPLAINT ¶82:**

Throughout the relevant period, Defendant was an employer obligated to comply with the NYLL's requirements, and Plaintiff Durling and the New York Class members were covered employees entitled to the NYLL's protections.

**ANSWER:**

Papa John's denies the allegations in Paragraph 82 with respect to any franchisee employee who may become a member of the alleged New York Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 82.

**COMPLAINT ¶83:**

NYLL § 193 prohibits employers, among other things, from requiring an employee to make payments by separate transaction, unless such charge or payment is permitted as a deduction from wages under the NYLL.

**ANSWER:**

Papa John's admits that NYLL § 193 prohibits employers from requiring an employee to make payments by separate transaction as alleged, but denies the remaining allegations in Paragraph 83.

**COMPLAINT ¶84:**

NYLL § 193 prohibits deductions from wages that are not made in accordance with the provisions of any law or any rule or regulation issued by any governmental agency and are not expressly authorized in writing by the employees and are not for the benefit of the employee.

**ANSWER:**

Papa John's admits that NYLL § 193 prohibits deductions from wages as alleged, but denies the remaining allegations in Paragraph 84.

**COMPLAINT ¶85:**

NYLL § 198-B(2) prohibits persons, among other things, from requesting, demanding, or receiving, either before or after such employee is engaged, a return, donation, or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment.

24

**ANSWER:**

Papa John's admits that NYLL § 198-B(2) prohibits the actions alleged, but denies the remaining allegations in Paragraph 85.

**COMPLAINT ¶86:**

As alleged herein, Defendant, pursuant to its policy and practice, has reimbursed Delivery Drivers less than the reasonably approximate amount of their automobile expenses to such an extent that it diminishes the Delivery Drivers' net wages below New York's minimum wage.

**ANSWER:**

Papa John's denies the allegations in Paragraph 86.

**COMPLAINT ¶87:**

Prior to December 31, 2015, the New York minimum wage for tipped restaurant workers was $5.00 per hour.  As of December 31, 2015, the New York minimum wage for tipped restaurant workers is $7.65 per hour for workers who earn at least $1.35 per hour in tips, and $6.80 per hour for workers who earn at least $2.20 per hour in tips.

**ANSWER:**

Papa John's admits that prior to December 31, 2015, the New York tipped minimum wage for eligible food service workers was $5.00 per hour. Papa John's denies the remaining allegations in Paragraph 87.

**COMPLAINT ¶88:**

Defendant, pursuant to its policy and practice, violated the NYLL by requiring de facto deductions for vehicle expenses that are not authorized under the NYLL and/or that reduce Delivery Drivers' net wages below the minimum.

**ANSWER:**

Papa John's denies the allegations in Paragraph 88.

**COMPLAINT ¶89:**

Plaintiff and all other Delivery Drivers are victims of uniform compensation and vehicle cost reimbursement policies; and these uniform policies, in violation of the NYLL, have been applied, and continue to be applied, to all Defendant's Delivery Drivers.

**ANSWER:**

Papa John's denies the allegations in Paragraph 89.

**COMPLAINT ¶90:**

As a result of the aforesaid violations of the NYLL's minimum wage provisions, Defendant has unlawfully caused de facto deductions from the wages of Plaintiff and all other Delivery Drivers that resulted in minimum wages being unlawfully withheld by Defendant from Plaintiff and all other Delivery Drivers.

**ANSWER:**

Papa John's denies the allegations in Paragraph 90.

**COMPLAINT ¶91:**

NYLL § 633(1) provides that Plaintiff and all other Delivery Drivers are entitled to damages equal to the amount of the unpaid minimum wages during the relevant period, plus periods of equitable tolling.

**ANSWER:**

Papa John's denies the allegations in Paragraph 91.

**COMPLAINT ¶92:**

NYLL § 633(1) further provides that Plaintiff and all other Delivery Drivers are entitled to an award of their costs incurred in pursuing this claim, an award of reasonable attorneys' fees incurred in pursuing this claim and an award of prejudgment interest at the applicable rate.

**ANSWER:**

Papa John's denies the allegations in Paragraph 92.

