UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

WILLIAM DURLING, CHRIS BELLASPICA, :
TOM WOLFF, MICHAEL MORRIS, and :
RICHARD SOBOL, for themselves and all others :
similarly situated, :
:    Case No. 7:16-CV-03592
:
              Plaintiff, :    Class/Collective Action
:
     - against - :
:
PAPA JOHN'S INTERNATIONAL, INC., :
:
              Defendant. :
:

--------------------------------------------------------- X

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

Dated: New York, New York
       December 16, 2016

Gerald L. Maatman Jr.
Matthew J. Gagnon
Gina R. Merrill
Brendan Sweeney
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

*Attorneys for Defendant*
*Papa John's International, Inc.*

**<u>REDACTED</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 4

I.    Defendant Does Not Employ The Delivery Drivers Who Work At Franchisee Restaurants ................................................................................................ 4

II.   Plaintiffs' Counsel Selected Their Novel Case Theory, And Strategically Chose Not To Sue Any Of The Individual Franchise Employers ................................. 5

      ███████████████████████████████████ .................................. 6

IV.   PJI Does Not Direct Or Control Franchisees' Reimbursement Methods ........................... 7

V.    The Vehicle Expense Reimbursement Process Attributed To PJI In Plaintiffs' Motion Is Inaccurate And Based On Outdated Materials From Another Litigation .......... 8

VI.   The Vast Majority Of Opt-Ins In This Litigation Already Brought These Claims Against Their Franchisee Employer, And Settled Those Claims ....................................... 8

ARGUMENT ........................................................................................................ 9

I.    Plaintiffs Cannot Establish That The Delivery Drivers In The Proposed Nationwide Collective Action Are Similarly-Situated ....................................... 9

      A.    Plaintiffs Rely On The Wrong Standard As Significant Discovery Has Occurred, And A Stricter Analysis Applies ........................................... 10

      B.    The Members Of The Putative Collective Action Were Not Subject To A Common Policy, Much Less A Common Policy That Violates The FLSA ........ 11

            1.    Corporate Stores And Franchise Stores Do Not Share A Common Vehicle Reimbursement Policy ............................................... 11

            2.    A Policy Of Reimbursing Drivers On A Per-Delivery Basis Does Not Violate the FLSA .......................................................... 14

II.   The Members Of The Putative Collective Action Are Not Similarly-Situated With Respect To The Main Contention In This Case ............................................... 15

      A.    The Court Should Not Base Its Certification Decision On Inaccurate Assumptions And Conclusory Allegations ........................................... 15

B.     Plaintiffs' Cookie Cutter Declarations Fall Far Short Of Providing The Necessary Support For Conditional Certification.....................................................16

III.   This Court Should Deny The Motion For The Additional And Independent Reason That Fairness And Procedural Considerations Make A Collective Action Improper.................................................................................................................19

IV.   The Participation Of The *Bellaspica* Plaintiffs Further Undermines Any Assertion That Members Of The Putative Collective Action Are Similarly-Situated Or That This Case Is Manageable As A Collective Action...........................................................20

V.    Equitable Tolling Is Appropriate Only In Rare And Exceptional Circumstances That Are Not Present Here.....................................................................................22

A.     PJPA Delivery Drivers Are Not Entitled To Tolling............................................22

B.     Franchisee Delivery Drivers Are Not Entitled To Tolling ...................................23

VI.   The Court Should Not Adopt Plaintiffs' Proposed Form Of Notice .............................23

A.     Plaintiffs' Proposed Form Of Notice Is Misleading And Incomplete .................23

B.     The Opt-In Period Should Be No More Than 60 Days .......................................25

C.     This Court Should Defer Ruling On The Form Of Notice Until After The Parties Meet And Confer About This Issue .......................................................25

CONCLUSION...................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bass v. PJComn Acquisition Corp.*,
No. 09-CV-01614, 2010 WL 3720217 (D. Colo. Sept. 15, 2010)...........................................13

*Bellaspica, et al. v. PJPA, LLC*,
Case No. 13-CV-3014 (E.D. Pa.).................................................................................. *passim*

*Bellaspica v. PJPA*,
3 F. Supp. 3d 257 (E.D. Pa. 2014) .................................................................................7, 14

*Castro v. Spice Place, Inc.*,
No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y. Jan. 30, 2009)..............................................15

*Darrow v. WKRP Mgmt., LLC*,
No. 09-CV-01613-CMA-BNB, 2012 WL 638119 (D. Colo. Feb. 28, 2012).........................13

*DeSilva v. North Shore-Long Is. Jewish Health Sys.*,
27 F. Supp. 3d 313 (E.D.N.Y. 2014) ...................................................................................21

*Freeman v. Wal-Mart Stores, Inc.*,
256 F. Supp. 2d 941 (W.D. Ark. 2003).................................................................................19

*Garrison v. ConAgra Foods Packaged Food, LLC*,
No. 12-CV-737, 2013 WL 1247649 (E.D. Ark. Mar. 27, 2013) ...........................................23

*Gordon v. Kaleida Health*,
No. 08-CV-378, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ...........................................22

*Gromek v. Big Lots, Inc.*,
No. 10 C 4070, 2010 WL 5313792 (N.D. Ill. Dec. 17, 2010) ...............................................19

*Guan Ming Lin v. Benihana Nat'l Corp.*,
755 F. Supp. 2d 504 (S.D.N.Y. 2010)....................................................................14, 17, 18

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989).............................................................................................................10

*Holt v. Rite Aid Corp.*,
333 F. Supp. 2d 1265 (M.D. Ala. 2004) ..............................................................................15

*Khan v. Airport Mgmt. Servs., LLC*,
No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ..............................10

*Korenblum v. Citigroup, Inc.*,
No. 15 Civ. 3383 (JMF), 2016 WL 3945692 (S.D.N.Y. July 19, 2016) ........................ *passim*

*Luiken v. Domino's Pizza, LLC*,
No. 09-516, 2010 WL 2545875 (D. Minn. June 21, 2010)......................................................14

*Mark v. Gawker Media LLC*,
No. 13 Civ. 4347 (AJN), 2014 U.S. Dist. LEXIS 114011 (S.D.N.Y. Aug. 15,
2014) ....................................................................................................................................25

*Martin v. Sprint/united Mgmt. Co.*,
No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)...........................10, 12, 13

*Mendoza v. Casa de Cambio Delgado, Inc.*,
No. 07 Civ. 2579 (HB), 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008)......................................18

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
111 F. Supp. 2d 493 (D.N.J. 2000) ......................................................................................21

*Palacios v. Boehringer Ingelheim Pharm., Inc.*,
No. 10-22398-CIV, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011).........................................16

*Perrin v. Papa John's Int'l, Inc.*,
No. 09-CV-1335, 2011 WL 4089251 (Sept. 14, 2011 E.D. Mo.) ..........................................14

