UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

WILLIAM DURLING, CHRIS BELLASPICA, :
TOM WOLFF, MICHAEL MORRIS, and :
RICHARD SOBOL, for themselves and all others :
similarly situated, :

                         Plaintiff, :

       - against - :

PAPA JOHN'S INTERNATIONAL, INC., :

                       Defendant. :

-------------------------------------------------------- X

Case No. 7:16-CV-03592

Class/Collective Action


# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CONDITIONAL CERTIFICATION


Dated: New York, New York
        June 20, 2017

Gerald L. Maatman Jr.
Gina R. Merrill
Brendan Sweeney
Matthew J. Gagnon
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

*Attorneys for Defendant*
*Papa John's International, Inc.*


***REDACTED***

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................... 1

FACTUAL BACKGROUND ........................................................................................ 5

    I.     PJI Does Not Employ The Delivery Drivers Who Work At Franchisee Restaurants ................................................................................................. 5

    II.    Plaintiffs' Counsel Selected Their Novel Case Theory, And Strategically Chose Not To Sue Any Of The Individual Franchise Employers .......................... 6

    III.   ███████████████████████████████████████████ ...................................................... 7

    IV.   PJI Does Not Direct Or Control Franchisees' Wage Payment Or Expense Reimbursement Practices ................................................................................ 8

    V.    The Vast Majority Of Opt-Ins In This Litigation Already Brought These Claims Against Their Franchisee Employer, And Previously Settled Those Claims ........................................................................................................... 9

    VI.   Defendant Disclosed The Existence Of Polling Data Repeatedly To Plaintiffs Beginning In August 2016, And The Parties Agreed To A Limited Production Of Polling Data Pending The Court's Decision On Conditional Certification .................................................................................... 9

ARGUMENT ............................................................................................................. 10

    I.     Plaintiffs Cannot Establish That The Delivery Drivers In The Proposed Nationwide Collective Action Are Similarly-Situated .......................................... 10

          A.   Plaintiffs Rely On The Wrong Standard In Their Renewed Motion, As Significant Discovery Has Occurred, And A Stricter Analysis Applies .................................................................................................. 11

          B.   The Evidence Confirms That Franchisees Set Their Own Reimbursement Policies And Rates ............................................................. 12

                  1.   The Point Of Sale System Does Not Create A "Factual Nexus" Between Plaintiffs And The Members Of The Proposed Collective Action ........................................................... 12

                  2.   The Variability In Reimbursement Rates Confirms That Franchisees Set Their Own Rates .................................................. 14

3.    Franchisees Attest To Setting Their Own Reimbursement
Policies And Programs Variability ............................................... 15

C.    Conditional Certification Should be Denied Where There Is No
Evidence That The Alleged Joint Employer Imposed An Unlawful
Policy On Independent Businesses .......................................... 16

D.    Plaintiffs' Arguments Completely Disregard – And Are
Fundamentally At Odds With – The Nature Of The Franchise
Relationship ........................................................................ 19

II.    The Members Of The Putative Collective Action Were Not Subject To A
Common Policy That Violates The FLSA .......................................... 20

A.    A Policy Of Reimbursing Drivers On A Per-Delivery Basis Does
Not Violate The FLSA ............................................................ 20

B.    The Data On Which Plaintiffs Rely Does Not Support Their Claim
Of A Common Unlawful Policy ................................................. 23

C.    Plaintiffs' Declarations Fall Far Short Of Providing The Necessary
Support For Conditional Certification ....................................... 24

III.    This Court Should Deny The Motion For The Additional And Independent
Reason That Fairness And Procedural Considerations Make A Collective
Action Improper ......................................................................... 25

IV.    The Participation Of The *Bellaspica* Plaintiffs Further Undermines Any
Assertion That Members Of The Putative Collective Action Are Similarly-
Situated Or That This Case Is Manageable As A Collective Action ................... 26

V.    Equitable Tolling Is Inappropriate Here ........................................... 28

VI.    The Court Should Not Adopt Plaintiffs' Proposed Form Of Notice .................. 29

CONCLUSION ..................................................................................... 30

39371651v.8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bellaspica, et al. v. PJPA, LLC*,
Case No. 13-CV-3014 (E.D. Pa.) ...................................................................................... *passim*

*Brunner v. Liautaud*,
No. 14-CV-5509, 2015 WL 1598106 (N.D. Ill. Apr. 8, 2015) ...............................................19

*Castro v. Spice Place, Inc.*,
No. 07 Civ. 4657, 2009 WL 229952 (S.D.N.Y. Jan. 30, 2009)................................................21

*DeSilva v. North Shore-Long Is. Jewish Health Sys.*,
27 F. Supp. 3d 313 (E.D.N.Y. 2014) ......................................................................................27

*Diaz v. S & H Bondi's Department Store*,
No. 10 Civ. 7676, 2012 WL 137460 (S.D.N.Y. Jan. 18, 2012)................................................18

*Freeman v. Wal-Mart Stores, Inc.*,
256 F. Supp. 2d 941 (W.D. Ark. 2003).....................................................................................26

*Gordon v. Kaleida Health*,
No. 08-CV-378, 2009 WL 3334784 (W.D.N.Y. Oct. 14, 2009) ..............................................28

*Gromek v. Big Lots, Inc.*,
No. 10 C 4070, 2010 WL 5313792 (N.D. Ill. Dec. 17, 2010) ..................................................26

*Hoffmann-La Roche Inc. v. Sperling*,
493 U.S. 165 (1989)....................................................................................................................10

*Khan v. Airport Mgmt. Servs., LLC*,
No. 10 Civ. 7735 (NRB), 2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011) ...............................12

*Korenblum v. Citigroup, Inc.*,
No. 15 Civ. 3383 (JMF), 195 F. Supp. 3d 475 (S.D.N.Y. July 19, 2016) .............11, 16, 17, 26

*Mark v. Gawker Media LLC*,
No. 13 Civ. 4347 (AJN), 2014 U.S. Dist. LEXIS 114011 (S.D.N.Y. Aug. 15,
2014) ...........................................................................................................................................29

*Martin v. Sprint/united Mgmt. Co.*,
No. 15 Civ. 5237 (PAE), 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)............................11, 17, 18

*Morangelli v. Chemed Corp.*,
922 F. Supp. 2d 278 (E.D.N.Y. 2013) ......................................................................................21

39371651v.8

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
 111 F. Supp. 2d 493 (D.N.J. 2000) ...................................................................27

*Orozco v. Plackis*,
 757 F.3d 445 (5th Cir. 2014) .........................................................................19

*Palacios v. Boehringer Ingelheim Pharm., Inc.*,
 No. 10-CV-22398, 2011 WL 6794438 (S.D. Fla. Apr. 19, 2011) ...........................24

*Patterson v. Domino's Pizza*,
 333 P.3d 723 (Cal. 2014) ..............................................................................19

*Pope v. Espeseth, Inc.*,
 2017 U.S. Dist. LEXIS 4928 (W.D. Wis. Jan. 11, 2017) ....................................20

*Pullen v. McDonald's Corp.*,
 No. 14-11081, 2014 WL 4610296 (E.D. Mich. Sept. 15, 2014)............................21

