**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**WILLIAM DURLING, JAMES MORTON, JR.**, **TOM WOLFF, MICHAEL MORRIS and RICHARD SOBOL,** for themselves and all others similarly situated,

                Plaintiffs,

       v.

**PAPA JOHN'S INTERNATIONAL, INC.,**
           Defendant.

Case No.7:16-cv-3592-CS-JCM

Class / Collective Action

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**N.B.  Plaintiffs respectfully submit a redacted version of this filing and will submit an un-redacted version of this filing after the Court rules on Plaintiffs' Motion for Leave to File Under Seal (Dkt. No. 240).**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

PRELIMINARY STATEMENT ..........................................................................1

PROCEDURAL BACKGROUND........................................................................3

FACTUAL BACKGROUND ..............................................................................6

████      ████████████████████████████████████████

    ██      ██████████████████████████████████████████

    ██      ██████████████████████████████████████████

    C.      PJI Has Recently Received Vehicle Cost Data And Analyses From Motus .....8

    D.      PJI Admits It Has Used Motus Data In Business Decisions.............................9

II.      PJI Produced Vendor Documents In The Perrin Case,
But No Post-Perrin Vendor Documents In This Litigation ...........................9

    A.      Vendor Documents Were Crucial In
Litigating Perrin And In Litigating Similar Cases..........................................10

    B.      PJI Has Not Produced Any Post-Perrin Runzheimer Documents,
And Is Now Attempting To Claw Back Post-Perrin Motus Documents .........12

ARGUMENT ....................................................................................................13

I.      Attorney-Client Privilege Does Not Apply To The Motus Documents .....................13

    A.      Communications And Documents Exchanged Between
Motus And PJI Cannot Benefit From Attorney-Client Privilege....................13

    B.      Internal Documents Concerning Motus's Work
For PJI Are Predominantly Business Documents..............................................15

II.      The Work Product Doctrine Does Not Apply To The Motus Documents .................16

    A.      The Motus Documents Were Not Prepared For Litigation..............................16

    B.      The Motus Document Were Not Prepared
In Anticipation Of Any Specific Litigation .....................................................18

C.      The Motus Documents Would Have Been Created
        In Essentially Similar Form Irrespective Of Any Litigation ...........................19

D.      Plaintiffs' Substantial Need For The Motus
        Documents Outweighs Any Purported Work Product Protection ...................20

III.    Any Email Attachments Or Emails In An Email String That Are Not
        Independently Privileged By Their Own Content Should Be Produced.....................21

IV.     Defendant Must Produce Clean Copies
        Of The Documents It Improperly Redacted.................................................................23

CONCLUSION.................................................................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*,
   208 F.R.D. 92 (S.D.N.Y. 2002) ................................................................................ 22

*Bartholomew v. Avalon Capital Group, Inc.*,
   278 F.R.D. 441 (D. Minn. 2011) .............................................................................. 24

*Chen-Oster v. Goldman, Sachs & Co.*,
   293 F.R.D. 547 (S.D.N.Y. 2013) .............................................................................. 19

*Chevron Corp. v. Salazaar*,
   No. 11-3718, 2011 WL 3880896 (S.D.N.Y. Sept. 1, 2011) ...................................... 23

*Clarke v. J.P. Morgan Chase & Co.*,
   No. 08-2400, 2009 WL 970940 (S.D.N.Y. Apr. 10, 2009) ....................................... 19

*Complex Sys., Inc. v. ABN AMRO Bank N.V.*,
   279 F.R.D. 140 (S.D.N.Y. 2011) ......................................................................... 22, 23

*Duttle v. Bandler & Kass*,
   127 F.R.D. 46 (S.D.N.Y. 1989) ................................................................................ 13

*Evon v. Law Offices of Sidney Mickell*,
   No. 090760, 2010 WL 455476 n.1 (E.D. Cal. Feb. 3, 2010) ................................... 24

*Fustok v. Conticommodity Serv., Inc.*,
   106 F.R.D. 590 (S.D.N.Y. 1985) .............................................................................. 18

*Gonzalez v. City of New York*,
   No. 08-2699, 2009 WL 2253118 (E.D.N.Y. July 28, 2009) ..................................... 16

*Gucci America, Inc. v. Guess?, Inc.*,
   271 F.R.D. 58 (S.D.N.Y. 2010) ................................................................................ 25

*In re Cnty. of Erie*,
   473 F.3d 413 (2d Cir.2007) ...................................................................................... 15

*In re Grand Jury Proceedings*,
   No. M-11-189, 2001 WL 1167497 (S.D.N.Y. Oct. 3, 2001) .................................... 18

*In re Grand Jury Subpoena Duces Tecum*,
   731 F.2d 1032 (2d Cir. 1984) ................................................................................... 22

*In re Grand Jury Subpoenas Dated Mar. 24, 2003 Directed to*
*(A) Grand Jury Witness Firm & (B) Grand Jury Witness,*
265 F. Supp. 2d 321 (S.D.N.Y. 2003) ................................................................. 13

*In re Leslie Fay Companies, Inc. Securities Litigation,*
161 F.R.D. 274 (S.D.N.Y.1995) ........................................................................... 17

*In re Penthouse Executive Club Compensation Litigation,*
No. 10-1145, 2012 WL 1511772 (S.D.N.Y. April 30, 2012) ................................ 24

*In re Six Grand Jury Witnesses,*
979 F.2d 939 (2d Cir.1992) ................................................................................... 25