**COMPLAINT ¶93:**

Under NYLL § 633(1) Defendant is liable for a penalty in the amount of 100% of the total of the amount due during the relevant period as Defendant cannot prove a good faith basis to believe that its underpayment was in compliance with the law.

**ANSWER:**

Papa John's denies the allegations in Paragraph 93.

**COUNT III - VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT**
**(On Behalf Of The Pennsylvania Class)**

**COMPLAINT ¶94:**

Plaintiff Chris Bellaspica repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

**ANSWER:**

Papa John's restates its answers to the preceding paragraphs and incorporates its answers, as relevant, as if fully set out herein.

**COMPLAINT ¶95:**

Through its conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff Bellaspica and the other members of the Pennsylvania Class.

**ANSWER:**

Papa John's denies the allegations in Paragraph 95.

**COMPLAINT ¶96:**

The unpaid wages at issue in this litigation are "Wages" as defined by PMWA § 3(d).

**ANSWER:**

Papa John's denies the allegations in Paragraph 96.

**COMPLAINT ¶97:**

Defendant is an "Employer" as defined in PMWA §3(g).

**ANSWER:**

Papa John's denies the allegations in Paragraph 97 with respect to any franchisee employee who may become a member of the alleged Pennsylvania Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 97.

**COMPLAINT ¶98:**

Plaintiffs and the Class members are "Employees" as defined by PMWA § 3(h) and "Tipped Employees" as defined by PMWA §3(d).

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 with respect to any franchisee employee who may become a member of the alleged Pennsylvania Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 98.

**COMPLAINT ¶99:**

Throughout the relevant period, Defendant was an employer obligated to comply with the PMWA's requirements, and Plaintiff Bellaspica and the Pennsylvania Class members were covered employees entitled to the PMWA's protections.

**ANSWER:**

Papa John's denies the allegations in Paragraph 99 with respect to any franchisee employee who may become a member of the alleged Pennsylvania Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 99.

**COMPLAINT ¶100:**

This Count arises from Defendant's failure to pay Plaintiff Bellaspica and the Pennsylvania Class members the required minimum wage for each hour they worked in violation of PMWA § 4(a).

**ANSWER:**

Papa John's denies the allegations in paragraph 100.

**COMPLAINT ¶101:**

Throughout the relevant period, the minimum wage rate in Pennsylvania for tipped employees who do not pool their tips has been set at $2.83 per hour.

**ANSWER:**

Papa John's admits the allegations in Paragraph 101.

**COMPLAINT ¶102:**

When Plaintiff Bellaspica and the Pennsylvania Class members were out on the road making deliveries, performing work for which they received tips that were not pooled, Defendant paid them a direct wage of $6.00 per hour plus a supplemental wage of $1.00 per delivery, which resulted in an average wage of $11.00 per hour.

**ANSWER:**

Papa John's denies the allegations in Paragraph 102.

**COMPLAINT ¶103:**

However, Defendant required Plaintiffs and the Class members to bear "out-of-pocket" vehicle maintenance costs of between $12.50 and $15.00 per hour, meaning that they were actually under-reimbursed between $1.50 and $4.00 per hour for each hour they worked making deliveries.

**ANSWER:**

    Papa John's denies the allegations in Paragraph 103.

**COMPLAINT ¶104:**

    Since Defendant under-reimbursed Plaintiffs and the Class members for their "out-of-pocket" expenses, it also necessarily failed to pay them the required minimum wage of $2.83 per hour for tipped employees who do not pool their tips.

**ANSWER:**

    Papa John's denies the allegations in Paragraph 104.

**COMPLAINT ¶105:**

    Defendant knew, or should have known, that its employment practices and policies resulted in the minimum wage violations pled here.

**ANSWER:**

    Papa John's denies the allegations in Paragraph 105.

**COMPLAINT ¶106:**

    In failing to ensure that Plaintiff Bellaspica and the Pennsylvania Class members actually received the applicable minimum wage rate for each hour they worked, Defendant acted willfully, or with reckless disregard for clearly applicable PMWA provisions.