*Prince v. QS America, Inc.*,
No. 15-2033, Dkt. No. 18 (N.D. Ga Aug. 31, 2015) ............................................................14

*Pullen v. McDonald's Corp.*,
No. 14-11081, 2014 WL 4610296 (E.D. Mich. Sept. 15, 2014)............................................15

*Reab v. Elec. Arts, Inc.*,
214 F.R.D. 623 (D. Colo. 2002) ..........................................................................................25

*Rudd v. T.L. Cannon Corp.*,
No. 10-CV-591(TJM/DEP), 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)................................11

*Saleen v. Waste Mgmt., Inc.*,
No. 08-4959, 2009 U.S. Dist. LEXIS 49891 (D. Minn. June 15, 2009)...........................10, 19

*Smith v. Pizza Hut, Inc.*,
No. 09-CV-01632, 2012 WL 1414325 (D. Colo. Apr. 21, 2012)...........................................13

*Soto v. Castlerock Farming & Transp., Inc.*,
No. 1:09-CV-00701-AWI, 2013 WL 6844377 (E.D. Cal. Dec. 23, 2013).............................18

*Tegtmeier v. PJ Iowa, LLC d/b/a "Papa John's,"* Case No. 3:15-CV-110,
2016 WL 5340186  (D. Iowa  Sept. 21, 2016)........................................................................7

iv

*Warman v. Am. Nat'l Standards Inst.*,
   No. 15 Civ. 5486 (RA), 2016 WL 3647604 (S.D.N.Y. June 27, 2016)...................................14

*Wass v. NPC Int'l, Inc.*,
   688 F. Supp. 2d 1282 (D. Kan. 2010) .......................................................................................15

*Wass v. NPC Int'l, Inc.*,
   No. 09-2254, 2011 WL 1118774 (D. Kan. Mar. 28, 2011) ................................................13, 14

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011)........................................................................................25

*Williams v. Accredited Home Lenders, Inc.*,
   No. 05-1681, 2006 WL 2085312 (N.D. Ga. July 25, 2006) ............................................10, 14

*Zerilli-Edelglass v. New York City Transit Auth.*,
   333 F.3d 74 (2d Cir. 2003).........................................................................................................22

**Statutes**

29 U.S.C. § 216 (b) ..............................................................................................................9, 12

29 C.F.R. § 778.217 ...................................................................................................................15

**Other Authorities**

Fair Labor Standards Act ("FLSA") ........................................................................ *passim*

Fed. R. Civ. P. 45 ........................................................................................................................6

## PRELIMINARY STATEMENT

While the gravamen of Plaintiffs' suit is the allegation that pizza delivery drivers are not sufficiently reimbursed for the cost of their vehicle expenses, Plaintiffs assert their claims through a novel joint employer theory.  Plaintiffs' counsel purports to represent not only employees who work at restaurants owned by Papa John's International, Inc. ("PJI" or "Defendant")[1], but also employees who work at restaurants that are *not* owned by PJI, and are instead independently owned and operated franchises.  There are more than 700 independent franchisee owners of more than ███ independently owned restaurants at issue.  Not one of them is a party to this lawsuit, but Plaintiffs' counsel desires to represent their delivery drivers too.

Plaintiffs' motion also proceeds from an incorrect factual premise: *i.e.,* that all of the individuals included in the proposed collective action are subject to the same vehicle expense reimbursement policies.  This is wholly inaccurate and without foundation. The plain fact is that PJI and the more than 700 franchisee owners across the country do not share the same vehicle reimbursement policies or practices.  ████████████████████████████ ██████████████████████████████████████████████.  PJI does not direct or instruct franchisees as to whether or how they should reimburse delivery drivers for vehicle expenses, and franchisee practices not only differ from PJI, but – to the best of PJI's knowledge – differ from one another.  PJI is not the joint employer of those drivers and does not determine how they are paid or reimbursed.

---

[1] Papa John's International, Inc. is the parent company of all affiliated subsidiaries and is also the Franchisor as disclosed in the Franchise Disclosure Document. Papa John's International, Inc. is the contracting party on the franchise agreement with each franchisee. Papa John's International, Inc. operates corporate stores in a few select markets, but Papa John's USA, Inc. is the main operating entity that operates corporate stores and employs most corporate employees. Most of the employees that support the franchise business are employed by Papa John's USA, Inc. For ease of reference, these entities are collectively referred to herein as "PJI."

To the extent that Plaintiffs' counsel contends that conditional certification is "near automatic" and essential facts do not matter until a second stage decertification period, they are asking the Court to turn a blind eye to facts that will never change, and to create a nationwide collective action – with resulting costs and burdens to 700 plus non-party franchisee businesses, PJI, and this Court – that is based on a flawed legal premise and unsubstantiated allegations. Courts in this district have rejected similar attempts to use the conditional certification device to create large, complex "joint employer" cases where the evidence did not support a finding that the purported "joint employer" imposed an unlawful policy on the members of the proposed collective action. Plaintiffs' Motion should be denied for similar reasons.

Even if the putative collective action members were similarly situated (which they are not), the Motion also should be denied because of the insurmountable manageability problems that their novel case theory would create if notice were to issue to members of such a broad and diverse collective action. Since each independently owned franchisee sets its own policy regarding vehicle expense reimbursement, in order to evaluate Plaintiffs' claims and those of the members of the putative collective action, this Court would have to conduct a series of individualized, fact-intensive inquiries across more than 700 different businesses. Plaintiffs' proposed collective action would devolve into a series of individual mini-trials, with each weighing the testimony and evidence submitted by one set of employees against the evidence and testimony adduced from their respective franchisee employer. The immense difficulty of doing so would be compounded many times over by the fact that the franchisees are not parties to this action and, as ordered by Magistrate Judge Judith McCarthy in her discovery ruling, the franchisees' evidence would have to be obtained through non-party subpoenas.

Recognizing that they must seek employee information from over 700 third-party franchisees, Plaintiffs seek equitable tolling to account for the time it will take to gather employee information from each of the franchisees.  Far from meeting the standard for "rare and exceptional circumstances" that might justify tolling, any delay is the result of the strategic decision of Plaintiffs' counsel to not sue the actual employers of franchisee drivers, but instead to sue only the franchisor.  This request should be denied.