*Reab v. Elec. Arts, Inc.*,
 214 F.R.D. 623 (D. Colo. 2002) .......................................................................30

*Reese v. Coastal Restoration and Cleaning Servs., Inc.*,
 No. 10-CV-36, 2010 WL 5184841 (S.D. Miss. Dec. 15, 2010) ............................20

*Rosario v. Valentine Avenue Discount Store, Co.*,
 828 F. Supp. 2d 508 (E.D.N.Y. 2011) ...............................................................18

*Rudd v. T.L. Cannon Corp.*,
 No. 10-CV-591 (TJM/DEP), 2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)...............12

*Russell v. Happy's Pizza Franchise, LLC*,
 No. 12-CV-323, 2013 WL 174953 (W.D. Mich. Jan. 16, 2013) ...........................20

*Saleen v. Waste Mgmt., Inc.*,
 No. 08-4959, 2009 U.S. Dist. LEXIS 49891 (D. Minn. June 15, 2009)...........11, 25

*Singh v. 7-Eleven, Inc.*,
 No. 05-CV-4534, 2007 WL 715488 (N.D. Cal. Mar. 8, 2007)..............................19

*Warman v. Am. Nat'l Standards Inst.*,
 No. 15 Civ. 5486 (RA), 193 F. Supp. 3d 318 (S.D.N.Y. June 27, 2016) ..............22

*Wass v. NPC Int'l Inc.*,
 688 F. Supp. 2d 1282 (D. Kan. 2010)................................................................20

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
 767 F. Supp. 2d 445 (S.D.N.Y. 2011)................................................................30

*Williams v. Accredited Home Lenders, Inc.*,
    No. 05-1681, 2006 WL 2085312 (N.D. Ga. July 25, 2006) ....................................................11

*Zampos v. W & E Commc'ns, Inc.*,
    970 F. Supp. 2d 794 (N.D. Ill. 2013) ........................................................................................20

*Zellagui v. MCD Pizza, Inc.*,
    59 F. Supp. 3d 712 (E.D. Pa. 2014) .........................................................................................21

*Zerilli-Edelglass v. New York City Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003) .......................................................................................................28

## Statutes

29 U.S.C. § 216(b) .............................................................................................................................10

FLSA ................................................................................................................................. *passim*

## Other Authorities

29 C.F.R. § 531.32(c) ........................................................................................................................20

29 C.F.R. § 778.217(a) ......................................................................................................................20

Fed. R. Civ. P. 30(b)(6) .....................................................................................................................13

Fed. R. Civ. P. 45 ................................................................................................................................7

## PRELIMINARY STATEMENT

The Court's previous ruling denying Plaintiffs' initial motion for conditional certification equally disposes of Plaintiffs' Renewed Motion.  The Court should deny Plaintiffs' Renewed Motion because: (i) Plaintiffs again have failed to make a showing that the members of the proposed collective action were subjected to a common policy that emanated from Defendant Papa John's International, Inc. ("PJI"), and (ii) the "common policy" identified by Plaintiffs – reimbursement on a per delivery basis – on its face is not an unlawful policy.

To establish that the employees of PJI and its franchisees are "similarly situated," Plaintiffs must show that PJI imposed a common, unlawful policy on the employees of independently owned and operated franchises.  As a matter of law, it is not enough to show that PJI and its franchisees operate similar businesses and use a common computer system, nor is it enough to show that PJI required its franchisees to meet certain brand standards that have nothing to do with the claims in this case.

PJI does not set its franchisees' wage payment or reimbursement policies.  PJI has submitted extensive evidence confirming this fact and Plaintiffs have not submitted contrary evidence.  Indeed, Plaintiffs admit that PJI's franchisees choose their method for reimbursing their employees.  ██████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████  Plaintiffs claim that more than ██% of franchisees chose the per-delivery reimbursement method.  Even assuming this is true, the fact that ████████ PJI's franchisees (who operate ████████ of stores) chose different methods for reimbursing drivers confirms that reimbursement policies are set at the franchisee level and not dictated by PJI.

Since the Court's March 29, 2017 Order denying conditional certification, the evidentiary record is now even more fully developed, and Plaintiffs have had a fulsome opportunity to take further discovery on their theories and the elements underlying conditional certification.  Despite this, Plaintiffs have not submitted any evidence with their Renewed Motion that in any way supports a finding that PJI imposes an unlawful policy on its franchisees' employees.

Plaintiffs read the Court's previous decision to mean that they can succeed on conditional certification if they show that "'a respectable chunk' of franchisees follow the Papa John's per-[delivery] reimbursement policy at issue."  (ECF No. 161 at 1) (citation omitted.)  This statement misconstrues the Court's ruling in multiple respects, and is not supported by any existing case law authority.  The Court held: "[m]y role at this stage is simply to determine whether the plaintiffs have sufficiently alleged that they and the other employees in the potential collective were victims of a **common** compensation policy that **violated the FLSA**."[1]

The only similarity in reimbursement practices encompassed by the Renewed Motion is that certain franchisee stores have decided to reimburse their delivery drivers on a per delivery basis, and PJI reimburses its corporate drivers on a per delivery basis.  But a per delivery reimbursement policy is not illegal, nor is this supposed similarity sufficient to justify conditional certification.  Crucially, the actual per-delivery reimbursement rates paid to delivery drivers vary greatly between these businesses, and the policy underlying the calculation and determination of those rates varies from business to business.  Ignoring these facts, ███████████

---

[1] Maatman Dec. ¶ 7, Ex. 11 at 23:13-16 (Transcript of Proceedings, March 29, 2017) (emphasis added) (hereinafter, "March 29 Tr.")  The Court reiterated, several times, that the relevant inquiry on conditional certification is whether the Plaintiffs identified a common policy that violates the FLSA.  (March 29 Tr. at 25:7-12 ("[t]he relevant practice that binds FLSA plaintiffs together must be the one that is alleged to have violated the statute itself"); 27:7-13; 31:7-12 (concluding that for plaintiffs to show that employees of Defendant and its franchisees are similarly situated they must show "they together were the victims of a common policy or plan that **violated the law**.") (emphasis added.)

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ (ECF No. 161 at 5.)  But – without evidence that

the rates were dictated by PJI – averages prove nothing.  A delivery driver who was reimbursed

$ ████, or $ ████, or more per delivery is not similarly situated to a driver who was reimbursed

less than $ ████ per delivery.  (*See* Maatman Dec. ¶ 38, Ex. 34) ("Reimbursement Spreadsheet").

Further, some of the businesses that employed the members of the proposed collective action

paid their delivery drivers an hourly wage that was well above the required minimum wage.

While Plaintiffs will argue that this is a "merits" issue, they cannot identify a "similarly situated"

group of delivery drivers without consideration of the actual reimbursement rates and hourly

wages paid to the members of the proposed collective action.  This is fatal to their case theory.

Even if the putative collective action members were similarly situated (which they are

not), the Renewed Motion also should be denied because of the insurmountable manageability

problems that their novel case theory would create if notice were to issue to members of such a

broad and diverse collective action.  Since each independently owned franchisee sets its own

policy regarding vehicle expense reimbursement and wages, this Court would have to conduct a

series of individualized, fact-intensive inquiries across more than 600 different businesses in

order to evaluate Plaintiffs' claims and those of the members of the putative collective action.