*In re State Street Bank and Trust Co. Fixed Income Funds Investment Litigation,*
No. 08-0333, 2009 WL 1026013 (S.D.N.Y. Apr. 8, 2009) .................................. 24

*In the Matter of the Arbitration Between Claimant and Respondent,*
2015 WL 8682319 (AAA Aug. 13, 2015) ...................................................... 12, 20

*Jacob v. Duane Reade, Inc.,*
No. 11-160, 2012 WL 651536 (S.D.N.Y. Feb. 28, 2012) .................................... 16

*Maloney v. Sisters of Charity Hosp. of Buffalo, N.Y.,*
165 F.R.D. 26 (W.D.N.Y. 1995) .......................................................................... 17

*Martin v. Valley Nat'l Bank,*
140 F.R.D. 291 (S.D.N.Y.1991) ........................................................................... 17

*Montesa v. Schwartz,*
No. 12-6057, 2016 WL 3476431 (S.D.N.Y. June 20, 2016) ................... 14, 16, 18, 19

*Occidental Chem. Corp. v. OHM Remediation Servs. Corp.,*
175 F.R.D. 431 ................................................................................................. 17, 18

*P & B Marina, L.P. v. Logrande,*
136 F.R.D. 50 (E.D.N.Y. 1991) ........................................................................... 22

*Procter & Gamble Co. v. Be Well Mktg., Inc.,*
No. 12-392, 2013 WL 152801 (M.D. Pa. Jan. 15, 2013) ..................................... 24

*Renner v. Chase Manhattan Bank,*
No. 98-926, 2001 WL 1356192 (S.D.N.Y. 2001) ............................................... 22

*S.E.C. v. Beacon Hill Asset Mgmt. LLC,*
231 F.R.D. 134 (S.D.N.Y. 2004) ......................................................................... 22

*Scott v. Chipotle Mexican Grill, Inc.*,
   67 F. Supp. 3d 607 (S.D.N.Y. 2014) ...................................................................... 20

*Scott v. Chipotle Mexican Grill, Inc.*,
   No. 12-8333, 2015 WL 1424009 (S.D.N.Y. Mar. 27, 2015) .................................... 22

*United States Postal Service v. Phelps Dodge Refining Corp.*,
   852 F. Supp. 156 (E.D.N.Y. 1994) .......................................................................... 14

*United States v. Ackert,*
   169 F.3d 136 (2d Cir. 1999) ..................................................................................... 14

*United States v. Adlman,*
   134 F.3d 1194 (2d Cir.1998) .................................................................................... 17

*United States v. Adlman,*
   68 F.3d 1495 (2d. Cir. 1995) .................................................................................... 13

*United States v. Davis,*
   132 F.R.D. 12 (S.D.N.Y. 1990) ......................................................................... 15, 16

*United States v. Kovel,*
   296 F.2d 918 (2d Cir. 1961) ..................................................................................... 14

*United States v. Mejia,*
   655 F.3d 126 (2d Cir. 2011) ..................................................................................... 13

*Upjohn Co., et al. v. United States,*
   449 U.S. 383 (1981) ......................................................................................... 15, 25

*Weber v. Paduano,*
   No. 02-3392, 2003 WL 161340 (S.D.N.Y. Jan. 22, 2003) ................................. 18, 20

*Wultz v. Bank of China Ltd.*,
   304 F.R.D. 384 (S.D.N.Y. 2015) ............................................................................ 17

*Wultz v. Bank of China Ltd.,*
   979 F. Supp. 2d 479 (2013) ..................................................................................... 20

**Statutes**

29 U.S.C. § 255 (a) ....................................................................................................... 20

**Rules**

Fed. R. Civ. P. 26(b)(3)(A) ..................................................................................... 16, 18

## PRELIMINARY STATEMENT

Defendant Papa John's International, Inc.'s ("PJI") delivery driver reimbursement program is at the heart of this litigation.  PJI runs this program through its legal department, even though the driver reimbursement rates that it sets are quintessential business decisions.  The reason PJI uses its legal department to make business decisions regarding reimbursement rates is not because setting the reimbursement rate is a legal decision.  Rather, PJI knows it is under-reimbursing drivers and that documents and communications regarding its reimbursement process show how insufficient these reimbursements are, so it seeks to shield those documents by making overly broad privilege claims.  Plaintiffs respectfully request that the Court reject Defendant's overly broad privilege claims and Order Defendant to produce all documents improperly withheld.

PJI's expansive privilege claims include numerous communications with at least one third-party vendor that PJI uses to provide vehicle cost analyses, Motus, LLC ("Motus"), as well as the data Motus provided, which Defendant admits it has used in business decisions affecting putative class and collective members.  These communications and data are the same types of responsive documents PJI exchanged with another vendor, Runzheimer International, Inc. ("Runzheimer"), which PJI produced in discovery during the predecessor litigation *Perrin v. Papa John's Int'l, Inc.*, No. 09-01335 (E.D. Mo.).  Significantly, PJI has not produced any communications or documents from Runzheimer outside of those produced more than four years ago in *Perrin*, and claims that it is not withholding any such Runzheimer documents -- yet, during the last four years, PJI has received, and is now withholding, Motus documents providing the same type of vehicle cost data that Runzheimer provided and that PJI produced in *Perrin*.