**ANSWER:**

    Papa John's denies the allegations in Paragraph 106.

**COMPLAINT ¶107:**

    Defendant has no good faith justification or defense for failing to play Plaintiff Bellaspica and the Pennsylvania Class members the minimum wage required by the PMWA for each hour they worked.

**ANSWER:**

    Papa John's denies the allegations in Paragraph 107.

**COMPLAINT ¶108:**

    PMWA § 13 expressly allows private plaintiffs to bring civil actions to enforce an employers' failure to comply with the PMWA's requirements.

**ANSWER:**

Papa John's admits that PMWA § 13 allows private plaintiffs to bring civil actions, but denies any liability and denies the remaining allegations in Paragraph 108.

**COMPLAINT ¶109:**

PMWA § 13 expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

**ANSWER:**

Papa John's admits that PMWA § 13 provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages, but denies liability and denies the remaining allegations in Paragraph 109.

### COUNT IV - VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW
### (On Behalf Of The New Jersey Class)

**COMPLAINT ¶110:**

Plaintiff Tom Wolff repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

**ANSWER:**

Papa John's restates its answers to the preceding paragraphs and incorporates its answers, as relevant, as if fully set out herein.

**COMPLAINT ¶111:**

Through its conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff Wolff and the other members of the New Jersey Class.

**ANSWER:**

Papa John's denies the allegations in Paragraph 111.

**COMPLAINT ¶112:**

The unpaid wages at issue in this litigation are "Wages" as defined by N.J.S.A. 34:11-56a1(d).

**ANSWER:**

Papa John's denies the allegations in Paragraph 112.

**COMPLAINT ¶113:**

Defendant is an "Employer" as defined in N.J.S.A. 34:11-56a1(g).

**ANSWER:**

Papa John's denies the allegations in Paragraph 113 with respect to any franchisee employee who may become a member of the alleged New Jersey Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 113.

**COMPLAINT ¶114:**

Plaintiffs and the Class members are "Employees" as defined by N.J.S.A. 34:11-56a1(h).

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 114 with respect to any franchisee employee who may become a member of the alleged New Jersey Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 114.

**COMPLAINT ¶115:**

Throughout the relevant period, Defendant was an employer obligated to comply with the NJWHL's requirements, and Plaintiff Wolff and the New Jersey Class members were covered employees entitled to the NJWHL's protections.

**ANSWER:**

Papa John's denies the allegations in Paragraph 115 with respect to any franchisee employee who may become a member of the alleged New Jersey Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 115.

**COMPLAINT ¶116:**

This Count arises from Defendant's failure to pay Plaintiff Wolff and the New Jersey Class members the required minimum wage for each hour they worked in violation of N.J.S.A. 34:11-56a.

**ANSWER:**

Papa John's denies the allegations in Paragraph 116.

**COMPLAINT ¶117:**

Throughout the relevant period, the minimum wage rate in New Jersey for tipped employees has been set at $2.13 per hour.

**ANSWER:**

Papa John's admits the allegations in Paragraph 117.

**COMPLAINT ¶118:**

When Plaintiff Wolff and the New Jersey Class members were out on the road making deliveries, performing work for which they received tips that were not pooled, Defendant paid them a direct wage of $6.00 per hour plus a supplemental wage of $1.00 per delivery, which resulted in an average wage of $11.00 per hour.

**ANSWER:**

Papa John's denies the allegations in Paragraph 118.

**COMPLAINT ¶119:**

However, Defendant required Plaintiffs and the Class members to bear "out-of-pocket" vehicle maintenance costs of between $12.50 and $15.00 per hour, meaning that they were actually under-reimbursed between $1.50 and $4.00 per hour for each hour they worked making deliveries.

**ANSWER:**

Papa John's denies the allegations in Paragraph 119.

**COMPLAINT ¶120:**

Because Defendant under-reimbursed Plaintiffs and the Class members for their "out-of-pocket" expenses, it also necessarily failed to pay them the required minimum wage of $2.13 per hour for tipped employees who do not pool their tips.

**ANSWER:**

Papa John's denies the allegations in Paragraph 120.