In addition, this lawsuit is the direct result of a highly unusual factual background involving a separate and prior litigation filed by Plaintiffs' counsel against a franchisee.  In 2013, in a case captioned *Bellaspica, et al. v. PJPA, LLC*, Case No. 13-CV-3014 (E.D. Pa.), Plaintiffs' counsel and three of the named Plaintiffs in this case brought another lawsuit alleging the same vehicle expense reimbursement claims against their franchisee employer, PJPA, LLC ("PJPA"). Indeed, of the 216 current opt-ins to this litigation, 214 were opt-ins to the *Bellaspica* litigation. In March 2016, the *Bellaspica* plaintiffs resolved their claims and agreed to releases in return for a settlement, and now those same attorneys and opt-ins seek a double recovery through this litigation.  As a result, there are a host of factual and legal defenses that apply to the *Bellaspica* opt-ins that do not apply to any other individuals in the putative collective action, further undermining the ability of any plaintiff from *Bellaspica* to represent the broader interests of the putative collective action members in this lawsuit, and undermining any argument that the proposed collective action is composed of individuals who are similarly-situated to one another.

Plaintiffs' counsel also seek to toll the claims of the *Bellaspica* plaintiffs and opt-ins. This request is without merit.  The *Bellaspica* plaintiffs were well aware of any potential claims against PJI at the time of the *Bellaspica* litigation, and yet they did nothing to pursue those claims.  Instead, the *Bellaspica* plaintiffs sued their employer, PJPA, as well as two individuals

under a joint employer theory of liability.  The *Bellaspica* plaintiffs plainly did not act with reasonable diligence with respect to potential joint employer claims against PJI, and this tolling request must also be denied.

<div align="center">**FACTUAL BACKGROUND**</div>

## I.   Defendant Does Not Employ The Delivery Drivers Who Work At Franchisee Restaurants

The 700 plus franchisees who operate their own businesses have entered into a contractual relationship with PJI which allows them to operate under the Papa John's brand and thereby benefit from its name recognition and goodwill.  (S. Smith Dec. ¶ 4,  Ex. A.)  In return, franchisees agree to comply with franchise-wide brand standards that ensure – for the benefit of PJI and franchise owners alike – that all locations deliver the same high-quality products and customer service that attracts and retains customers to Papa John's restaurants.  (*Id.*)

Betraying a fundamental misunderstanding of the business model, Plaintiffs allege that PJI "hid[es] behind" the franchisor model in a "callous attempt to reap profits," and Plaintiffs characterize the model as "façade" intentionally designed to facilitate "wage theft."  (Am. Compl.  ¶¶ 3, 19, 33-34.)  These outlandish allegations are unsupported and pointedly ignore that the franchisor/franchisee model is a common, accepted and legitimate approach to business.[2]



---

[2] Due to the extraordinary nature of Plaintiffs' motion, the International Franchise Association ("IFA"), an organization which represents franchises worldwide, is seeking leave to file an amicus brief in support of Defendant's opposition.  (Maatman Dec. ¶ 7, Ex. 5.)

███████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

Consistent with this contractual agreement, PJI does not maintain personnel files for franchisee employees, nor does it issue performance reviews or corrective action for franchisee employees, as it does not function as their employer.  (S. Smith Dec. ¶¶ 6-7.)

A natural consequence of PJI's contractual relationship with franchisees is that PJI does not control or direct the wages or expense reimbursement practices of franchisees, including reimbursement of vehicle expenses, and it does not require that franchisees provide that information to PJI as a part of any franchise audit or similar procedure.  (S. Smith Dec. ¶ 7; Maatman Dec., Exs. 1-2.)  In sum, PJI is not a joint employer of the putative collective action members employed by the over 700 businesses whose interests are implicated by this lawsuit.

## II.    Plaintiffs' Counsel Selected Their Novel Case Theory, And Strategically Chose Not To Sue Any Of The Individual Franchise Employers

Of the five named Plaintiffs, only one – Richard Sobol – was ever employed at a corporate-owned restaurant.  (Heelan Dec. ¶ 6.)  There is no dispute that the vast majority of the putative collective action were directly employed by one of 700 plus independently owned franchisees, and not PJI.  (*Id.* ¶¶ 3-5.)  Nonetheless, Plaintiffs' counsel have strategically chosen not to sue *any* of the franchisee businesses who employ those workers.

As a practical matter, the litigation tactic of Plaintiffs' counsel enlarges the scope of their lawsuit from approximately █████████████████████████████

██████████████████████████████████

████████.  (*Id.* ¶¶ 3-5.)  As recognized by Magistrate Judge McCarthy during a recent discovery

conference, the franchisees are non-parties to this action, and to the extent Plaintiffs' counsel seek materials or information in the possession of those franchisees, they must issue non-party subpoenas to those businesses pursuant to Rule 45. (Oct. 5, 2016 Minute Order.)

[redacted]

PJI's process for determining reimbursement rates for vehicle expenses [redacted]

[redacted]

**IV.    PJI Does Not Direct Or Control Franchisees' Reimbursement Methods**

The Franchise Agreement does not permit PJI to interfere with the wages of franchisee

employees, and explicitly states ████████████████████████████████████████████

████████████████████████████████████████████████████ PJI does

not provide instruction or direction as to how franchisees should pay delivery drivers, nor does it

mandate the method that franchisees use to reimburse for vehicle expenses.  (S. Smith Dec. ¶ 7.)

Franchisees reimburse vehicle costs in whatever way they see fit.  Some franchisees may

reimburse on a per mile basis, others may calculate reimbursements according to a percentage of

sales, others may reimburse on a per delivery basis that varies by driver, store or market, and

others may reimburse on a per delivery basis that is uniform across the restaurants owned by the

franchisee.  For example, the court in *Bellaspica* stated that delivery drivers employed at the

stores owned by PJPA reimbursed delivery drivers at a flat rate of $1 per delivery and that rate

did not fluctuate.  *Bellaspica v. PJPA*, 3 F. Supp. 3d 257, 259 (E.D. Pa. 2014) (Maatman Dec.

Ex. 3). ████████████████████████████████████████████████████████

████████████████████████████████████████ Yet a different franchisee does

not reimburse on a per-delivery basis at all, but instead remits 5% of net sales to cover vehicle

expenses.  *Tegtmeier v. PJ Iowa, LLC d/b/a "Papa John's,"* Case No. 3:15-CV-110, 2016 WL

5340186, at *2 (D. Iowa  Sept. 21, 2016) (Maatman Dec., Ex. 4). ████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████

## V.     The Vehicle Expense Reimbursement Process Attributed To PJI In Plaintiffs' Motion Is Inaccurate And Based On Outdated Materials From Another Litigation

The vehicle expense reimbursement process described in Plaintiffs' Motion contains

many factual inaccuracies, but most importantly, the Motion does not correctly describe the

practices at PJI during the FLSA statutory period.  (Motion at 5-11.)  ██████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████

## VI.    The Vast Majority Of Opt-Ins In This Litigation Already Brought These Claims Against Their Franchisee Employer, And Settled Those Claims

Plaintiffs' counsel in this matter already represented at least three of the named Plaintiffs

in a lawsuit based on the exact theory alleged here.[3]  (Maatman Dec. ¶ 8, Ex. 6.)  Not

---

[3] Plaintiffs' counsel represented Bellaspica, Morris and Wolff in the *Bellaspica* litigation.  (Maatman Dec. ¶ 8.)  The composition of the named plaintiffs has changed since the plaintiffs were required to appear for deposition, and

surprisingly, that lawsuit was directed at the actual employer of those Plaintiffs, the franchisee PJPA, and those claims were settled in the spring of 2016, just a few months before Plaintiffs' counsel filed suit here.  (*Id.* ¶ 12, Ex. 6.)