Plaintiffs' proposed collective action would devolve into a series of individual mini-trials, with

each weighing the testimony and evidence submitted by one set of employees against the

evidence and testimony adduced from their respective franchisee employer.

In addition, this lawsuit is the direct result of a highly unusual factual background

involving a separate and prior litigation filed by Plaintiffs' counsel against a franchisee.  In 2013,

in a case captioned *Bellaspica, et al. v. PJPA, LLC*, Case No. 13-CV-3014 (E.D. Pa.), Plaintiffs'
counsel and four of the named Plaintiffs in this case brought another lawsuit alleging the same
vehicle expense reimbursement claims against their franchisee employer, PJPA, LLC ("PJPA").
Indeed, of the 236 current opt-ins to this litigation, 223 were opt-ins to the *Bellaspica* litigation.
In March 2016, the *Bellaspica* plaintiffs resolved their claims and signed releases in return for a
settlement payment, and now those same attorneys and opt-ins seek a double recovery through
this litigation.  As a result, there are a host of factual and legal defenses that apply to the
*Bellaspica* opt-ins that do not apply to any other individuals in the putative collective action,
further undermining any argument that the proposed collective action is composed of individuals
who are similarly-situated to one another.[2]

Plaintiffs renew their argument that the Court should equitably toll the limitations period
for the *Bellaspica* plaintiffs and opt-ins because of alleged "financial manipulations" by PJI.
(ECF No. 161 at 7.)  This request is without merit.  The *Bellaspica* plaintiffs were well aware of
any potential claims against PJI at the time of the *Bellaspica* litigation, and yet they did nothing
to pursue those claims, instead suing their employer, PJPA, as well as two individuals under a
joint employer theory of liability.  The *Bellaspica* plaintiffs plainly did not act with reasonable
diligence with respect to potential joint employer claims against PJI, and their tolling request
should be denied.

Plaintiffs also argue that the collective action period should be equitably tolled "from the
date of Plaintiffs' original conditional certification motion" because of Defendant's "discovery
tactics."  (*Id.* at 5-6.)  These allegations are unfounded.  Defendant has complied, in good faith,

---

[2] Plaintiffs also argue that a previous class action, *Perrin v. Papa John's Intl Inc.,* was settled for
a "fraction" of the actual value of the claims.  Plaintiffs' inaccurate speculation about this
settlement is inapposite to the issues presented by this Renewed Motion.

with all of its discovery obligations, and Plaintiffs' request is nothing more than an attempt at an end run around this Court's denial of their initial conditional certification motion.

Plaintiffs have again failed to meet their burden on conditional certification and their Renewed Motion should be denied with prejudice.

## FACTUAL BACKGROUND

### I.    PJI Does Not Employ The Delivery Drivers Who Work At Franchisee Restaurants

The 700 plus franchisees who operate their own businesses have entered into a contractual relationship with PJI which allows them to operate under the Papa John's brand and thereby benefit from its name recognition and goodwill.  (S. Smith Dec. ¶ 4,  Ex. A.)  In return, franchisees agree to comply with franchise-wide brand standards that ensure – for the benefit of PJI and franchise owners alike – that all locations deliver the same high-quality products and customer service that attracts and retains customers to Papa John's restaurants.  (*Id.*)

Betraying a fundamental misunderstanding of this business model, Plaintiffs allege that PJI "hid[es] behind" the franchisor model in a "callous attempt to reap profits," and Plaintiffs characterize the model as "façade" intentionally designed to facilitate "wage theft."  (Am. Compl.  ¶¶ 3, 19, 33-34.)  These outlandish allegations are unsupported and pointedly ignore that the franchisor/franchisee model is a common, accepted, and legitimate approach to business.[3]



---

[3] Due to the extraordinary nature of this case, the International Franchise Association ("IFA"), an organization which represents franchises worldwide, filed an amicus brief in support of Defendant's opposition to Plaintiffs' initial motion for conditional certification.  (ECF No. 102.) The arguments in the IFA's amicus brief remain applicable to Plaintiffs' Renewed Motion.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

Consistent with this contractual agreement, PJI does not maintain personnel files for franchisee employees, nor does it issue performance reviews or corrective action for franchisee employees, as it does not function as their employer.  (S. Smith Dec. ¶¶ 6-7.)

A natural consequence of PJI's contractual relationship with franchisees is that PJI does not control or direct the wages or expense reimbursement practices of franchisees.  (S. Smith Dec. ¶ 7; Maatman Dec., ¶¶ 4-6, Exs. 1-10.)  In sum, PJI is not a joint employer of the putative collective action members employed by the over 700 businesses whose interests are implicated by this lawsuit.  Plaintiffs' Renewed Motion asks this Court to ignore this reality.

## II.   Plaintiffs' Counsel Selected Their Novel Case Theory, And Strategically Chose Not To Sue Any Of The Individual Franchise Employers

Of the five named Plaintiffs, only one – Richard Sobol – was ever employed at a corporate-owned restaurant.  (Heelan Dec. ¶ 6.)  There is no dispute that the vast majority of the putative collective action members were directly employed by one of 600 plus independently owned franchises, and not PJI.[4]  (*Id.* ¶¶ 3-5.)  Plaintiffs' counsel strategically decided not to sue any of the franchisee businesses who employ those workers.

---

[4] In an attempt to find a common unlawful policy (that does not exist) Plaintiffs now limit their proposed collective action to "Papa John's delivery drivers (at corporate and franchisee-owned stores) who are reimbursed on a per-delivery basis and are not members of a pending class or collective action relating to the under-reimbursement of driving expenses." (ECF No. 161 at 1.)

6

As a practical matter, the litigation tactic of Plaintiffs' counsel enlarges the scope of their lawsuit from approximately ██████████████████████████████████████████ ████████████████████████████████████ (*Id.*)  As recognized by Magistrate Judge Judith McCarthy, the franchisees are non-parties to this action, and to the extent Plaintiffs seek materials or information in the possession of those franchisees, they must issue non-party subpoenas pursuant to Rule 45.  (Oct. 5, 2016 Minute Order.)

███████████████████████████████████████████████████████████████████████████
██████████████████████████████████

PJI's process for determining reimbursement rates for vehicle expenses at its corporate-owned stores ██████████████████████████████████████████████
█████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████
███████████████████████████████
█████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

### IV.    PJI Does Not Direct Or Control Franchisees' Wage Payment Or Expense Reimbursement Practices

PJI's franchisees are independent businesses ████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

Plaintiffs have not offered any declarations from any franchise owner claiming that PJI

controlled their wage payment or reimbursement policies.   ████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████

██████████████████

**V.      The Vast Majority Of Opt-Ins In This Litigation Already Brought These Claims Against Their Franchisee Employer, And Previously Settled Those Claims**

Plaintiffs' counsel in this matter already represented at least four of the named Plaintiffs in a lawsuit based on the exact theory alleged here.  (Maatman Dec. ¶¶ 12-13.)  Not surprisingly, that lawsuit was directed at the actual employer of those Plaintiffs, the franchisee PJPA, and those claims were settled in the spring of 2016, just a few months before Plaintiffs' counsel filed suit here.  Of the 236 opt-ins in this litigation, 223 were opt-ins in the *Bellaspica* litigation; as previous clients of Plaintiffs' counsel, they were covered by the settlement in that case. (Maatman Dec. ¶¶ 14-16, Ex. 15. )  All of these 223 individuals were employed at stores owned by PJPA and were reimbursed for expenses pursuant to practices set by PJPA, not PJI.