PJI unpersuasively argues that it relies on four-year-old Runzheimer data for its business decisions, while ignoring Motus data of the same type outside of its legal consultation.  But this

argument is belied by PJI's own admission that it has used Motus's data to roll out a new

reimbursement program at certain corporate-owned stores (*see* ██████████████████████

███████████████████████████████████████████████████████████

█████████████; Transcript of October 4, 2017 Proceedings before Hon. Mag. J. Judith C.

McCarthy ("Oct. 4 Transcript"), Exhibit 2 to Frei-Pearson Decl. at 12:8-15), █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████

   Moreover, this argument is belied by common sense.  ██████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████ Even without ███████████████████████████████

██████████████████████████████████████, or the admission by

PJI that it used Motus data to implement a new reimbursement policy at some of its stores,

Plaintiffs would have difficulty crediting the claim that PJI ignores all recent Motus data in favor

of using obsolete date from a four-year-old Runzheimer report.

   The Court has already ordered an *in camera* review of all Motus documents.  Plaintiffs

respectfully request that -- when judging the line between predominantly business and

predominantly legal documents during this review -- the Court take into account PJI's admitted

business use of Motus data, ████████████████████████████████████████

███████████████████████, and the reasonable implications of PJI receiving updated data on vehicle costs ████████████████████████████████.

Defendant's privilege log also includes numerous entries where it is withholding email attachments based on an asserted privilege over the "parent" emails to which they are attached. But if such attachments are not independently privileged by their own content, they cannot be withheld merely by their association with a separate document. Likewise, Defendant is impermissibly withholding portions of email strings that are not independently privileged, including emails with third-party recipients, where they have been forwarded or replied to in a separate, allegedly privileged communication. The non-privileged portions of these email strings should be produced, with only the discrete privileged portions withheld or redacted. Finally, Defendant has overly redacted multiple documents where there is no identifiable privilege, including bare factual data. Unredacted copies of these non-privileged documents should be produced immediately.

Plaintiffs therefore respectfully request that the Court (i) find that communications with third party vendors regarding the manner in which Defendant sets its driver reimbursement rate are neither attorney-client communications or covered by the attorney-work product doctrines, (ii) find that emails attachments and portions of email strings that are not independently privileged by their own content are not privileged through their attachment to privileged emails, (iii) find that Defendant cannot redact non-privileged portions of the documents it produces, and (iv) Order Defendant to produce all documents withheld or improperly redacted on these bases

## **PROCEDURAL BACKGROUND**

Three of the four most important factual issues in this litigation are: the substance of PJI's general reimbursement policy for delivery drivers, the specific rates it has used when

under-reimbursing its drivers over time at stores across the country, and the information PJI considered when setting those rates.  As such, on July 6, 2016, the same day the Parties had their Rule 26 conference (*see* Frei-Pearson Decl. at ¶ 3), Plaintiffs issued their first Requests for Production of Documents to Defendant, which included requests for all *Perrin* discovery documents and "[a]ll studies or analyses relating to [PJI's] determination as to how much to reimburse Delivery Drivers."  Plaintiffs' First Request for Production of Documents, Exhibit 4 to Frei-Pearson Decl., at 4-5.

The Parties worked collegially on numerous discovery issues.  *See* Frei-Pearson Decl. at ¶ 4.  Nevertheless, the Parties were forced to bring a number of discovery disputes to the Court's attention for resolution, including finalizing protocols for the production electronically stored information ("ESI") (*see* Dkt. Nos. 95, 96, 128), and Defendant's unwillingness to produce all *Perrin* documents.  *See* Dkt. Nos. 136, 139, Minute Entry for March 29, 2017 Proceedings Held Before Magistrate Judge Judith C.  McCarthy.  After resolving multiple discovery disputes and reaching agreement on search terms, Defendant's ESI production did not begin until approximately May 30, 2017.  *See* Frei-Pearson Decl. at ¶ 5.  Defendant represented it would complete this production by July 1, 2017.  *See* May 5, 2017 Email from Gina Merrill, Exhibit 5 to Frei-Pearson Decl.  However, Defendant did not send its latest document production until August 24, 2017.  *See* August 24, 2017 Letter from Seyfarth Shaw, Exhibit 6 to Frei-Pearson Decl.

Pursuant to the operative protective order and ESI protocols, Defendant first provided its privilege log to Plaintiffs on August 8, 2017.  *See* Frei-Pearson Decl. at ¶ 6.  The next day, Plaintiffs alerted Defendant to multiple deficiencies in this log -- including that PJI failed to identify the attorneys for which it was claiming privilege and had incomplete information on the

parties that were involved in numerous communications.  *Id*. at ¶ 7.  Defendant provided a

revised log on August 21, 2017 and, over the course of multiple meet and confer calls and

emails, Plaintiffs raised multiple issues with Defendant's privilege assertions.  *Id*. at ¶ 6.

After resolving or narrowing multiple issues collegially, the Parties reached an impasse

on a number of remaining issues, including Defendant's withholding, and subsequent claw-back

request, of documents related to its third-party vendor, Motus; Defendant's withholding of email

attachments and portions of email strings that are not independently privileged; Defendant's

withholding of documents that are predominantly business documents in nature; and Defendant's

liberal use of redaction to redact non-privileged information.  *See* Plaintiffs' September 19, 2017

Letter to the Court ("Sept. 19 Letter"), Exhibit 7 to Frei-Pearson Decl. ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

At a scheduled status conference on September 22, 2017, the Court directed Defendant to

produce any overlooked documents from any third-party vendors other than Motus, or point

Plaintiffs to any such post-*Perrin* vendor documents that Plaintiffs may have missed when

reviewing the production, to see if such documents would resolve Plaintiffs concerns over the

Motus documents.  *See* Transcript of September 22, 2017 Proceedings before Hon. Mag. J.