**COMPLAINT ¶121:**

Defendant knew, or should have known, that its employment practices and policies resulted in the minimum wage violations pled here.

27665971v.3

**ANSWER:**

Papa John's denies the allegations in Paragraph 121.

**COMPLAINT ¶122:**

In failing to ensure that Plaintiff Wolff and the New Jersey Class members actually received the applicable minimum wage rate for each hour they worked, Defendant acted willfully, or with reckless disregard for clearly applicable NJWHL provisions.

**ANSWER:**

Papa John's denies the allegations in Paragraph 122.

**COMPLAINT ¶123:**

Defendant has no good faith justification or defense for failing to play Plaintiff Wolff and the New Jersey Class members the minimum wage required by the NJWHL for each hour they worked.

**ANSWER:**

Papa John's denies the allegations in Paragraph 123.

**COMPLAINT ¶124:**

N.J.S.A. 34:11-56a25 expressly allows private plaintiffs to bring civil actions to enforce an employers' failure to comply with the NJWHL's requirements by recovering the full amount of such minimum wage less any amount actually paid together with costs and reasonable attorney's fees as determined by the Court.

**ANSWER:**

Papa John's admits that N.J.S.A. 34:11-56a25 allows private plaintiffs to bring civil actions, but denies any liability and denies the remaining allegations in Paragraph 124.

**COMPLAINT ¶125:**

N.J.S.A. 34:11-56a25 expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

**ANSWER:**

Papa John's admits that N.J.S.A. 34:11-56a25 provides as alleged, but denies any liability and denies the remaining allegations in Paragraph 125.

27665971v.3

**COMPLAINT ¶126:**

Furthermore N.J.S.A. 34:11-56a25 expressly permits an employee or employees to maintain an action for, and on behalf of, themselves and all others similarly situated.

**ANSWER:**

Papa John's admits that N.J.S.A. 34:11-56a25 provides as alleged, but denies that class action treatment is appropriate or that the alleged class can be certified, and denies the remaining allegations in Paragraph 126.

**COUNT V - VIOLATION OF THE DELAWARE WAGE AND HOUR LAW**
**(On Behalf Of The New Jersey Class)**

**COMPLAINT ¶127:**

Plaintiff Michael Morris repeats, realleges, and incorporates by reference each of the foregoing allegations as though fully set forth herein.

**ANSWER:**

Papa John's restates its answers to the preceding paragraphs and incorporates its answers, as relevant, as if fully set out herein.

**COMPLAINT ¶128:**

Through its conduct described above, Defendant has engaged in deceptive acts and practices that resulted in injury to Plaintiff Morris and the other members of the Delaware Class.

**ANSWER:**

Papa John's denies the allegations in Paragraph 128.

**COMPLAINT ¶129:**

The unpaid wages at issue in this litigation are "Wages" as defined by 19 Del. C. § 901(7).

**ANSWER:**

Papa John's denies the allegations in Paragraph 129.

**COMPLAINT ¶130:**

Defendant is an "Employer" as defined in 19 Del. C. § 901(4).

27665971v.3

**ANSWER:**

Papa John's denies the allegations in Paragraph 130 with respect to any franchisee employee who may become a member of the alleged Delaware Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 130.

**COMPLAINT ¶131:**

Plaintiffs and the Class members are "Employees" as defined by 19 Del. C. § 901(3).

**ANSWER:**

Papa John's is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 131 with respect to any franchisee employee who may become a member of the alleged Delaware Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 131.

**COMPLAINT ¶132:**

Throughout the relevant period, Defendant was an employer obligated to comply with the DMWA's requirements, and Plaintiff Morris and the Delaware Class members were covered employees entitled to the DMWA's protections.

**ANSWER:**

Papa John's denies the allegations in Paragraph 132 with respect to any franchisee employee who may become a member of the alleged Delaware Class, including Plaintiffs, as applicable, and on that basis denies the allegations in Paragraph 132.

**COMPLAINT ¶133:**

This Count arises from Defendant's failure to pay Plaintiff Morris and the Delaware Class members the required minimum wage for each hour they worked in violation of 19 Del. C. § 902.