This Court's docket reflects an unusual number of opt-ins to this litigation given that no notice has been authorized by the Court.  Of the 216 opt-ins in this litigation, 214 were apparently opt-ins in the *Bellaspica* litigation; as previous clients of Plaintiffs' counsel, they were covered by the settlement in that case.  (*Id.* ¶¶ 10-12, Ex. 6.)  All of these 214 individuals were employed at stores owned by PJPA and were reimbursed for expenses pursuant to practices set by PJPA, not PJI.

Contrary to suggestions in Plaintiffs' Motion, PJI was in no way involved in the settlement of the *Bellaspica* claims.  ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

This business decision was wholly unrelated to the *Bellaspica* litigation, and at no time did PJI instruct or direct PJPA to settle any lawsuit, nor would it have the right to do so.  (*Id.* ¶¶ 16-17.)

## ARGUMENT

**I.    Plaintiffs Cannot Establish That The Delivery Drivers In The Proposed Nationwide Collective Action Are Similarly-Situated**

The FLSA permits a plaintiff to maintain an action on "behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216 (b).  Courts have discretion in appropriate circumstances to regulate the notice, if any, sent to similarly-situated potential plaintiffs.  *See*

---

Defendant understands that James Morton is to replace Bellaspica as a named plaintiff.  (*Id.* ¶ 9.)  Morton was also an opt-in to the *Bellaspica* litigation and was represented by Plaintiffs' counsel in that suit.  (*Id.*)

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 168-70 (1989). Court-facilitated notice is not mandatory and it is not automatic. This is because certification imposes significant costs and burdens on the parties and Court, such as "the expense of sending out notice to the putative collective members, the substantial widening of discovery, and the burden on the courts of administrating the thousands of claims brought . . . nationwide." *Saleen v. Waste Mgmt., Inc.*, No. 08-4959, 2009 U.S. Dist. LEXIS 49891, at *29 (D. Minn. June 15, 2009). Where, as here, significant numbers of workers employed by third-parties are at issue, courts consider the burdens imposed on all parties. *See, e.g., Williams v. Accredited Home Lenders, Inc.*, No. 05-1681, 2006 WL 2085312, at *4 & n.4 (N.D. Ga. July 25, 2006) (noting that the similarity requirement must be applied with "rigor" in large cases).

### A.   Plaintiffs Rely On The Wrong Standard As Significant Discovery Has Occurred, And A Stricter Analysis Applies

The parties have conducted significant discovery in this case. (Maatman Dec. ¶ 17). In light of this fact, the Court should apply a heightened standard in determining whether conditional certification is appropriate. *See Korenblum v. Citigroup, Inc.*, No. 15 Civ. 3383 (JMF), 2016 WL 3945692, at *3-4 (S.D.N.Y. July 19, 2016). Under a heightened standard, the burden is on Plaintiffs to prove that other employees at issue are similarly-situated to them, and the Court may consider evidence obtained in discovery in making this determination. *Id.*

Even applying a first stage standard, plaintiffs must show a "factual nexus" that binds all delivery drivers together under a common unlawful practice. *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *5 (S.D.N.Y. Jan. 4, 2016). Contrary to Plaintiffs' argument, although "plaintiff's burden at this stage is modest, it is not non-existent," and it "cannot be satisfied simply by unsupported assertions." *Khan v. Airport Mgmt. Servs., LLC,* No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *4-5 (S.D.N.Y. Nov. 16, 2011) (internal quotation

marks omitted).  At the first stage, "a court must nonetheless take a measured approach …
mindful of the potential burdens associated with defending against an FLSA claim involving a
large and broadly defined collective group of plaintiffs."  *Rudd v. T.L. Cannon Corp.*, No. 10-
CV-591(TJM/DEP), 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011).

No matter which standard is applied, Plaintiffs have failed to meet their burden here.

**B.      The Members Of The Putative Collective Action Were Not Subject To A
          Common Policy, Much Less A Common Policy That Violates The FLSA**

   *1.      Corporate Stores And Franchisee Stores Do Not Share A Common
            Vehicle Reimbursement Policy*

Plaintiffs' Motion fails because there is no common reimbursement policy across PJI and
the 700 plus businesses employing the franchisee drivers. ██████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

        Several courts in this district have rejected attempts to use the conditional certification
device to create large, complex "joint employer" cases where the evidence did not support a
finding that the purported "joint employer" imposed an unlawful policy on the members of the
proposed collective.  In *Korenblum v. Citigroup, Inc.*, No. 15-CV-3383 (JMF), 2016 WL
3945692 (S.D.N.Y. July 19, 2016), the plaintiffs sought to represent more than 7,500 individuals

who were employed by forty different employers.  The only thing that these individuals had in common was the fact that their employers contracted with defendant Citigroup to provide IT services.  *Id.* at *1.  Despite sparse evidentiary support, Plaintiffs claimed that Citigroup was their "joint employer" and sought leave to send notices to this broad collective.  *Id.*

The court carefully considered the appropriate standard for reviewing a motion for conditional certification after discovery had started but was not closed.  *Id.* at *2-4.  The court stated that its review "may properly grow more exacting as discovery proceeds."  *Id.* at *3.  Recognizing that certification under § 216(b) is merely a "case management tool," the court refused to rely on unsubstantiated allegations that were contrary to uncontroverted evidence that had been produced in discovery.  *Id.* at *3-4.  Noting that the key requirement for conditional certification is a common "unlawful policy," the court rejected plaintiffs' motion.  *Id.* at *2-4.  Like the Plaintiffs in this case, the plaintiffs in *Kornblum* failed to present evidence that Citigroup imposed or controlled the policy that they were challenging and they failed to present evidence to substantiate their claims that Citigroup was liable as a "joint employer."[4]  *Id.* at *7.