Contrary to suggestions in Plaintiffs' Motion, PJI was in no way involved in the settlement of the *Bellaspica* claims.  ████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████  (*Id.* ¶¶ 16-17.)

**VI.     Defendant Disclosed The Existence Of Polling Data Repeatedly To Plaintiffs Beginning In August 2016, And The Parties Agreed To A Limited Production Of Polling Data Pending The Court's Decision On Conditional Certification**

In response to Plaintiffs' First Set of Requests for Production of Documents, Defendants lodged an objection on the grounds that the requests seeking documents regarding "wages and reimbursements paid to Delivery Drivers" would encompass "a huge volume of data for every single delivery driver that worked for Defendant or a franchisee as a delivery driver in the United

9

States for a period of years."  (Maatman Dec. ¶¶ 24-25, Exs. 23-24).  The parties subsequently

met and conferred and exchanged written summaries of those meetings.  (*Id.* ¶¶ 24-27).  These

communications plainly demonstrate that Plaintiffs understood that PJI had responsive data

relating to franchisee drivers, and the parties agreed to hold this Request "in abeyance pending

the outcome of the Court's eventual order regarding conditional certification."  (*Id.* ¶ 28).

Plaintiffs' counsel did not revisit this issue for more than three months.  (*Id.*)

On January 6, 2017, Plaintiffs' counsel filed a letter with Magistrate Judge McCarthy

seeking leave to file a letter requesting sanctions.  (*Id.* ¶ 34, ECF No. 103).  Ignoring the parties'

written exchanges regarding the production of data, Plaintiffs' counsel claimed that PJI had

represented that it did not possess data regarding franchisees.  (*Id.*)  Magistrate Judge McCarthy

denied Plaintiffs' request to file a letter motion seeking sanctions.  (*Id.* ¶ 34, ECF No. 105.)  The

parties subsequently conferred and reached agreement on an initial production of data limited to

the Named Plaintiffs.  (*Id.* ¶¶ 34-36.)  *After* their initial Motion for Conditional Certification was

denied, Plaintiffs suddenly renewed their requests for broader data, claiming: "based on Judge

Seibel's guidance on Conditional Certification, it is critically important to this case." (*Id.* ¶ 37.)

## **ARGUMENT**

### I.    **Plaintiffs Cannot Establish That The Delivery Drivers In The Proposed Nationwide Collective Action Are Similarly-Situated**

The FLSA permits a plaintiff to maintain an action on "behalf of himself . . . and other

employees similarly situated."  29 U.S.C. § 216 (b).  Courts have discretion in appropriate

circumstances to regulate the notice, if any, sent to similarly-situated potential plaintiffs.  *See*

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 168-70 (1989).  Court-facilitated notice is

not mandatory and it is not automatic.  This is because certification imposes significant costs and

burdens on the parties and Court, such as "the expense of sending out notice to the putative

10

collective members, the substantial widening of discovery, and the burden on the courts of administrating the thousands of claims brought . . . nationwide." *Saleen v. Waste Mgmt., Inc.*, No. 08-4959, 2009 U.S. Dist. LEXIS 49891, at *29 (D. Minn. June 15, 2009); *see also Williams v. Accredited Home Lenders, Inc.*, No. 05-1681, 2006 WL 2085312, at *4 & n.4 (N.D. Ga. July 25, 2006) (noting that the similarity requirement must be applied with "rigor" in large cases).

### A. Plaintiffs Rely On The Wrong Standard In Their Renewed Motion, As Significant Discovery Has Occurred, And A Stricter Analysis Applies

In its March 29 Order, this Court declined to apply a heightened standard because at the time the motion was filed, no "significant" discovery had occurred and no depositions had been taken.  (March 29 Tr. at 23:2-12.)  The parties have now conducted significant discovery, including depositions of 9 individuals, and PJI has produced approximately 200,000 pages of documents.  (Maatman Dec. ¶ 23, Ex. 22.) ████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ (ECF No. 161 at 1, 3.)

In light of this discovery, the Court should apply a heightened standard in determining whether conditional certification is appropriate.  *See Korenblum v. Citigroup, Inc.*, No. 15 Civ. 3383 (JMF), 195 F. Supp. 3d 475, 482-83 (S.D.N.Y. July 19, 2016) (applying a "modest plus" standard as result of discovery occurring but being incomplete).  Under a heightened standard, the burden is on Plaintiffs to prove that other employees at issue are similarly-situated to them, and the Court may consider evidence obtained in discovery in making this determination.  *Id.*

Even applying a first stage standard, however,  plaintiffs must show a "factual nexus" that binds all delivery drivers together under a common unlawful practice.  *Martin v. Sprint/united Mgmt. Co.*, No. 15 Civ. 5237 (PAE), 2016 WL 30334, at *5 (S.D.N.Y. Jan. 4, 2016).  As discussed in this Court's March 29 decision, although "plaintiff's burden at this stage

is modest, it is not non-existent," and it "cannot be satisfied simply by unsupported assertions."

*Khan v. Airport Mgmt. Servs., LLC,* No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at *4-5

(S.D.N.Y. Nov. 16, 2011) (internal quotation marks omitted).  At the first stage, "a court must

nonetheless take a measured approach . . . mindful of the potential burdens associated with

defending against an FLSA claim involving a large and broadly defined collective group of

plaintiffs."  *Rudd v. T.L. Cannon Corp.*, No. 10-CV-591 (TJM/DEP), 2011 WL 831446, at *6

(N.D.N.Y. Jan. 4, 2011).

        No matter which standard is applied, Plaintiffs have failed to meet their burden here.

**B.      The Evidence Confirms That Franchisees Set Their Own Reimbursement
        Policies And Rates**

        In its March 29 ruling, the Court held that "the plaintiffs have offered no evidence that

defendant dictated the payment policy for delivery drivers at all Papa John's restaurants,

including franchises." (March 29 Tr. at 24:12-15.)  Plaintiffs cannot fill this evidentiary gap with

evidence that many franchisees choose to reimburse on a per-delivery basis.  First, ███████

████████████████████████████████████████████████████████████ (ECF No. 161

at 5).  Second, per-delivery reimbursement is a common industry method of reimbursing drivers

and therefore is not, by itself, evidence that PJI requires or encourages that policy.  The fact that

██████ franchisee owners **do not** follow a per-delivery reimbursement policy wholly

undermines the notion that franchisees are required by PJI to reimburse on a per-delivery basis.

        **1.      *The Point Of Sale System Does Not Create A "Factual Nexus" Between
              Plaintiffs And The Members Of The Proposed Collective Action***

████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ (ECF No. 161 at 19.) ███████████

███████████████████████████████████████████████

12

███████████████████████████████████████████████

████████████████████████████████████ (*Id.*)

As an initial matter, the evidence relied on by Plaintiffs plainly shows that franchisees **do not** implement a "default reimbursement rate" dictated by PJI. ███████████████████

██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████

        ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████

---

5 ██████████████████████████████████████
████████████████████████████████████████

(Stewart Dec. ¶¶ 4-6.)