Judith C. McCarthy ("Sept. 22 Transcript"), Exhibit 9 to Frei-Pearson Decl., at 36:2-17.

Defendant did not produce any additional documents, and was unable to point Plaintiffs to any

post-*Perrin* vendor documents in the production.  *See* Frei-Pearson Decl. at ¶ 8.  At a status

conference on October 4, 2017, the Court ordered the Parties to provide full briefing on the

present discovery issues.  *See* Oct. 4 Transcript at 15:1-20.

## FACTUAL BACKGROUND

█    ████████████████████ ████████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

█    ████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████  Yet it has not provided <u>any</u> post-*Perrin*

documents showing the sort of data that would underpin the calculations for such an "evolving"

process.  *See* Frei-Pearson Decl. at ¶ 8.

[REDACTED]

---

[2] As described *infra* at p. 12-13, and in Plaintiffs' September 19, 2017 letter to the Court, Defendant has issued a claw-back request for this document, which Plaintiffs oppose.

████ ██████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Yet PJI has provided no documents

from the past four years that show updated data for these costs.  *See* Frei-Pearson Decl. at ¶ 8.

████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

**C.      PJI Has Recently Received Vehicle Cost Data And Analyses From Motus**

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████

While PJI has withheld from production any full reports it received from Motus, any

documents detailing Motus's methodology, and any emails between PJI and Motus, █████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████

### D.    PJI Admits It Has Used Motus Data In Business Decisions

After representing to Plaintiffs and the Court that it used Motus strictly for legal

consultation (*see* ███████████████ Sept. 22 Transcript at 9:15-10:5), PJI recently admitted

that it has in fact used Motus's data for business purposes -- implementing a purportedly "new"

reimbursement program at multiple stores, based on Motus's calculations. *See* ████████;

Oct. 4 Transcript at 12:8-15. While Plaintiffs believe that PJI has been using Motus's data and

analyses for business purposes for the past four years ████████████████████████

████████████████████████████████████████████

██████████████ this "new" reimbursement program, which affects all the putative class and

collective members employed at these stores, alone establishes that PJI uses  Motus documents

for business purposes.

## II.    PJI Produced Vendor Documents In The *Perrin* Case,
####       But No Post-*Perrin* Vendor Documents In This Litigation

The only vendor documents that PJI has produced to date are documents previously

produced in the *Perrin* litigation. ████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████

─────────────────────────────

█ ██████████████████████████████████████████████
████████████████████████████████████████████████

**A.**  **Vendor Documents Were Crucial In Litigating *Perrin* And In Litigating Similar Cases**



     Similar vendor documents have been crucial in similar litigations and arbitrations

involving other pizza companies.  In fact, Plaintiffs' counsel is aware of no other delivery driver

litigation where a defendant claimed to rely on vendor data and produced vendor data for one

time period, only to claim that all subsequent similar data was privileged.[4]

      **B.**     **PJI Has Not Produced Any Post-*Perrin* Runzheimer Documents,**
                 **And Is Now Attempting To Claw Back Post-*Perrin* Motus Documents**

In stark contrast to the numerous reports, emails, and related documents that PJI received

from Runzheimer and produced in the *Perrin* litigation, PJI has not produced <u>any</u>

correspondence, reports, or data from Runzheimer that post-dates the *Perrin* production. ■

In response to Plaintiffs' request for any additional Motus reports or similarly responsive

documents, PJI issued a claw-back request for the Motus spreadsheets, and the few other

documents it had produced either referencing these reports or identifying the data used.  *See*

---

[4] In addition, PJI makes much of the fact that it used Gregg J. Darish, a Motus employee, as a testifying expert in connection with *Perrin*.  Plaintiffs do not dispute that some litigation-related communications between PJI and Motus may be privileged.  However, not <u>all</u> communications between PJI and Motus are privileged.  Plaintiffs' counsel is aware of no other instance where the pizza company claimed that all communications with a vendor who provided information about expenses were privileged merely because the vendor also provided expert testimony.  To the contrary, multiple pizza companies have used a witness employed by a vendor that provides information about vehicular expenses as their litigation expert and have also used the same vendor for the business purpose of providing the company with information about vehicular expenses.  *See, e.g.*, *In the Matter of the Arbitration Between Claimant and Respondent*, American Arbitration Association, 2015 WL 8682319, at * 10 (Aug. 13, 2015).  Unlike PJI, these companies did not even attempt to claim that all communications with the testifying vendor were privileged.

September 19, 2019 Letter from Seyfarth Shaw, Exhibit 27 to Frei-Pearson Decl.  In accordance

with the operative protective order in this case, Plaintiffs have disputed Defendant's claw-back

request, as these documents appear to be primarily business documents.  *See* Sept. 19 Letter at 2.