**ANSWER:**

Papa John's denies the allegations in Paragraph 133.

**COMPLAINT ¶134:**

Throughout the relevant period, the minimum wage rate in Delaware for tipped employees has been set at $2.23 per hour.

**ANSWER:**

Papa John's admits the allegations in Paragraph 134.

**COMPLAINT ¶135:**

When Plaintiff Morris and the Delaware Class members were out on the road making deliveries, performing work for which they received tips that were not pooled, Defendant paid them a direct wage of $6.00 per hour plus a supplemental wage of $1.00 per delivery, which resulted in an average wage of $11.00 per hour.

**ANSWER:**

Papa John's denies the allegations in Paragraph 135.

**COMPLAINT ¶136:**

However, Defendant required Plaintiffs and the Class members to bear "out-of-pocket" vehicle maintenance costs of between $12.50 and $15.00 per hour, meaning that they were actually under-reimbursed between $1.50 and $4.00 per hour for each hour they worked making deliveries.

**ANSWER:**

Papa John's denies the allegations in Paragraph 136.

**COMPLAINT ¶137:**

Since Defendant under-reimbursed Plaintiffs and the Class members for their "out-of-pocket" expenses, it also necessarily failed to pay them the required minimum wage of $2.23 per hour for tipped employees who do not pool their tips.

**ANSWER:**

Papa John's denies the allegations in Paragraph 137.

**COMPLAINT ¶138:**

Defendant knew, or should have known, that its employment practices and policies resulted in the minimum wage violations pled here.

**ANSWER:**

Papa John's denies the allegations in Paragraph 138.

**COMPLAINT ¶139:**

In failing to ensure that Plaintiff Moriss and the Delaware Class members actually received the applicable minimum wage rate for each hour they worked, Defendant acted willfully, or with reckless disregard for clearly applicable DMWA provisions.

**ANSWER:**

Papa John's denies the allegations in Paragraph 139.

**COMPLAINT ¶140:**

Defendant has no good faith justification or defense for failing to play Plaintiff Morris and the Delaware Class members the minimum wage required by the DMWA for each hour they worked.

**ANSWER:**

Papa John's denies the allegations in Paragraph 140.

**COMPLAINT ¶141:**

19 Del. C. § 911(a) expressly allows private plaintiffs to bring civil actions to enforce an employers' failure to comply with the NJWHL's requirements by recovering the full amount of such minimum wage less any amount actually paid together with costs and reasonable attorney's fees as determined by the Court.

**ANSWER:**

Papa John's admits that 19 Del. C. § 911(a) allows private plaintiffs to bring civil actions, but denies any liability and denies the remaining allegations in Paragraph 141.

**COMPLAINT ¶142:**

19 Del. C. § 911(a) expressly provides that an agreement between the employer and employee to work for less than the required minimum wage is not a defense to an action seeking to recover unpaid minimum wages.

**ANSWER:**

Papa John's admits that 19 Del. C. § 911(a) provides as alleged, but denies any liability and denies the remaining allegations in Paragraph 142.

## ANSWER TO REMAINDER OF COMPLAINT

The remaining unnumbered paragraphs of the Complaint contain Plaintiffs' prayer for

relief.  Papa John's denies that Plaintiffs are entitled to any relief.  Papa John's denies every

remaining allegation in the Complaint that has not been separately and specifically admitted.

27665971v.3

## JURY DEMAND

Papa John's denies the Plaintiffs' right to a trial by jury on all issues, and specifically object to the extent that Plaintiffs or the putative class, or any of them, are not entitled to a trial by jury on any claims for equitable relief and/or on any other issues as to which a jury trial is not permitted as of right.

## AFFIRMATIVE AND OTHER DEFENSES

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Papa John's asserts the following affirmative and other defenses without assuming any burden of production or proof that, pursuant to law, belong to Plaintiffs.  Papa John's reserves the right to amend its answer and to assert any additional defenses and affirmative defenses as may become available or apparent during the course of this litigation.