Similarly, in *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016), plaintiffs were agents who gathered applications for enrollment in a Lifeline service which was owned by the telecommunications company Sprint.  *Id.* at *5.  Plaintiffs alleged that they should have been classified as employees rather than independent contractors and brought suit against Sprint and the intermediary companies who retained their

---

[4] As in this case, the *Korenblum* plaintiffs and their counsel had previously sued one of the vendors and, after conditional certification, obtained settlements.  *Id.* at *7.  The Court found that while the prior litigation did not have preclusive effect: "it does bear on the efficiency of certifying a collective action."  *Id.* at *7.  The court continued: "put simply, to the extent that the collective-action process is intended to promote efficiency, the law should not allow, and thus encourage, plaintiffs to bring piecemeal litigation in the way that Plaintiffs have done here; instead, it should incentivize plaintiffs to name all relevant parties in a single suit and thus ensure that notice, if given, is provided in the most efficient manner possible. In short, certifying a collective action and authorizing notice with respect to [the IT vendor] alone would undermine rather than promote efficiency, and the Court – exercising its discretion  – declines to go that route."  *Id.*

services, alleging that Sprint was a joint employer. *Id.* at *5-6. Plaintiffs moved for certification

of a nationwide collective action including all persons who gathered Lifeline applications,

regardless of the direct employer. *Id.* at *5. The court denied conditional certification of the

broad collective. *Id.* As in *Korenblum*, the key factor in the court's conclusion was the lack of a

common unlawful policy. The court explained that while Sprint mandated some common

practices that bore on agents, "for purposes of determining the viability of a collective for which

conditional certification is sought, 'the relevant practice that binds FLSA plaintiffs together'

must be 'the one that is alleged to have violated the statute itself.'" *Id.* at *6 (citation omitted).

The court reasoned that "the Sprint documents on which plaintiffs rely are conspicuously silent

as to how Agents are to be classified and paid. Yet it is these practices, not the ones addressed in

the Sprint documents, that are the core determinants of whether Sprint choreographed nationwide

policies that violated the FLSA." *Id.* at *6. Likewise, Plaintiffs here rely on the

franchisor/franchisee model to attribute responsibility for any franchisee reimbursement

practices to PJI, but, similar to *Martin*, the agreements establishing the franchisee/franchisor

relationship are "conspicuously silent" as to how delivery drivers should be paid and reimbursed.

(S. Smith Dec., Ex. A, § 21(b)).

  Plaintiffs suggest that conditional certification is appropriate here because other courts

have granted conditional certification in pizza delivery driver cases. (Motion at 1, 15.) The

cases relied on by Plaintiffs, however, are entirely  distinguishable because they each involved a

single corporate owner or a single franchisee and did not seek to encompass drivers employed by

more than 700 independent businesses under a purported "joint employer" theory.[5]

---

[5] *See Bass v. PJComn Acquisition Corp*., No. 09-CV-01614, 2010 WL 3720217, at *4 (D. Colo. Sept. 15, 2010)
(single franchisee); *Wass v. NPC Int'l, Inc.*, No. 09-2254, 2011 WL 1118774, at *4 (D. Kan. Mar. 28, 2011) (single
franchisee); *Smith v. Pizza Hut, Inc*., No. 09-CV-01632, 2012 WL 1414325, at *2 (D. Colo. Apr. 21, 2012)
(corporate-owned stores); *Darrow v. WKRP Mgmt., LLC*, No. 09-CV-01613-CMA-BNB, 2012 WL 638119, at *1

### 2. *A Policy Of Reimbursing Drivers On A Per-Delivery Basis Does Not Violate the FLSA*

Even assuming that there is a per-delivery reimbursement policy across some unknown number of franchise businesses, this is not enough to demonstrate that Plaintiffs are similarly-situated.  Rather, Plaintiffs must demonstrate that this policy violates the FLSA.  *See Warman v. Am. Nat'l Standards Inst.*, No. 15 Civ. 5486 (RA), 2016 WL 3647604, at *4 (S.D.N.Y. June 27, 2016).  Courts routinely require that plaintiffs identify a single, common unlawful policy and not a facially lawful policy or plan that might be illegal if applied in a certain way.  *See, e.g., Williams*, 2006 WL 2085312, at *4 (in denying conditional certification, the court noted that given defendant's declarations "the best that can be said of the plaintiffs' case is that some [individuals] were paid overtime and some were not.  If this case goes forward as a collective action, an individualized inquiry into why some were not paid overtime is required.").

Plaintiffs' claim is that Defendant's per-delivery reimbursement policy was not sufficient to reimburse delivery drivers for their actual vehicle costs to such an extent that their effective hourly wage fell below the required minimum wage.  (Am. Compl. ¶¶ 60-61.)  This case theory depends on multiple factors, including the hourly wage of the employee, including tips; the employee's actual vehicle costs; and the amount of reimbursement for those vehicle costs.  Whether a per-delivery reimbursement policy violates minimum wage provisions depends on whether the reimbursement was not enough to cover the delivery driver's actual vehicle costs, and whether this difference was substantial enough to cause the driver's rate to fall below minimum wage.  But there is nothing about a per-delivery reimbursement policy itself that

---

(D. Colo. Feb. 28, 2012) (single franchisee); *Perrin v. Papa John's Int'l, Inc.*, No. 09-CV-1335, 2011 WL 4089251 (Sept. 14, 2011 E.D. Mo.) (corporate-owned stores); *Bellaspica v. PJPA, LLC*, 3 F. Supp. 3d 257 (E.D. Pa. 2014) (single franchisee); *Prince v. QS America, Inc.*, No. 15-2033, Dkt. No. 18 (N.D. Ga Aug. 31, 2015) (single franchisee); *Luiken v. Domino's Pizza, LLC*, No. 09-516, 2010 WL 2545875 (D. Minn. June 21, 2010) (corporate-owned stores).  In addition, none of those cases applied the law of the Second Circuit.  *See Wass*, 2011 WL 1118774, at *4 (noting that *Guan Ming Lin* was decided under Second Circuit, not Tenth Circuit, law).

violates the FLSA.  *See Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) ("[e]ven assuming that plaintiffs' affidavits do establish that Defendant Restaurants did follow similar policies with regard to compensation of its delivery personnel, plaintiffs have not made the necessary showing that these actions were a reflection of a common policy, maintained by all defendants, in violation of the FLSA."); *Pullen v. McDonald's Corp.*, No. 14-11081, 2014 WL 4610296, at *2 (E.D. Mich. Sept. 15, 2014) (denying first stage certification where "1,000 to 3,000 putative class members had varying pay rates, hours worked and deductions methodologies applied to their pay" and the reimbursements therefore "may or may not have dropped their average hourly pay to such an extent that it would violate the FLSA.").[6]

## II.    The Members Of The Putative Collective Action Are Not Similarly-Situated With Respect To The Main Contention In This Case

### A.    The Court Should Not Base Its Certification Decision On Inaccurate Assumptions And Conclusory Allegations

Plaintiffs' speculative assumption about a joint employer relationship and a common reimbursement policy are central to their Motion, but as explained above, their assumptions are incorrect.  This Court should not turn a blind eye to facts that are not going to change with further discovery.  *See, e.g., Holt v. Rite Aid Corp.*, 333 F. Supp. 2d 1265, 1274 (M.D. Ala. 2004) (rejecting plaintiff's argument that the court should ignore defendant's evidence at the conditional certification stage).  The court's review of the evidence "may properly grow more exacting as discovery proceeds."  *Korenblum,* 2016 WL 3945692, at *3.  The fact that there is no