### 2. The Variability In Reimbursement Rates Confirms That Franchisees Set Their Own Rates

The great variety of reimbursement rates used by franchisees further reinforces that they set their own rates. ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████[6]  Plaintiffs ignore the hourly wage data, but argue that the "Reimbursement Spreadsheet" and "simple math" lead to the conclusion that "[a]ll of the Declarants and Opt-In Plaintiffs received a reimbursement that was insufficient to compensate them for the costs" of making deliveries.  (ECF No. 161 at 14.)

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[6] ███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████ (*Id.*)

### 3.   *Franchisees Attest To Setting Their Own Reimbursement Policies And Programs Variability*

As part of their Reply in support of their initial Motion, Plaintiffs submitted declarations from three franchise owners, which they argued somehow showed that PJI controls a common reimbursement policy.  (*See* ECF No. 108 at 4-6, n. 7; ECF Nos. 110-12.)  PJI submitted supplemental declarations from these owners that make clear that they set their own wage and reimbursement policies.  (Maatman Dec. ¶ 5, Exs. 3-5.)

█████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████

**C.    Conditional Certification Should be Denied Where There Is No Evidence That The Alleged Joint Employer Imposed An Unlawful Policy On Independent Businesses**

Plaintiffs' Renewed Motion fails again because there is no common reimbursement policy across PJI and the ███ independent businesses encompassed by the proposed collective action.  Several courts in this district have rejected similar attempts to use the conditional certification device to create large, complex "joint employer" cases where the evidence did not support a finding that the purported "joint employer" imposed an unlawful policy on the members of the proposed collective.  In *Korenblum v. Citigroup, Inc.*, No. 15-CV-3383 (JMF), 195 F. Supp. 3d 475 (S.D.N.Y. July 19, 2016), the plaintiffs sought to represent more than 7,500 individuals who were employed by 40 different employers.  The only thing that these individuals had in common was the fact that their employers contracted with defendant Citigroup to provide IT services.  *Id.* at 478-79.  The court rejected plaintiffs' motion for conditional certification because they failed to show that Citigroup was responsible for a common "unlawful policy."  *Id.* at 479-80.  Like the Plaintiffs in this case, the plaintiffs in *Kornblum* failed to present evidence that Citigroup imposed or controlled the policy that they were challenging and they failed to present evidence to substantiate their claims that Citigroup was liable as a "joint employer."[7] *Id.* at 487.

---

[7] As in this case, the *Korenblum* plaintiffs and their counsel had previously sued one of the vendors and, after conditional certification, obtained settlements.  *Id.* at 478-88.  The Court found that while the prior litigation did not have preclusive effect: "it does bear on the efficiency of certifying a collective action."  *Id.* at 478. The court continued: "put simply, to the extent that the collective-action process is intended to promote efficiency, the law should not allow, and thus encourage, plaintiffs to bring piecemeal litigation in the way that Plaintiffs have done here; instead, it should incentivize plaintiffs to name all relevant parties in a single suit and thus ensure that notice, if given, is provided in the most efficient manner possible. In short, certifying a collective action and authorizing notice with respect to [the vendor] alone would undermine rather than promote efficiency, and the Court–exercising its discretion–declines to go that route." *Id.*

16

Similarly, in *Martin v. Sprint/United Mgmt. Co.*, 2016 WL 30334, at *5, plaintiffs were agents who gathered applications for enrollment in a Lifeline service which was owned by the telecommunications company Sprint.  Plaintiffs alleged that they should have been classified as employees rather than independent contractors and brought suit against Sprint and the intermediary companies who retained their services, alleging that Sprint was a joint employer. *Id*. at *5-6.  Plaintiffs moved for certification of a nationwide collective action including all persons who gathered Lifeline applications, regardless of the direct employer.  *Id.* at *5.  The court denied conditional certification of the broad collective.  *Id.*  As in *Korenblum*, the key factor in the court's conclusion was the lack of a common unlawful policy.  The court denied conditional certification because plaintiffs failed to demonstrate that the unlawful misclassification practices were "imposed by, or derived from, Sprint itself."  *Id.*  The court explained that while Sprint mandated some common practices that bore on agents, "for purposes of determining the viability of a collective for which conditional certification is sought, 'the relevant practice that binds FLSA plaintiffs together' must be 'the one that is alleged to have violated the statute itself.'"  *Id.* at *6 (citation omitted).  The court reasoned that "the Sprint documents on which plaintiffs rely are conspicuously silent as to how Agents are to be classified and paid. Yet it is these practices, not the ones addressed in the Sprint documents, that are the core determinants of whether Sprint choreographed nationwide policies that violated the FLSA." *Id.* at *6.  Likewise, Plaintiffs here rely on the franchisor model to attribute responsibility for any franchisee reimbursement practices to PJI, but, similar to *Martin*, ███████████████

██████████████████████████████████████████████████

███████████████████████████

As this Court noted in its previous ruling, Plaintiffs did not adequately address *Martin* in their initial motion for conditional certification.  (March 29 Tr. at 27:20-28:25.)  Plaintiffs argue in the Renewed Motion that their case is distinguishable because the policy at issue is purportedly used across a broad geographic area.  (ECF No. 161 at 20-22.)  But *Martin* remains instructive because the plaintiffs there – like Plaintiffs here – sought certification of a collective action that would include employees of many different employers.  The court denied plaintiffs' bid because they "had not come forward with any evidence that would situate the decision to implement the wage-and-hour practices of which they complained above the level of the declarant's immediate employer."  *Martin*, 2016 WL 30334, at \*10.  Conditional certification should be denied on the same grounds here.

As the Court pointed out in its March 29 ruling, Plaintiffs' reliance on cases "where a sole employer was being sued for FLSA violations" is misplaced.  (March 29 Tr. at 27:22-25.)  In their current brief, Plaintiffs again rely on such decisions.  For example, Plaintiffs cite to *Rosario v. Valentine Avenue Discount Store, Co.*, 828 F. Supp. 2d 508, 516 (E.D.N.Y. 2011) for the proposition that: "[c]ourts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan."  (ECF No. 161 at 20.)  However, *Rosario* involved a chain of department stores that, while separately incorporated, were owned by a single individual who managed each of the locations and controlled the payroll for each store through a central location.  *Rosario*, 828 F. Supp. 2d at 517; *see also Diaz v. S & H Bondi's Department Store*, No. 10 Civ. 7676, 2012 WL 137460, at \*1 (S.D.N.Y. Jan. 18, 2012) (involving three stores under common ownership and control).