## ARGUMENT

### I.      Attorney-Client Privilege Does Not Apply To The Motus Documents

Attorney-client privilege permits a party to withhold from production "communications

(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept

confidential (3) for the purpose of obtaining or providing legal advice."  *United States v. Mejia*,

655 F.3d 126, 132 (2d Cir. 2011).  "The party claiming the benefit of the attorney-client privilege

has the burden of establishing all the essential elements."  *United States v. Adlman*, 68 F.3d

1495, 1500 (2d. Cir. 1995).  ██████████████████████████████████████████

██████████████████████████████████████████████ the mere presence of an

attorney in a discussion does not make the discussion privileged.  *See, e.g.*, *Duttle v. Bandler &*

*Kass*, 127 F.R.D. 46, 52 (S.D.N.Y. 1989).

#### A.      Communications And Documents Exchanged Between
#### Motus And PJI Cannot Benefit From Attorney-Client Privilege

Defendant cannot meet its burden to invoke attorney-client privilege for the documents it

received from Motus, nor its communications with the vendor.  While PJI argues that Motus is a

"consultant" used strictly to provide legal advice, it is still a third-party to this action.  In general,

"the presence of a third party counsels against finding that the communication was intended to

be, and actually was, kept confidential" (*Mejia*, 655 F.3d at 134), except privilege may still

attach to communications that include "persons assisting the lawyer in the rendition of legal

services" such as staff "who assist lawyers in performing their tasks."  *In re Grand Jury*

*Subpoenas Dated Mar. 24, 2003 Directed to (A) Grand Jury Witness Firm & (B) Grand Jury*

*Witness*, 265 F. Supp. 2d 321, 325 (S.D.N.Y. 2003) (citations omitted).  Under *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961) attorney-client privilege cannot attach to communications that Motus was party to, unless its "presence . . . is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit" -- that is, unless Motus was acting in a capacity analogous to an interpreter.  *Id.* at 922. But "where an attorney seeks out a third party in order to obtain information that his client does not have," as PJI did with Motus, "the third party's role is not as a translator or interpreter of client communications" and attorney-client privilege does not attach.  *Montesa v. Schwartz*, No. 12-6057, 2016 WL 3476431 at *5 (S.D.N.Y. June 20, 2016) (McCarthy, Mag. J.).

PJI retained Motus not to "improve comprehension of the communications between attorney and client," but instead to gather new information on vehicle expenses.  *United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999).  ███████████████████████████

████████████████████████████████████████████████████████

██████████████████████████  Because Motus's "function was not to put information gained from defendants into usable form for their attorneys to render legal advice, but rather, to collect information not obtainable directly from defendants" attorney-client privilege does not apply.  *United States Postal Service v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 161 (E.D.N.Y. 1994); *see also Ackert*, 169 F.3d at 140 ("Because [expert's] role was not as a translator or interpreter of client communications, the principle of *Kovel* does not shield his discussions with [party]."); *Montesa*, 2016 WL 3476431 at *5.

### B.   Internal Documents Concerning Motus's Work For PJI Are Predominantly Business Documents

It is hornbook law that attorney-client privilege applies only to communications for legal, not business, advice.  *See, e.g., Upjohn Co., et al. v. United States, et al.*, 449 U.S. 383, 395-96

(1981).  Where a communication combines both business and legal advice, it is only privileged if

it "predominantly" provides legal advice.  *See United States v. Davis*, 132 F.R.D. 12, 16

(S.D.N.Y. 1990) (attorney-prepared document seen by persons outside attorney-client

relationship was discoverable in redacted form, omitting paragraphs containing legal advice and

opinion).  Such "legal advice involves the interpretation and application of legal principles to

guide future conduct or to assess past conduct."  *In re Cnty. of Erie*, 473 F.3d 413, 419 (2d

Cir.2007).



*See Phelps Dodge Refining Corp*., 852 F. Supp. At 160

("Needless to say, the attorney-client privilege attaches only to legal, as opposed to business

services)

      Plaintiffs recognize that there may be individual documents that both reference Motus's

calculations and also provide legal advice -- there may even be some documents that are

predominantly legal in nature.[6]  Plaintiffs are not seeking any such privileged documents, but

---

[6] Plaintiffs note that, in its claw-back request for the Motus documents, the only discernable
order that Defendant used for listing the documents was to place the sole arguably-privileged
document (indeed the only document to actually reference an attorney at all) first on the log.  *See*
Defendant's Claw-Back Privilege Log, Exhibit 28 to Frei-Pearson Decl. (listing attorney John
Matter as the Privilege Party for the first entry, but only "Papa John's Legal Department" for all

Defendant's blanket withholding of <u>all</u> Motus documents is an unacceptable overreach, and Plaintiffs are entitled to all of the actual reports that Motus prepared and provided to PJI, as well as all documents, or sections of documents, where PJI uses such reports for business purposes. *See Jacob v. Duane Reade, Inc.*, No. 11-160, 2012 WL 651536, at *1–3 (S.D.N.Y. Feb. 28, 2012) (portions of human resources manager's email memorializing meeting with counsel discussing employee training were not privileged, even though portion discussing Fair Labor Standards Act exemptions were privileged).

## II.    The Work Product Doctrine Does Not Apply To The Motus Documents

"The work product doctrine shields from disclosure materials prepared 'in anticipation of litigation or for trial by or for another party or its representative.'" *Montesa*, 2016 WL 3476431 at *7 (quoting Fed. R. Civ. P. 26(b)(3)(A)). "As with the attorney-client privilege, the party asserting the doctrine bears the burden of demonstrating the essential elements, [and] in addition to this affirmative showing, the party asserting the doctrine also has the burden of establishing non-waiver of the privilege." *Id.* (internal quotations and citations omitted).