## AFFIRMATIVE DEFENSE NO. 1

This case may not be maintained as a collective action because Plaintiffs cannot establish the existence of each of the requirements under 29 U.S.C. § 216(b) and other relevant legal authority.  Papa John's specifically maintains that Plaintiffs' pleadings fail to meet the requirements necessary to justify a collective action or issuances of notice to putative collective action members.

## AFFIRMATIVE DEFENSE NO. 2

This case may not be maintained as a class action because Plaintiffs cannot establish the existence of each of the requirements under Federal Rule of Civil Procedure 23 and other relevant legal authority.  Papa John's specifically maintains that Plaintiffs' pleadings fail to meet the requirements necessary to justify a class action.

## AFFIRMATIVE DEFENSE NO. 3

Any actions by Papa John's with respect to Plaintiffs and any other purported similarly situated employees and/or putative collective action members and/or class members, were taken in good faith with reasonable grounds to believe such conduct comported with applicable laws and/or interpretations of same.

## AFFIRMATIVE DEFENSE NO. 4

Some or all of Plaintiffs' and/or the putative collective action members' and/or class members' claims are barred in whole or in part by the applicable statute of limitations.

## AFFIRMATIVE DEFENSE NO. 5

Plaintiffs, and the putative class and collective action members they purport to represent, are barred from relief to the extent they failed to mitigate their damages.

## AFFIRMATIVE DEFENSE NO. 6

Plaintiffs' claims and claims of the putative class and collective action class are barred, in whole or in part, by the *de minimis* doctrine.  If, in fact, Papa John's failed to pay any non-exempt employee below the minimum wage, the uncompensated time is *de minimis* and is therefore not recoverable.

## AFFIRMATIVE DEFENSE NO. 7

Plaintiffs' claims, and claims of the putative collective action class, for liquidated damages are barred, in whole or in part, by statutory exclusions, exceptions, setoffs, or credits under the FLSA and/or state law.

## **AFFIRMATIVE DEFENSE NO. 8**

The Complaint, and each purported claim for relief alleged therein, is barred to the extent that Plaintiffs failed to report or give notice of the allegations upon which they base their Complaint to their employer and/or failed to avail themselves of their employer's internal procedures, means, or methods relating to violations, grievances, complaints, or disputes.

## **AFFIRMATIVE DEFENSE NO. 9**

Subject to proof through discovery, some or all of Plaintiffs' and/or the putative collective action members' and/or class members' claims are barred by the doctrines of waiver and/or laches, or barred in whole or in part because such claims have been discharged and/or abandoned.

## **AFFIRMATIVE DEFENSE NO. 10**

Subject to proof through discovery, some or all of Plaintiffs' and/or the putative collective action members' and/or class members' claims are barred by the doctrines of estoppel, *res judicata*, collateral estoppel, quasi-estoppel, and/or equitable estoppel.

## **AFFIRMATIVE DEFENSE NO. 11**

Papa John's denies there is any basis for Plaintiffs or any alleged similarly situated individual to seek any relief against Papa John's under the FLSA because, other than Plaintiff Sobol, Plaintiffs and the putative collective action members who were employed by Papa John's franchisees were not employees of Papa John's (or any affiliate of Papa John's) within the meaning of the FLSA or the applicable state minimum wage laws.

27665971v.3

## AFFIRMATIVE DEFENSE NO. 12

Papa John's denies there is any basis for Plaintiffs or any alleged similarly situated individual to seek any relief against Defendant under the applicable state minimum wage laws because, other than Plaintiff Sobol, Plaintiffs and the putative class action members were not employees of Papa John's (or any affiliate of Papa John's) within the meaning of the applicable state minimum wage laws.

## AFFIRMATIVE DEFENSE NO. 13

Papa John's actions with respect to Plaintiffs and/or any other allegedly similarly situated individuals were taken in good faith in conformity with and in reliance on a written administrative regulation, order, ruling, approval, interpretation, and/or administrative practice or policy, pursuant to 29 U.S.C. § 259.