---

[6] Plaintiffs claim that any reimbursement policy that pays less than the IRS mileage reimbursement rate leads to an FLSA violation.  (Motion at 5-6.)  In fact, the FLSA's implementing regulations make clear that an employer is permitted to reasonably approximate an employee's business related expenses when reimbursing employees for those expenses.  *See Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1286 (D. Kan. 2010) ("Thus, under [29 C.F.R.] Section 778.217 of the regulations, an employer may reasonably approximate the amount of expenses in reimbursing an employee for expenses incurred for the benefit of the employer…" and noting 29 C.F.R. § 778.217 is applicable to minimum wage calculations.)

common reimbursement policy applicable to all collective action members will not change over the course of discovery. Indeed, Plaintiffs do not actually claim that the members of the proposed collective were subject to a common, illegal reimbursement policy. Instead, citing to their document requests, they assert: "to date, Defendant has not identified any store that used a different reimbursement policy." (Motion at 5.) But Defendants do not maintain policies for the independent franchisees, and therefore could not have produced those policies in discovery. (Oct. 5, 2016 Minute Order.)

## B.      Plaintiffs' Cookie Cutter Declarations Fall Far Short Of Providing The Necessary Support For Conditional Certification

In purported support of their Motion, Plaintiffs offer four speculative declarations from Named Plaintiffs. These declarations do nothing to establish the factual nexus required for conditional certification. As an initial matter, the declarations are nearly identical, which suggests they are based on a lawyer's theories and not on personal knowledge.[7] *See e.g.*, *Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-22398-CIV, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) ("Plaintiff attaches three almost identical, cut-and-paste declarations .... The Court strongly disapproves of the use of boilerplate attorney-drafted declarations").

Further, Plaintiffs admit that the key statements offered to support conditional certification are pure speculation. Each of the declarations state:

- "I believe all of my delivery driver colleagues drove an average of at least 5 to 10 miles per delivery;"

- "I believe my delivery driver colleagues all incurred higher-than-average driving expenses as a result of their jobs;"

---

[7] Plaintiff Durling's testimony provides a stark example that demonstrates that the declarations are not based on personal knowledge. Paragraph 1 of Durling's declaration states: "I worked as a delivery driver at the Papa John's Pizza store, owned by Oney Bayside, LLC." Durling Dec. ¶ 1. Oney Bayside, LLC is a corporation that operates a Papa John's franchise location. At his deposition, Durling testified that he has never heard of Oney Bayside, LLC and could not explain how this statement was included in his declaration. (Durling Tr. 29:3-30:5).

- "To compensate me and my colleagues for our driving expenses, we were paid a flat rate per delivery"

- "I do not believe this flat rate came close to compensating any of my delivery driver colleagues for his or her actual driving expenses."[8]

But each of the declarants acknowledged that they do not know the vehicle reimbursement policies used at stores other than the stores where they worked.[9] Further, each of the declarants admitted that their statements about "delivery driver colleagues" were limited to the delivery drivers that they themselves had worked with, and even with respect to those drivers, they did not know vehicle expenses or amounts paid to these drivers.[10] When read in this light, the Court is left with no basis to extend the declarants' personal experiences to tens of thousands of other individuals who worked at stores owned and operated by separate entities, each with their own wage and reimbursement policies. Tellingly, Plaintiffs' counsel do not cite to any decision by any court from any circuit where a nationwide collective action involving 700 different businesses was conditionally certified based on four cookie-cutter declarations that contain assertions subsequently recanted in deposition testimony.

The insufficiency of the four declarations to establish a common policy across 700 businesses is illustrated by the decision in *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010). In *Guan Ming Lin*, the court denied conditional certification on a vehicle reimbursement claim. *Id.* at 512. The plaintiffs in *Guan Ming Lin* were delivery drivers who claimed their employer's inadequate vehicle reimbursement policies caused them to earn less than minimum wage. *Id.* The court denied plaintiffs' motion for conditional certification

---

[8] Wolff Dec. ¶¶ 9, 11, 14, 16; Morris Dec. ¶¶ 9, 11, 14, 16 ; Sobol Dec. ¶¶ 9, 11, 14, 16; Durling Dec. ¶¶ 9, 11, 14, 16.

[9] Wolff Tr. 159:1-14; 166:6-167-17; Morris Tr. 171:18-23; Sobol Tr. 150:8-24; Durling Tr. 132:8-12.

[10] Wolff Tr. 167:14-17; 168-23-169:2; Morris Tr. 175:3-8; Sobol Tr. 148:4-12; Durling Tr. 107:22-108:22; 109:15-21.

for two key reasons.  First, the plaintiffs did not provide specific information about their vehicle expenses or whether unreimbursed costs reduced their earnings below minimum wage.  *Id.* Second, "beyond the conclusory statements contained in their own declarations," the plaintiffs did not provide information about the "other employees" they purported to represent.  *Id.*  The court recognized that "it is highly unlikely that such expenses would be uniform throughout the proposed plaintiff class" and, as a result, "it would be inappropriate to speculate as to the expenses and resulting wage calculations of other employees."  *Id.* at 512-13.

Plaintiffs' declarations and Motion suffer from even greater deficiencies.  Plaintiffs ask the Court to find that tens of thousands of delivery drivers employed by over 700 independent business entities are similarly-situated with respect to the vehicle expenses incurred, the amounts reimbursed, and the impact that expenses and reimbursements had on their wages – all based on four speculative declarations.[11]  These declarations cannot and do not demonstrate the required factual nexus.  *See Mendoza v. Casa de Cambio Delgado, Inc.*, No. 07 Civ. 2579 (HB), 2008 WL 938584, at *2 (S.D.N.Y. Apr. 7, 2008) ("Plaintiffs have failed to provide allegations of the factual nexus between the named Plaintiffs and other putative class members. The affidavits by the former employees appear to be boilerplate and virtually identical.")