18

**D.    Plaintiffs' Arguments Completely Disregard – And Are Fundamentally At Odds With – The Nature Of The Franchise Relationship**

At best, Plaintiffs' evidence shows that PJI and some of its franchisees use the same POS system and employment applications, and share certain marketing tools and employee training. However, courts across the country have repeatedly recognized that the guidelines and standards that franchisors impose on their franchisees to protect the brand do not give rise to an employment relationship between the franchisor and franchisee employees.  Those courts have uniformly held that franchisees remain in control of their own employment policies, including setting compensation, because a franchisor's brand guidelines and standards, and the business plan and procedures created to protect those standards – meticulous though they may be – do not render a franchisee's right to run his or her business "illusory," nor do they usurp the franchisees' control over its own employees. *See, e.g.*, *Singh v. 7-Eleven, Inc.*, No. 05-CV-4534, 2007 WL 715488, at *3 (N.D. Cal. Mar. 8, 2007) (rejecting the argument that the franchisee's "right to run the operation is illusory").  "A franchisor, which may have thousands of stores located throughout the country, often imposes comprehensive and meticulous standards to protect its brand and operate the franchises in a uniform way in order to maintain a consistent customer experience," but that emphasis on uniformity and compliance "does not support a determination that [the franchisor] is a joint-employer under the FLSA."  *Brunner v. Liautaud*, No. 14-CV-5509, 2015 WL 1598106, at *4 (N.D. Ill. Apr. 8, 2015).  Similarly, other courts have recognized that, although a franchisor's standards may impact employees' day-to-day activities, "[f]ranchising is different" from an employer-employee relationship.  *Patterson v. Domino's Pizza*, 333 P.3d 723, 732-33 (Cal. 2014) (emphasis added).[8]  Where the franchisor does not

---

[8] *See also Orozco v. Plackis*, 757 F.3d 445, 452 (5th Cir. 2014) (holding that plaintiffs failed to show that franchisor hired or fired employees, supervised or controlled work schedules or employment conditions, or determined rate and method of payment even though franchise

interfere with the franchisee's control of the essential terms of employment, the franchisor is not

a joint employer. *Pope v. Espeseth, Inc.*, 2017 U.S. Dist. LEXIS 4928 (W.D. Wis. Jan. 11, 2017).

## II.  The Members Of The Putative Collective Action Were Not Subject To A Common Policy That Violates The FLSA

### A.  A Policy Of Reimbursing Drivers On A Per-Delivery Basis Does Not Violate The FLSA

Reimbursement on a per-delivery basis is not illegal.  The FLSA and its implementing

regulations do not require employers to reimburse at the IRS mileage rate, but only require that a

per-delivery reimbursement policy reasonably approximate the amount expended by the

employee for the employer's benefit so that the employee's wages do not fall below the

minimum wage after accounting for those expenditures.  Crucially, because the actual costs

incurred by employees are often impossible to know with precision, the FLSA only requires that

employers reasonably approximate the expenses incurred on the employer's behalf.  *See* 29

C.F.R. § 531.32(c) (incorporating by reference 29 C.F.R. § 778.217(a), which explains that:

"[w]here an employee incurs expenses on his employer's behalf . . . Payments made by the

employer to cover such expenses are not included in the employee's regular rate (if the amount

of the reimbursement reasonably approximates the expenses incurred)").[9]

---

agreement contained franchisor's policies for "selection, supervision, or training of personnel"); *Russell v. Happy's Pizza Franchise, LLC*, No. 12-CV-323, 2013 WL 174953, at *2 (W.D. Mich. Jan. 16, 2013) ("[A]bsent special circumstances franchisors and their shareholders are not liable for the FLSA violations of their franchisees."); *Reese v. Coastal Restoration and Cleaning Servs., Inc.*, No. 10-CV-36, 2010 WL 5184841, at *3-5 (S.D. Miss. Dec. 15, 2010) (holding that franchisor was not employer under FLSA despite broad exercise of controls over franchisee's operations); *Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794, 803-04 (N.D. Ill. 2013) (finding that Comcast was not a joint employer even though it played a role in hiring and firing decisions, directed and monitored work performance, and retained employment records, because that control was exercised to ensure quality in service delivery).

[9] *See Wass v. NPC Int'l Inc.*, 688 F. Supp. 2d 1282, 1287 (D. Kan. 2010) (defendant could "reimburse plaintiffs for their vehicle expenses by reasonably approximating those expenses, without affecting the amount of plaintiffs' wages for purposes of applying the FLSA's minimum

20

Evidence that corporate and some franchise stores each implemented a common industry practice – reimbursement of drivers on a per-delivery basis – is not sufficient to meet Plaintiffs' burden.  Plaintiffs' claim is that Defendant's per-delivery reimbursement policy was not sufficient to reimburse delivery drivers for their actual vehicle costs to such an extent that their effective hourly wage fell below the required minimum wage.  (Am. Compl. ¶¶ 60-61.)  This case theory depends on multiple factors, including the hourly wage of the employee, including tips; the employee's actual vehicle costs; and the amount of reimbursement for those vehicle costs.  Whether a per-delivery reimbursement policy violates minimum wage provisions depends on whether the reimbursement was not enough to cover the delivery driver's actual vehicle costs, and whether this difference was substantial enough to cause the driver's rate to fall below minimum wage.  But there is nothing about a per-delivery reimbursement policy itself that violates the FLSA.  *See Castro v. Spice Place, Inc.*, No. 07 Civ. 4657, 2009 WL 229952, at *3 (S.D.N.Y. Jan. 30, 2009) ("[e]ven assuming that plaintiffs' affidavits do establish that Defendant Restaurants did follow similar policies with regard to compensation of its delivery personnel, plaintiffs have not made the necessary showing that these actions were a reflection of a common policy, maintained by all defendants, in violation of the FLSA."); *Pullen v. McDonald's Corp.*, No. 14-11081, 2014 WL 4610296, at *2 (E.D. Mich. Sept. 15, 2014) (denying first stage certification where "1,000 to 3,000 putative class members had varying pay rates, hours worked and deductions methodologies applied to their pay" and the reimbursements therefore "may or may not have dropped their average hourly pay to such an extent that it would violate the

---

wage provisions"); *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 301 (E.D.N.Y. 2013). Plaintiffs suggest that *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 715-16 (E.D. Pa. 2014), holds that an employer must reimburse employees for vehicle-related expenses at the IRS rate. The defendant in Zellagui failed to appear and the court entered a default judgment.  The court merely accepted Plaintiffs' contention that the IRS rate could be used as a "reasonable approximation of the actual per mile vehicle expenses." *Id.* at 716.

21

FLSA.").

Courts have rejected motions for conditional certification in analogous situations where the plaintiff in an exemption case fails to show that an alleged unlawful common policy was actually applied to the members of the proposed collective action. For example, in *Warman v. Am. Nat'l Standards Inst.*, No. 15 Civ. 5486 (RA), 193 F. Supp. 3d 318, 324 (S.D.N.Y. June 27, 2016), after acknowledging that plaintiff had likely made a modest factual showing that the defendants had a common practice of treating candidates as exempt under the FLSA, the court explained that "[t]his, however, does not end the inquiry." *Id.* Instead, the court explained that the "critical question is whether the policy of classifying a group of employees as exempt violates the FLSA." *Id.* The same reasoning applies here. The question is not whether delivery drivers were all subject to a per-delivery methodology, but whether the policy of reimbursing delivery drivers on this basis violates the FLSA.

Plaintiffs also have offered no evidence to show that delivery drivers are subjected to a common policy that fails to reasonably approximate their actual expenses. ██████████

██████████████████████████████

██████████████████████████████

████████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████████████

███████████████████████████████

██████████████████████████████

22

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███

In sum, Plaintiffs have failed to show a common policy that is alleged to violate the FLSA because they have failed to introduce any evidence about the actual **policies** that franchisees apply to reasonably approximate vehicle expenses given the average miles per delivery, fuel costs, vehicle costs, or any other factor franchisees may use to approximate those expenses given their geographic area and other unique circumstances that might affect those costs at their individual franchise locations.