### A.    The Motus Documents Were Not Prepared For Litigation

The reports that Motus created for PJI, like their counterparts from Runzheimer, primarily inform PJI's business decisions, not its litigation strategies. *See supra* p. 15-16. "Where documents are not prepared in anticipation of litigation, they not only fall outside the definition of attorney work product contained in Rule 26(b)(3), they also fall outside the scope of documents that are likely to implicate the purposes of the work product doctrine." *Gonzalez v. City of New York*, No. 08-2699, 2009 WL 2253118 at *4 (E.D.N.Y. July 28, 2009); *Martin v.*

---

others).  Defendant has represented that it will produce over a hundred Motus documents for the Court's *in camera* review, and Plaintiffs suspect that this large review will also "front-load" their strongest examples of privilege.

*Valley Nat'l Bank*, 140 F.R.D. 291, 304 (S.D.N.Y.1991) ("[I]f a party prepares a document in the ordinary course of its business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation.").  Thus, the predominant business nature of the Motus documents is fatal to Defendant's claims of work product protection.  *See, e.g.*, *Wultz v. Bank of China Ltd.*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015) ("Thus, the work product protection does not apply to documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation . . . [e]ven if such documents might also help in preparation for litigation") (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998); alterations in original); *Maloney v. Sisters of Charity Hosp. of Buffalo, N.Y.*, 165 F.R.D. 26, 30 (W.D.N.Y. 1995) ("If a party -- or even the party's attorney -- prepares a document in the ordinary course of business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation.").

Because Motus is a non-attorney, the documents it prepared are subject to even greater scrutiny, as "material prepared by non-attorneys, even if prepared in anticipation of litigation, is protected from discovery only where the material is prepared <u>exclusively</u> and in specific response to <u>imminent</u> litigation." *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431. 435 (W.D.N.Y. 1997) (emphasis added).

This comports with the purpose of the work product doctrine, which is designed to protect "the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Leslie Fay Companies, Inc. Securities Litigation*, 161 F.R.D. 274, 279 (S.D.N.Y.1995).  The Motus documents are mathematical calculations of the expenses that drivers incur when operating their vehicles -- documents that PJI has used in the regular course of business -- not litigation strategies or legal analyses.  *See* DURLING-PJI

206907.  "Where, as here, the documents at issue consist of factual materials and analyses of

facts, the [Federal] Rules' policy of liberal discovery weighs more heavily in favor of allowing

discovery, since production of the documents is less likely to inhibit a party's preparation for

litigation."  *Weber v. Paduano*, No. 02-3392, 2003 WL 161340 at *5 (S.D.N.Y. Jan. 22, 2003).

**B.    The Motus Document Were Not Prepared
In Anticipation Of Any Specific Litigation**

Defendant cannot meet its burden to show that the Motus documents fall under the ambit

of the work product doctrine, because those documents, ██████████████████████████████

████████████████████████████████████, were clearly not produced in anticipation

of this, or any other, specific litigation.  *See Occidental Chem. Corp.*, 175 F.R.D. at 434 ("The

protection from disclosure offered by Rule 26(b)(3) requires a more immediate showing than the

remote possibility of litigation . . . the document must be prepared with an eye to some specific

litigation.") (internal quotations and citations omitted); *Montesa*, 2016 WL 3476431 at *8 ("The

document at issue must have been 'prepared with an eye to some <u>specific</u> litigation.'") (quoting

*Occidental Chem. Corp.*, 175 F.R.D. at 434; emphasis in original); *Fustok v. Conticommodity

Serv., Inc.*, 106 F.R.D. 590, 592 (S.D.N.Y. 1985) (upholding Magistrate Judge's order to produce

reports when "at the time the report was commissioned or prepared the prospect of litigation was

not identifiable because specific claims had not already arisen.") (internal quotations omitted).

Even if PJI's work with Motus involved a general concern about the potential for future

litigation after *Perrin* -- that is, a desire to avoid future lawsuits along the same lines -- this is

still insufficient.  "Indeed, to find that 'avoidance of litigation' without more constitutes 'in

anticipation of litigation' would represent an insurmountable barrier to normal discovery and

could subsume all compliance activities by a company as protected from discovery."  *In re

Grand Jury Proceedings*, No. M-11-189, 2001 WL 1167497 at *15 (S.D.N.Y. Oct. 3, 2001)

(internal quotations omitted); *see also Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 547,

553 (S.D.N.Y. 2013) (same).

### C.   The Motus Documents Would Have Been Created In Essentially Similar Form Irrespective Of Any Litigation

The work product doctrine "does not apply to documents . . . that would have been

created in essentially similar form irrespective of the litigation."  *Montesa*, 2016 WL 3476431 at

*8 (internal quotation omitted). ████████████████████████████

████████████████████████████

█████████████████████████████

█████████████████████████████

██████████████████████████████

██████████████████████████████

█████████████████

██████████████████████████

████████████████████████████

█████████████████████████████

███████████████████  It is reasonable to conclude that these

reports -- either in identical or "essentially similar" form -- would have been prepared regardless

of litigation ███████████████████████████

████████████████████████

████████████████████████████

█████████████  As such, they are not protected under the work product

doctrine.  *See Clarke v. J.P. Morgan Chase & Co.*, No. 08-2400, 2009 WL 970940 at *7

(S.D.N.Y. Apr. 10, 2009) ("If, regardless of the prospect of litigation, the document would have

been prepared anyway, in the ordinary course of business or in "essentially similar form," it is not entitled to work product protection.").