## AFFIRMATIVE DEFENSE NO. 14

Papa John's actions with respect to Plaintiffs and/or any other allegedly similarly situated individuals were taken in good faith with reasonable grounds to believe such conduct comported with the FLSA or interpretations of the FLSA pursuant to 29 U.S.C. § 260.

## AFFIRMATIVE DEFENSE NO. 15

Papa John's actions with respect to Plaintiffs and/or any other putative class members were taken in good faith with reasonable grounds to believe such conduct comported with the applicable state minimum wage laws.

## AFFIRMATIVE DEFENSE NO. 16

Plaintiffs and any member of the putative FLSA collective are not entitled to any penalty, multiplication of damages, or extension of any statute of limitations period because Papa John's

did not willfully, knowingly, or intentionally fail to comply with the overtime provisions of the FLSA.

## AFFIRMATIVE DEFENSE NO. 17

Plaintiffs lack standing to bring claims against Papa John's because Papa John's was not Plaintiffs' "employer" as defined by applicable law.

## AFFIRMATIVE DEFENSE NO. 18

Even if Plaintiffs and the persons Plaintiffs purport to represent prevail, their damage claims, including their claims for liquidated damages, penalties, and pre- and post-judgment interest, are barred to the extent that the forms of relief are duplicative of each other.

## AFFIRMATIVE DEFENSE NO. 19

Subject to proof through discovery, Plaintiffs and/or some or all of the putative collective action members and/or class members are not entitled to some or all of the relief sought under the doctrine of consent or because they otherwise fall within a classification of individuals who may not recover under the causes of action alleged.

## AFFIRMATIVE DEFENSE NO. 20

The Complaint, and each and every purported claim for relief alleged therein, is barred because any recovery from Papa John's would result in the unjust enrichment of Plaintiffs and the persons Plaintiffs purport to represent.

## ADDITIONAL RESPONSE

Papa John's currently has insufficient information upon which to form a belief as to whether there may exist additional, as yet unstated, defenses beyond those listed above.  Papa

John's reserves the right to assert additional defenses in the event that discovery indicates additional defenses are appropriate.

**WHEREFORE**, Papa John's denies that Plaintiffs and the class of persons Plaintiffs purport to represent are entitled to any relief.  Papa John's prays:

1.      That Plaintiffs' Complaint be dismissed in its entirety with prejudice;

2.      That Plaintiffs take nothing by reason thereof;

3.      That judgment be entered in favor of Papa John's;

4.      That Papa John's be awarded its costs and attorneys' fees; and

5.      For such other and further relief that the Court deems just and proper.


Dated: July 6, 2016                                        SEYFARTH SHAW LLP


                                                           By:   */s/ Gerald L. Maatman, Jr.*
                                                                 Gerald L. Maatman, Jr.
                                                                 Matthew J. Gagnon
                                                                 Gina R. Merrill
                                                                 Scott Rabe
                                                                 620 Eighth Avenue
                                                                 New York, New York 10018
                                                                 Telephone:  (212) 218-5500
                                                                 Facsimile:  (212) 218-5526

                                                                 Attorneys for Defendant

27665971v.3

<u>**CERTIFICATE OF SERVICE**</u>

Gerald L. Maatman, Jr., an attorney, certifies that on July 6, 2016 he caused a true and

correct copy of **DEFENDANT'S ANSWER TO COMPLAINT** to be filed through the Court's

CM/ECF system, which will cause of a copy of such filing to be served upon all counsel of

record, including the following:

| | |
|---|---|
| Jeremiah Frei-Pearson | David J. Cohen |
| D. Greg Blankinship | STEPHAN ZOURAS, LLP |
| FINKELSTEIN, BLANKINSHIP, | 604 Spruce Street |
| FREI-PEARSON & GARBER, LLP | Philadelphia, PA 19106 |
| 445 Hamilton Avenue, Suite 605 | dcohen@stephanzouras.com |
| White Plains, NY 10601 | |
| jfrei-pearson@FBFGLaw.com | |

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601
jzouras@stephanzouras.com
rstephan@stephanzouras.com

_/s/ Gerald L. Maatman, Jr._
Gerald L. Maatman, Jr.

27665971v.3