Finally, even if the proposed litigation were limited to corporate stores, the claims are nonetheless inappropriate for collective action treatment.  Plaintiffs provided a declaration from **one** individual who works at a corporate-owned store – Richard Sobol.  That declaration

---

[11] The only other evidence that Plaintiffs offer are declarations from the year 2010 filed in a different lawsuit altogether, which reflect a time period that is more than three years prior than the statutory period in this case.  (Frei-Pearson Decl., Ex. 1.)  The Court should disregard this "evidence" because it is outdated and irrelevant to the issues in this case and, moreover, related only to PJI's former reimbursement practices – and not those of the 700 plus franchisees at issue in this case.  *See, e.g., Soto v. Castlerock Farming & Transp., Inc.*, No. 1:09-CV-00701-AWI, 2013 WL 6844377, at *12 (E.D. Cal. Dec. 23, 2013), report and recommendation adopted, No. 1:09-CV-00701-AWI, 2014 WL 200706 (E.D. Cal. Jan. 16, 2014) (granting motion to strike where declarant did not work during the class period as "not relevant.").

provides no basis for the Court to conclude that delivery drivers at all corporate-owned stores are similarly-situated with respect to their minimum wage claims.  At deposition, Sobol admitted that he has no knowledge as to the amounts earned by delivery drivers other than himself, the average miles that they drive, the tips they earned, or the amount of vehicle expenses incurred.[12] Sobol's declaration is therefore insufficient for the Court to conclude that individuals employed at corporate-owned stores are similarly-situated with respect to their minimum wage claims.

### III.    This Court Should Deny The Motion For The Additional And Independent Reason That Fairness And Procedural Considerations Make A Collective Action Improper

As discussed above, the issues in this case – vehicle expenses incurred, reimbursements paid, effective wages, and seeking a double recovery despite signed releases – are highly individualized.  The Court should not expand this case and facilitate notice to thousands of individuals where Plaintiffs have not demonstrated that these issues can be fairly adjudicated on a collective basis.  *Saleen*, 2009 U.S. Dist. LEXIS 49891, at *28-30 (denying motion for conditional certification because plaintiffs failed to show that the case is "manageable as a collective action.").  Allowing such an action to proceed would waste resources and unfairly prejudice Defendant.  *Gromek v. Big Lots, Inc.*, No. 10 C 4070, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) (denying conditional certification where the claims were not manageable); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (noting it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.")

A collective action that includes employees of corporate-owned and franchisee-owned stores would be unmanageable and unfair.  Plaintiffs' allegations that "all Papa John's delivery

---

[12] Sobol Tr. 86:19-87:25; 147:6-9; 149:3-24; 150:8-24.

drivers are subject to the same wage and hour policies" and that all stores operate under a "per delivery reimbursement policy" are patently incorrect and inaccurate. (Maatman Dec. ¶¶ 4-6, Exs. 1-4). The Court has already recognized that the more than 700 franchise owners are not parties to this litigation.   (Oct. 5, 2016 Minute Order.) Given that franchise employers set their own wage rates and reimbursement policies for their employees, the Court would be required to supervise hundreds of "mini-trials" to determine whether these employers violated the FLSA by maintaining reimbursement policies that resulted in delivery drivers being paid less than minimum wage. Such a case is clearly not appropriate for collective action treatment.

**IV.    The Participation Of The *Bellaspica* Plaintiffs Further Undermines Any Assertion That Members Of The Putative Collective Action Are Similarly-Situated Or That This Case Is Manageable As A Collective Action**

Like the plaintiffs in *Korenblum*, "this is not Plaintiffs' first bite at the collective-action apple." 2016 WL 3945692, at *7. Plaintiffs' counsel already brought suit on behalf of three of the named Plaintiffs alleging these same vehicle reimbursement claims against their employer PJPA, a franchisee. (Maatman Dec. ¶ 8, Ex. 6.) The *Bellaspica* suit was settled by Plaintiffs' counsel in March 2016, and now those same Plaintiffs seek a double recovery through this litigation. Illustrating the extent to which this litigation is driven by the *Bellaspica* settlement, of 216 opt-ins to this litigation, 214 were opt-ins to the *Bellaspica* case, and of five named Plaintiffs in this litigation, three were named plaintiffs in *Bellaspica*. (*Id.* ¶¶ 8-12, Ex. 6.)

Plaintiffs' joint employer theory in this case seems to be driven in large part by PJI's lawful insistence that PJPA pay back a loan ███████████████████████████ ████████████████████████████. (J. Smith Dec. ¶¶ 6-13.) Plaintiffs claim that PJI required repayment of the loan because of the *Bellaspica* litigation (Motion at 12-13), but this inaccurate statement is based on nothing more than self-interested speculation by Plaintiffs' counsel.

Even if Plaintiffs' factual premise were true (which it is not), those circumstances are limited to delivery drivers who were directly employed by PJPA, and would not apply to delivery drivers who worked for PJI or the 700 plus other franchisee businesses.  As a result, there are a host of factual and legal defenses – such as *res judicata* and the bar on double recovery – that apply to the PJPA Plaintiffs that do not apply to any other individuals encompassed by the proposed collective action.  These significant differences undermine the ability of the PJPA Plaintiffs to represent the broader interests of the collective action members, and also undermine any claim that the proposed collective action is comprised of individuals who are similarly-situated to one another.  *DeSilva v. North Shore-Long Is. Jewish Health Sys.*, 27 F. Supp. 3d 313, 325 (E.D.N.Y. 2014) (decertifying collective action because individualized nature of defenses '"weighs heavily against proceeding… as [an FLSA] collective action"') (internal citation omitted).

Moreover, the various factual and legal defenses that apply only to the *Bellaspica* opt-ins exacerbate the manageability issues presented in this case because the Court would have to conduct mini-trials on the issue of whether the *Bellaspica* plaintiffs were precluded from filing suit or were already compensated for the claims asserted here.  These individualized issues – including signing settlement releases and seeking another recovery on claims released but re-asserted in this suit – also undermine the ability of the *Bellaspica* Plaintiffs to act as representatives in this collective action.  *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) (named plaintiffs were not adequate representatives because they were not similarly situated to opt-in plaintiffs).

V.    **Equitable Tolling Is Appropriate Only In Rare And Exceptional Circumstances That Are Not Present Here**

"[E]quitable tolling is only appropriate in [ ] rare and exceptional circumstance[s] . . . in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotations omitted).  In considering a request for equitable tolling, a court "must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply."  *Id.*  In the Second Circuit, "[c]ases in which tolling was granted have involved either: a court-imposed stay pending the Court's resolution of a dispositive motion, a stipulation among the parties to toll the statute, tolling only for plaintiffs who already had filed consents[,] or the employer's failure to post required notices advising employees of their FLSA rights." *Gordon v. Kaleida Health*, No. 08-CV-378, 2009 WL 3334784, at *13 (W.D.N.Y. Oct. 14, 2009) (citations omitted) (denying equitable tolling where "[n]one of those circumstances appear to exist").