### B. The Data On Which Plaintiffs Rely Does Not Support Their Claim Of A Common Unlawful Policy

Plaintiffs argue that the "Reimbursement Spreadsheets" and "simple math" lead to the conclusion that "[a]ll of the Declarants and Opt-In Plaintiffs received a reimbursement that was insufficient to compensate them for the costs" of making deliveries.  (ECF No. 161 at 14.) Plaintiffs' conclusory allegations on this issue do not even attempt to address a number of crucial variables.  Most glaringly, Plaintiffs' Renewed Motion does not consider the hourly wages paid to the delivery drivers. ████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████.  (Maatman Dec. ¶ 38, Ex. 33)  Plaintiffs' Renewed Motion also does not address tips received (which are considered wages), the variability in driver expenses, or the number of deliveries per run.

The most that the Court could fairly conclude from the evidence submitted by Plaintiffs is

that some members of the proposed collective action might have been paid less than minimum wage for some workweeks depending on their hourly wage, tips received, and vehicle expenses incurred. This is insufficient to show a common policy of paying delivery drivers less than the minimum wage across more than 3,000 stores owned by more than 600 different entities.

### C.   Plaintiffs' Declarations Fall Far Short Of Providing The Necessary Support For Conditional Certification

In support of their Renewed Motion, Plaintiffs submitted 30 declarations from delivery drivers. None of these declarations address the question of which entity employs the declarant or sets the policies at issue in this case. In fact, 26 of the 30 declarations are from individuals who were opt-ins in the *Bellaspica v. PJPA* litigation, in which they claimed that PJPA and its owners were their employers. (Maatman Dec. ¶¶ 14-15, Ex. 15.) Each of these individuals received a settlement payment based on that litigation. (*Id.* ¶ 16.)

The declarations submitted by Plaintiffs are also unreliable. As an initial matter, the fact that the declarations are nearly identical suggests they are based on a lawyer's theories and not on personal knowledge. *See, e.g.*, *Palacios v. Boehringer Ingelheim Pharm., Inc.*, No. 10-CV-22398, 2011 WL 6794438, at *5 (S.D. Fla. Apr. 19, 2011) ("Plaintiff attaches three almost identical, cut-and-paste declarations. . . . The Court strongly disapproves of the use of boilerplate attorney-drafted declarations"). Each of the declarations state:

- "I believe all of my delivery driver colleagues drove an average of at least 5 to 10 miles per delivery;"
- "I believe my delivery driver colleagues all incurred higher-than-average driving expenses as a result of their jobs;"
- "To compensate me and my colleagues for our driving expenses, we were paid a flat rate per delivery"
- "I do not believe this flat rate came close to compensating any of my delivery driver colleagues for his or her actual driving expenses."

The new declarations add the allegation: "After subtracting the unreimbursed costs I was

24

required to incur as a condition of my job as a delivery driver from the hourly wages I was paid, I was left with less than the federal minimum wage on an hourly basis while working for Papa John's."  (*See, e.g.,* Morton Dec., ECF No. 180 ¶ 22.)

In their depositions, however, the Named Plaintiffs admit that these, and other, key statements offered to support conditional certification are pure speculation. ████████████

████████████████████████████████████████████████

████████████████████         ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████         ████   When read in this light, the Court is left with no basis to extrapolate the declarants' personal experiences to tens of thousands of other individuals who worked at stores owned and operated by separate entities, each with their own wage and reimbursement policies, at other businesses throughout the United States.

## III.   This Court Should Deny The Motion For The Additional And Independent Reason That Fairness And Procedural Considerations Make A Collective Action Improper

The issues in this case – vehicle expenses incurred, reimbursements paid, effective wages, and seeking a double recovery despite signed releases – are highly individualized.  The Court should not expand this case and facilitate notice to thousands of individuals where Plaintiffs have not demonstrated that these issues can be fairly adjudicated on a collective basis. *Saleen*, 2009 U.S. Dist. LEXIS 49891, at *28-30 (denying motion for conditional certification because plaintiffs failed to show that the case is "manageable as a collective action.").  Allowing



such an action to proceed would waste resources and unfairly prejudice Defendant.  *Gromek v. Big Lots, Inc.*, No. 10 C 4070, 2010 WL 5313792, at *5 (N.D. Ill. Dec. 17, 2010) (denying conditional certification where the claims were not manageable, even though the court found that plaintiffs were similarly situated);  *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941, 945 (W.D. Ark. 2003) (noting it "would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine that the matter should not proceed as a collective action because the class members are not similarly situated.")

A collective action that includes employees of corporate-owned and franchisee-owned stores would be unmanageable.  The Court has already recognized that the more than 600 franchise owners are not parties to this litigation.   (Oct. 5, 2016 Minute Order.)  As franchise employers set their own wage rates and reimbursement policies for their employees, the Court will be required to supervise hundreds of "mini-trials" to determine whether these employers violated the FLSA by maintaining policies resulting in delivery drivers being paid less than minimum wage.  Such a case is clearly not appropriate for collective action treatment.

## IV. The Participation Of The *Bellaspica* Plaintiffs Further Undermines Any Assertion That Members Of The Putative Collective Action Are Similarly-Situated Or That This Case Is Manageable As A Collective Action

Like the plaintiffs in *Korenblum*, "this is not Plaintiffs' first bite at the collective-action apple."  195 F. Supp. 3d at 487.  Plaintiffs' counsel already brought suit on behalf of four of the named Plaintiffs alleging these same vehicle reimbursement claims against their employer PJPA, a franchisee.  (Maatman Dec. ¶ 12, Ex. 15.)  The *Bellaspica* suit was settled by Plaintiffs' counsel in March 2016, and now those same litigants seek a double recovery through this litigation.  (*Id.* ¶ 16.)  Of 236 opt-ins to this litigation, 223 were opt-ins to the *Bellaspica* case, and of five named Plaintiffs in this litigation, four were plaintiffs in *Bellaspica*.  (*Id.* ¶ 15.)

██████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

Even if Plaintiffs' factual premise were true (which it is not), those circumstances are limited to delivery drivers who were directly employed by PJPA. As a result, there are a host of factual and legal defenses – such as *res judicata* and the bar on double recovery – that apply to the PJPA Plaintiffs that do not apply to any other individuals encompassed by the litigation. These significant differences undermine the ability of the PJPA Plaintiffs to represent the broader interests of the collective action, and also undermine any claim that the proposed collective action is comprised of individuals who are similarly situated to one another. *DeSilva v. North Shore-Long Is. Jewish Health Sys.*, 27 F. Supp. 3d 313, 325 (E.D.N.Y. 2014) (decertifying collective action because individualized nature of defenses '"weighs heavily against proceeding… as [an FLSA] collective action"') (internal citation omitted).