### D. Plaintiffs' Substantial Need For The Motus Documents Outweighs Any Purported Work Product Protection

"[T]he work product doctrine does not constitute a true privilege, as it affords only qualified protection to the materials within its scope, allowing discovery of the documents if the party seeking production can establish substantial need and undue hardship." *Weber*, 2003 WL 161340, at *3; *see also Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 488 (2013) ("Unlike the protection granted to attorney-client communications, the privilege derived from the work-product doctrine is not absolute. Like other qualified privileges, it may be overcome by a showing of substantial need.") (internal quotations, alterations, and footnotes omitted). Plaintiffs have a substantial need for the Motus documents.

Plaintiffs' claims against PJI include allegations of willfulness or reckless disregard for relevant minimum wage laws -- claims that impact the applicable statute of limitations and damages. *See* Dkt. No. 35 at ¶¶ 85, 116, 132, 149; 29 U.S.C. § 255 (a) (three year statute of limitations for the Fair Labor Standards Act for "a cause of action arising out of a willful violation"). Conversely, Defendant may allege a "good faith" defense in an attempt to absolve itself of any wrongdoing, or at least mitigate its exposure. *See, e.g. Scott v. Chipotle Mexican Grill, Inc*., 67 F. Supp. 3d 607, 616 (S.D.N.Y. 2014) (holding that employer asserted defenses to FLSA claims that require showings of good faith, and in doing so waived privilege); *In the Matter of the Arbitration Between Claimant and Respondent*, American Arbitration Association, 2015 WL 8682319 (Aug. 13, 2015) (reflecting that, in a virtually identical case against a large pizza chain that was resolved in individual arbitration, both the pizza company and the delivery driver cited to the vendor documents in arguing the merits of the pizza company's ill-fated good

faith defense).   Plaintiffs thus have a substantial need for access to the actual information that

Defendant had at its disposal when effecting the reimbursement policies at issue.

**III.     Any Email Attachments Or Emails In An Email String That Are Not
Independently Privileged By Their Own Content Should Be Produced**

Numerous entries on Defendant's Privilege Log include email attachments and strings of

emails that Defendant is withholding in their entirety.  *See, e.g.,* Defendant's Privilege Log

("Priv. Log"), Exhibit 29 to Frei-Pearson Decl. at lines 9, 10, and 12.  ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

██████    Plaintiffs have no objection to Defendant withholding documents that are truly

privileged; nor do Plaintiffs object to Defendant redacting documents to that are partially

privileged.  However, Defendant should not be allowed to withhold non-privileged documents

merely because they are attached to a privileged document.  By using this overbroad approach,

Defendant is likely able to justify withholding vendor documents that are not independently

privileged merely because Defendant's internal counsel strategically attached the documents to

communications that are privileged.

Defendant's attempt to withhold responsive, non-independently-privileged attachments in

this way runs counter to voluminous case law.  "Attachments which do not, by their content, fall

within the realm of the privilege cannot become privileged by merely attaching them to a

communication with an attorney." *Astra Aktiebolag v. Andrx Pharmaceuticals, Inc.*, 208 F.R.D. 92, 103 (S.D.N.Y. 2002) (emphasis added; internal quotation omitted).[7]

Defendant's assertions of privilege over entire email strings -- including those that contain individual non-privileged emails such as emails to third parties -- are likewise unavailing.  That Defendant withheld these communications entirely, rather than redacting the discrete privileged portions of them, ignores the well-established rule that attorney-client privilege "protects communications rather than information [and] . . . does not impede disclosure of information except to the extent that that disclosure would reveal confidential communications." *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037 (2d Cir. 1984).[8]  Defendant must produce all non-privileged documents that it is withholding because the document is attached to a privileged communication.

---

[7] *See S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145-46 (S.D.N.Y. 2004) (ordering production of attachments); *P & B Marina, L.P. v. Logrande*, 136 F.R.D. 50, 56 (E.D.N.Y. 1991) *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992) ("Merely attaching . . . documents to attorney-client communications does not constitute a basis for assigning the privilege.  To permit this result would abrogate the well-established rule that only the communication, not the underlying facts, is privileged.").

[8] Where it is possible to distill legal advice from an otherwise non-privileged document, the document should be produced in redacted form.  *See, e.g., Renner v. Chase Manhattan Bank*, No. 98-926, 2001 WL 1356192 at *1 (S.D.N.Y. 2001); ("If production of such documents will necessarily reveal client confidences, then redactions will be ordered to protect the privileged materials while allowing discovery of the non-privileged material") (internal quotations omitted). Courts regularly direct withholding parties to provide partial production of documents that contain a mix of both business and legal content -- redacting portions that are properly privileged but producing those sections "not reflecting legal advice."  *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-8333, 2015 WL 1424009, at *12 (S.D.N.Y. Mar. 27, 2015) *motion for relief from judgment denied*, 2015 WL 2182674 (S.D.N.Y. May 7, 2015); *see also, e.g., Complex Sys., Inc. v. ABN AMRO Bank N.V.*, 279 F.R.D. 140, 150-51 (S.D.N.Y. 2011) ("The first sentence of the [forwarded] email reflects legal advice and is privileged.  The second sentence does not reflect any legal advice and must be produced.").