A.    **PJPA Delivery Drivers Are Not Entitled To Tolling**

Plaintiffs assert that the Court should toll the limitations period for any individual who was a plaintiff or opt-in plaintiff in *Bellaspica* beginning from the date they joined that collective action.  (Motion at 20).  In order to benefit from equitable tolling, Plaintiffs must demonstrate that they acted with "reasonable diligence" during the relevant time period, and the *Bellaspica* plaintiffs cannot make this showing.  Indeed, in *Bellaspica*, the plaintiffs brought suit not only against PJPA, but also two other individuals under a joint employer theory of liability.  The *Bellaspica* plaintiffs knew of their potential claims against PJI at the time they filed suit against PJPA and could have asserted joint employer liability in that suit, but they chose instead to sue

their actual employer, and cannot now claim "extraordinary circumstances" as a result of that strategic litigation decision. Indeed, Plaintiffs Morris and Wolff testified that their theory of joint employer liability against PJI is based on information known to them at the time of the *Bellaspica* suit, but they could give no reason that PJI was not named as a defendant.[13]

### B.    Franchisee Delivery Drivers Are Not Entitled To Tolling

Plaintiffs also argue that the Court should equitably toll the statutory period for "[a]ll Franchisee Delivery Drivers." (Motion at 20.) Plaintiffs do not point to any conduct by PJI that would justify equitable tolling. Instead, the basis for Plaintiffs' request is that it will take time to procure employee information from the over 700 independent businesses that are implicated in their lawsuit, but who are not named as defendants. (*Id.*) Delays in the litigation process do not amount to "extraordinary circumstances" justifying equitable tolling. *Garrison v. ConAgra Foods Packaged Food, LLC,* No. 12-CV-737, 2013 WL 1247649, at *5 (E.D. Ark. Mar. 27, 2013) (holding there is "nothing extraordinary" about a motion for conditional certification that would justify equitable tolling). Any delay in providing notice to delivery drivers employed by franchisees is not the result of "extraordinary circumstances" or any conduct of Defendant, but instead flows from the strategic decisions of counsel in bringing this novel collective action.

## VI.   The Court Should Not Adopt Plaintiffs' Proposed Form Of Notice

### A.    Plaintiffs' Proposed Form Of Notice Is Misleading And Incomplete

Plaintiffs' proposed form of notice never mentions that the claims of franchisee employees depend on a finding of joint-employer liability. Instead, it misleadingly implies that putative members of the collective action "worked for [PJI]" and were paid wages or reimbursed for automobile expenses by PJI. (Frei-Pearson Decl., Ex. 21 at 1 (alleging that PJI "failed to adequately **reimburse delivery drivers'** automobile expenses," that the Court authorized notice

---

[13] Morris Tr. 39:2-13, 40:6-12; 42:13-18; Wolff Tr. 171:18-19.

to "current and former delivery drivers who **worked for [PJI]**," and stating that putative opt-ins may be eligible to join the lawsuit if "you believe you were not fully reimbursed for automobile expenses and that the **wages paid by [PJI]** fell below the federal minimum wage") (emphasis added).)

Even if this Court were to accept Plaintiffs' argument that PJI can be held liable as a joint employer, it is a simple fact that franchisee delivery drivers were not paid or reimbursed by PJI. Plaintiffs' misleading characterization prejudices franchisee employees who may not fully understand that this lawsuit does not involve claims against their actual franchisee employer. This could cause those individuals to forego bringing potentially more meritorious claims against their actual employers in the false belief that this lawsuit encompasses those claims. Plaintiffs' proposed form of notice actively encourages this misunderstanding by implying that franchise employees have no other recourse than joining this lawsuit, or bringing a separate lawsuit against PJI (as opposed to bringing a lawsuit against their actual franchise employers). (*Id.* at 2.)

Plaintiffs' notice also prejudices employees of corporate stores who may not realize that this case is an attack on PJI's franchise model, rather than a straightforward lawsuit against PJI. Plaintiffs' theory will involve numerous, complicated issues of joint-employer liability that will add layers of complexity and delay to every stage of this case. PJI employees should not be asked to opt-in to this lawsuit without an explanation of the unnecessary delay and complications that Plaintiffs' theory imposes on the timely and efficient resolution of their claims.

Plaintiffs argue that their proposed form of notice is adequate because it "expressly informs the employees of the potential consequences of joining the lawsuit," including "being asked to partake in discovery including depositions." (Motion at 24.) But Plaintiffs' proposed form of notice says no such thing. It never mentions "discovery" or "depositions." It states

24

merely the following: "[w]hile this suit is pending, you may be asked to provide information." (Frei-Pearson Decl., Ex. 21 at 4.)  This is plainly insufficient.  The notice form should describe the discovery obligations that opt-ins may have, as well as the fact that they may be required to travel to the Southern District of New York to be deposed and/or participate in a trial.  *See Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 632 (D. Colo. 2002).

### B.    The Opt-In Period Should Be No More Than 60 Days

Plaintiffs also ask this Court to approve an opt-in period that extends for 150 days. (Motion at 24.)  That time period is excessive and far beyond what courts typically allow in this District.  As this Court has recognized, an opt-in period of 30 to 60 days is sufficient barring extraordinary circumstances – not present here – that would warrant a longer notice period.  *See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011) (refusing a 90-day period and noting that 60 days is "more consistent with FLSA practice").

### C.    This Court Should Defer Ruling On The Form Of Notice Until After The Parties Meet And Confer About This Issue

If the Court grants conditional certification, Defendant respectfully requests that the parties be given a period of two weeks from the date of the order to meet and confer regarding the terms of the notice and the notice process. Courts routinely allow the parties an opportunity to meet and confer about these issues. *See, e.g., Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 U.S. Dist. LEXIS 114011, at *23 (S.D.N.Y. Aug. 15, 2014) (granting defendant's request to meet and confer with plaintiffs regarding the proposed notice).

### <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that Plaintiffs' Motion for Conditional Certification be denied in its entirety.

Dated:  December 16, 2016

SEYFARTH SHAW LLP
*Attorneys for Defendant*
*Papa John's International, Inc.*


By:    */s/Gerald L. Maatman, Jr.*
     Gerald L. Maatman, Jr.
     Matthew J. Gagnon
     Gina R. Merrill
     Brendan Sweeney
     620 Eighth Avenue
     New York, NY 10018-1405
     Telephone:  (212) 218-5500
     Facsimile:  (212) 218-5526

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2016, I electronically filed the foregoing

Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for

Conditional Certification, Declaration of Gerald L. Maatman, Jr., Esq., with

Exhibits 1-11; Declaration of Simon Smith, with Exhibit A; Declaration of Billy

Higdon; Declaration of Joseph H. Smith, IV; and Declaration of Edmond Heelan,

with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing

to the following counsel of record:

Jeremiah Frei-Pearson
D. Greg Blankinship
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, NY  10601
jfrei-pearson@FBFGLaw.com

David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA  19106
dcohen@stephanzouras.com

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL  60601
jzouras@stephanzouras.com
rstephan@stephanzouras.com

*/s/Gerald L. Maatman, Jr.*
Gerald L. Maatman Jr.