Moreover, the various factual and legal defenses that apply only to the *Bellaspica* opt-ins exacerbate the manageability issues presented in this case because the Court would have to conduct mini-trials on the issue of whether the *Bellaspica* plaintiffs were precluded from filing suit or were already compensated for these. These individualized issues – including signing settlement releases and seeking another recovery on claims released but re-asserted in this suit – also undermine the ability of the *Bellaspica* Plaintiffs to act as representatives in this collective action. *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) (named plaintiffs were not adequate representatives because they were not similarly situated to opt-ins).

27

## V.     Equitable Tolling Is Inappropriate Here

"[E]quitable tolling is only appropriate in [ ] rare and exceptional circumstance[s] . . . in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal citations and quotations omitted).  A court "must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.*[12]

Because the *Bellaspica* plaintiffs did not act with "reasonable diligence," equitable tolling is inappropriate.  Indeed, in *Bellaspica*, the plaintiffs brought suit not only against PJPA, but also two other individuals under a joint employer theory of liability.  The *Bellaspica* plaintiffs knew of their potential claims against PJI at the time they filed suit against PJPA and could have asserted joint employer liability in that suit, but they chose instead to sue their actual employer, and cannot now claim "extraordinary circumstances" as a result of that strategic litigation decision.  Indeed, Plaintiffs Morris, Wolff, and Morton testified that their theory of joint employer liability against PJI is based on information known to them at the time of the *Bellaspica* suit, but they could give no reason that PJI was not named as a defendant.[13]

Moreover, Plaintiffs' unfounded allegations about discovery do not justify tolling.  PJI has fully complied with its discovery obligations and its representations about available data

---

[12] In the Second Circuit, "[c]ases in which tolling was granted have involved either: a court-imposed stay pending the Court's resolution of a dispositive motion, a stipulation among the parties to toll the statute, tolling only for plaintiffs who already had filed consents[,] or the employer's failure to post required notices advising employees of their FLSA rights." *Gordon v. Kaleida Health*, No. 08-CV-378, 2009 WL 3334784, at *13 (W.D.N.Y. Oct. 14, 2009) (citations omitted) (denying equitable tolling where "[n]one of those circumstances appear to exist").

[13] Morris Tr. 39:2-13, 40:6-12; Wolff Tr. 171:18-19; Morton Tr. 70:2-13.

have been accurate and consistent.  (Maatman Dec. ¶¶ 24-36.)  Plaintiffs' counsel has repeatedly

entered into agreements with respect to the production of data, and then subsequently claimed

that PJI has "obfuscated."  (*Id.*)  Plaintiffs' strategic litigation tactics in the wake of the Court's

denial of conditional certification present no basis for equitable tolling, and are far from the

"extraordinary circumstances" required in the Second Circuit.

## VI.   The Court Should Not Adopt Plaintiffs' Proposed Form Of Notice[14]

Plaintiffs' proposed notice never mentions that the claims of franchisee employees

depend on a finding of joint-employer liability.  Instead, it misleadingly implies that putative

members of the collective action "worked for [PJI]" and were paid wages or reimbursed for

automobile expenses by PJI.[15]

Even if this Court were to accept Plaintiffs' argument that PJI can be held liable as a joint

employer, it is a simple fact that franchisee delivery drivers were not paid or reimbursed by PJI.

Plaintiffs' misleading characterization prejudices franchisee employees who may not fully

understand that this lawsuit does not involve claims against their actual franchisee employer.

This could cause those individuals to forego bringing potentially more meritorious claims against

their actual employers in the false belief that this lawsuit encompasses those claims.  Plaintiffs'

proposed notice actively encourages this misunderstanding by implying that franchise employees

have no other recourse than joining this lawsuit, or bringing a separate lawsuit against PJI (as

opposed to bringing a lawsuit against their actual franchise employers).  (*Id.* at 2).

---

[14] If the Court grants conditional certification, Defendant respectfully requests that the parties be given a period of two weeks from the date of the order to meet and confer regarding the terms of the notice and the notice process.  *See, e.g., Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 U.S. Dist. LEXIS 114011, at *23 (S.D.N.Y. Aug. 15, 2014).

[15] (ECF No. 68, Ex. 21 at 1 (alleging that PJI "failed to adequately reimburse delivery drivers' automobile expenses," that the Court authorized notice to "current and former delivery drivers who worked for [PJI]," and stating that putative opt-ins may be eligible to join the lawsuit if "you believe … that the wages paid by [PJI] fell below the federal minimum wage").)

Plaintiffs' notice also prejudices employees of corporate stores who may not realize that this case is an attack on PJI's franchise model, rather than a straightforward lawsuit against PJI. Plaintiffs' theory will involve numerous, complicated issues of joint-employer liability that will add layers of complexity and delay to every stage of this case. PJI employees should not be asked to opt-in to this lawsuit without an explanation of the unnecessary delay and complications that Plaintiffs' theory imposes on the timely and efficient resolution of their claims.

Plaintiffs argue that their proposed form of notice is adequate because it "expressly informs the employees of the potential consequences of joining the lawsuit," including "being asked to partake in discovery including depositions." (ECF No. 65 at 24.) But Plaintiffs' proposed form of notice says no such thing. It never mentions "discovery" or "depositions." It states merely the following: "[w]hile this suit is pending, you may be asked to provide information." (ECF No. 68, Ex. 21 at 4.) This is plainly insufficient. The notice form should describe the discovery obligations that opt-ins may have, as well as the fact that they may be required to travel to the Southern District of New York to be deposed and/or participate in a trial. *See Reab v. Elec. Arts, Inc*., 214 F.R.D. 623, 632 (D. Colo. 2002).

Plaintiffs also ask this Court to approve an opt-in period that extends for 90 days. (ECF No. 161 at 25.) That time period is excessive and far beyond what courts typically allow in this District. As this Court has recognized, an opt-in period of 30 to 60 days is sufficient barring extraordinary circumstances – not present here – that would warrant a longer notice period. *See, e.g., Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-52 (S.D.N.Y. 2011) (refusing a 90-day period and noting that 60 days is "more consistent with FLSA practice").

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiffs' Renewed Motion for Conditional Certification be denied in its entirety.

39371651v.8

**Dated:  June 20, 2017**

SEYFARTH SHAW LLP
*Attorneys for Defendant*
*Papa John's International, Inc.*

By:   */s/Gerald L. Maatman, Jr.*
      Gerald L. Maatman, Jr.
      Matthew J. Gagnon
      Gina R. Merrill
      Brendan Sweeney
      620 Eighth Avenue
      New York, NY 10018-1405
      Telephone:  (212) 218-5500
      Facsimile:  (212) 218-5526

## CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2017, I electronically filed the foregoing DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR CONDITIONAL CERTIFICATION, DECLARATION OF GERALD L. MAATMAN, JR., ESQ., WITH EXHIBITS 1-34; DECLARATION OF B. HIGDON; DECLARATION OF J. SMITH; DECLARATION OF E. HEELAN; DECLARATION OF S. SMITH; DECLARATION OF B. STEWART; with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to the following counsel of record:

Jeremiah Frei-Pearson
D. Greg Blankinship
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, NY  10601
jfrei-pearson@FBFGLaw.com

David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA  19106
dcohen@stephanzouras.com

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL  60601
jzouras@stephanzouras.com
rstephan@stephanzouras.com

*/s/Gerald L. Maatman, Jr.*
Gerald L. Maatman Jr.