## IV.   **Defendant Must Produce Clean Copies Of The Documents It Improperly Redacted**

Defendant has produced numerous documents that have pertinent, non-privileged information redacted.[9]  The Parties have entered into a protective order in this case to ensure that any sensitive business and personal information remains confidential and is used only in relation to this litigation.  Dkt. No. 40.  However Defendant has produced multiple documents in heavily redacted form, appearing to redact non-privileged information.  Reflecting that Defendant is not asserting a privilege, many of the documents Defendant redacted do not appear on Defendant's privilege log.  ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ Such redactions are improper, as are certain of Defendant's overbroad redactions based on privilege.

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██ Defendant has no grounds to claim that this information is privileged, and it should be ordered to immediately produced unredacted copies of all such documents.  *See, e.g., Chevron Corp. v. Salazaar*, 2011 WL 3880896 at *1 (S.D.N.Y. Sept. 1, 2011) (ordering partial production of documents, including unredacted copies of documents that are not privileged).

---

[9] Plaintiffs have repeatedly raised the issue of improper redactions with Defendant.  *See* Sep. 19 Letter at 2.  Plaintiffs note, however, that at this time the parties have not yet conferred on these issues on a document-by-document basis.  As such, it may be possible to narrow this issue through the conferral process.  Plaintiffs nonetheless raise it here to preserve the issue and avoid further delay.

 Plaintiffs do not believe that there is any colorable justification for PJI's decision to redact this, and other, information.

Indeed, a party cannot redact due to concerns about confidentiality or relevance when a protective order is in place.  *See In re State Street Bank and Trust Co. Fixed Income Funds Investment Litigation*, No. 08-0333, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (" [A] <u>stipulated protective order makes it unnecessary to redact any portion of a document on the ground that the portion is non-responsive and irrelevant</u>.") (emphasis in original).[10]  PJI should be ordered to produce clean copies of all documents that it redacted on grounds other than privilege.

Additionally, PJI's redactions for privilege are also overbroad. ▮▮▮▮▮

---

[10] *See also, e.g.*, *In re Penthouse Executive Club Compensation Litigation*, No. 10-1145, 2012 WL 1511772, at *1 (S.D.N.Y. April 30, 2012) (finding that "the production of unredacted spreadsheets is neither unduly burdensome nor unreasonably duplicative, and that any concerns about the sensitivity of the information are sufficiently addressed by the Protective Order," and ordering unredacted production of the disputed spreadsheets in their native format); *Procter & Gamble Co. v. Be Well Mktg., Inc.*, No. 12-392, 2013 WL 152801, at *3 (M.D. Pa. Jan. 15, 2013) (compelling production of unredacted documents containing trade secrets because "[t]he protective order would negate any potential for harm resulting from disclosure"); *Bartholomew*, 278 F.R.D. at 451–52 (compelling production of unredacted documents where redactions were "based solely on relevance" and the protective order in place would sufficiently protect any confidential information); *Evon v. Law Offices of Sidney Mickell*, No. 090760, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) (ordering unredacted production because "protective orders are available to shield irrelevant, but important-to-keep-confidential information").

██████████████████████████████████████   These are obviously

key pieces of fact data relevant to Plaintiffs' under-reimbursement claims, for which Defendant

has no basis to assert privilege -- indeed the privilege log entry fails to even identify any attorney

by name, and claims that these pieces of factual data somehow constitute "legal advice."  *See,

e.g.*, *Gucci America, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 70 (S.D.N.Y. 2010) ("It is well-settled

that "[t]he privilege only protects disclosure of communications; it does not protect disclosure of

the underlying facts by those who communicated with the attorney.") (quoting *Upjohn*, 449 U.S.

at 396; *In re Six Grand Jury Witnesses*, 979 F.2d 939, 944 (2d Cir.1992)).  Plaintiffs respectfully

submit that Defendant should be ordered to produce clean copies of all documents it has

improperly redacted.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendant

to immediately produce all non-privileged documents responsive to Plaintiffs' Requests for

Production of Documents, including all predominantly business-related Motus documents, all

email attachments that are not independently privileged, all portions of email strings that are not

independently privileged, and unredacted versions of any such documents where appropriate.


Dated: July 28, 2017                                    Respectfully submitted,

                                        By:      */s/ Jeremiah Frei-Pearson*
                                                 Jeremiah Frei-Pearson
                                                 D. Greg Blankinship
                                                 Antonino B. Roman
                                                 **FINKELSTEIN, BLANKINSHIP,**
                                                 **FREI-PEARSON & GARBER, LLP**
                                                 445 Hamilton Avenue
                                                 Suite 605
                                                 White Plains, New York 10601
                                                 Tel: (914) 298-3281
                                                 jfrei-pearson@fbfglaw.com
                                                 gblankinship@fbfglaw.com
                                                 aroman@fbfglaw.com

**STEPHAN ZOURAS, LLP**

David J. Cohen
604 Spruce Street
Philadelphia, PA 19106
Tel: (215) 873-4836
dcohen@stephanzouras.com
*Pro Hac Vice*

James B. Zouras
Ryan F. Stephan
Andrew Ficzko
Catherine T. Mitchell
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601
312-233-1550
312-233-1560 f
jzouras@stephanzouras.com
rstephan@stephanzouras.com
aficzko@stephanzouras.com
cmitchell@stephanzouras.com
*Pro Hac Vice*

*Attorneys for Plaintiffs
and the Putative Classes*