UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

WILLIAM DURLING, CHRIS BELLASPICA,  :
TOM WOLFF, MICHAEL MORRIS, and     :
RICHARD SOBOL, for themselves and all others :
similarly situated,                :

                        Plaintiff,  :

       - against -       :

PAPA JOHN'S INTERNATIONAL, INC.,   :

                     Defendant.  :

--------------------------------------------------------- X

Case No. 7:16-CV-03592

Class/Collective Action

# DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Dated: New York, New York
       October 18, 2017

Gerald L. Maatman Jr.
Gina R. Merrill
Brendan Sweeney
Matthew J. Gagnon
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

*Attorneys for Defendant*
*Papa John's International, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND .................................................................... 1

    I.    Motus Is Not Involved In The Per Delivery Reimbursement Program At Issue in This Case ............................................................ 1

    II.    PJI's Legal Department Retained Motus To Assist It In Providing Legal Advice To The Company In Connection With Litigation .................... 2

    III.    Documents Related To Motus Are Not Relevant To This Case ............ 4

    IV.    Plaintiffs' Motion Is Based On Inaccurate Assumptions And Mischaracterized Documents ...................................................... 5

ARGUMENT ....................................................................................... 7

    I.    Documents Related To Motus Are Protected From Disclosure Under The Attorney Work Product Doctrine And The Attorney-Client Privilege ........ 7

        A.    The Work Product Doctrine ..................................................... 7

        B.    The Attorney-Client Privilege ................................................ 11

    II.    PJI Properly Withheld Privileged Email Strings and Privileged Emails That Include Attachments ..................................................... 14

    III.    PJI Redacted Documents For Appropriate Reasons ........................... 16

CONCLUSION ..................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Am. Civil Liberties Union v. United States Dep't of Justice*,
  210 F. Supp. 3d 467 (S.D.N.Y. 2016)..............................................................10, 11

*Astra Aktiebolag v. Andrx Pharmas., Inc.*,
  208 F.R.D. 92 (S.D.N.Y. 2002) ..........................................................................16

*Bruce v. Christian*,
  113 F.R.D. 554 (S.D.N.Y. 1986) ........................................................................10

*CAC Atl. LLC v. Hartford Fire Ins. Co.*,
  No. 16CIV5454GHWJCF, 2017 WL 448957 (S.D.N.Y. Jan. 19, 2017)................................12

*In re Copper Mkt. Antitrust Litig.*,
  200 F.R.D. 213 (S.D.N.Y. 2001) ........................................................................12

*ECDC Envtl. v. New York Marine & Gen. Ins. Co.*,
  No. 96-CV-6033 (BSJ) (HBP), 1998 WL 614478 (S.D.N.Y. June 4, 1998)..........................7

*F.T.C. v. Grolier Inc.*,
  462 U.S. 19 (1983)...........................................................................................10

*Fustok v. Conticommodity Servs., Inc.*,
  106 F.R.D. 590 (S.D.N.Y. 1985) ........................................................................10

*Garrett v. Metro. Life Ins. Co.*,
  No. 95 CIV. 2406 (PKL), 1996 WL 325725 (S.D.N.Y. June 12, 1996), *report
  and recommendation adopted,* No. 95 CIV. 2406 (PKL), 1996 WL 563342
  (S.D.N.Y. Oct. 3, 1996) ......................................................................................8

*Gen. Elec. Co. v. United States*,
  No. 3:14-CV-00190 (JAM), 2015 WL 5443479 (D. Conn. Sept. 15, 2015) ....................14, 15

*In re Grand Jury Subpoenas Dated March 24, 2003*,
  265 F. Supp. 2d 321 (S.D.N.Y. 2003)...................................................................11

*Marsh v. Safir*,
  No. 99CIV.8605JGKMHD, 2000 WL 460580 (S.D.N.Y. Apr. 20, 2000) ............................11

*Montesa v. Schwartz*,
  12 Civ. 6057, 2016 WL 3476431 (S.D.N.Y. June 20, 2016)...................................12

ii

*Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*,
  175 F.R.D. 431 (W.D.N.Y. 1997) ........................................................................9

*Schaeffler v. United States*,
  806 F.3d 34 (2d Cir. 2015) ...............................................................................11

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*,
  No. 01 CIV. 3016 (AGS), 2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002) ...........12

*United States v. Ackert*,
  169 F.3d 136 (2d Cir. 1999) ..............................................................................12

*United States v. Adlman*,
  134 F.3d 1194 (2d Cir. 1998) ...................................................................9, 10, 11

*United States v. Cunningham*,
  672 F.2d 1064 (2d Cir. 1982) ............................................................................15

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ..............................................................................11

*United States v. Mejia*,
  655 F.3d 126 (2d Cir. 2011) ..............................................................................11

**Other Authorities**

Fed. R. Civ. P. 26(b)(3)(A) ........................................................................................7

Rule 26(b)(3) ........................................................................................................10, 11

iii

## PRELIMINARY STATEMENT

Plaintiffs' Motion is based entirely on inaccurate assumptions and mischaracterizations of documents.  This Court should deny the Motion.

As discussed below and in the declarations submitted with this Opposition, ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████ Accordingly, the documents at issue in this Motion are protected from disclosure under the Attorney Work Product Doctrine and the Attorney-Client Privilege.[1]

## FACTUAL BACKGROUND

**I.  Motus Is Not Involved In The Per Delivery Reimbursement Program At Issue in This Case**

███████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████

---

[1] Plaintiffs devote a significant portion of their Motion to questioning the adequacy of PJI's mileage reimbursement practices and comparing the facts of this case to the facts of the *Perrin* case.  This Motion is not the proper venue to try the merits of Plaintiffs' claims.  PJI will limit its Opposition to the privilege issues on which the Court authorized briefing.

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██ ▪██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████

## II. PJI's Legal Department Retained Motus To Assist It In Providing Legal Advice To The Company In Connection With Litigation

On August 19, 2009, PJI was sued in a nationwide class action captioned *Perrin v. Papa John's Int'l, Inc.* (the "Perrin Litigation"). Declaration of Caroline Oyler (Oct. 18, 2017) ("Oyler Dec.") at ¶ 5. The Plaintiffs in the Perrin Litigation claimed that PJI failed to properly reimburse delivery drivers for vehicle related expenses resulting in violation of minimum wage laws. *Id.* Motus was retained by PJI's counsel in the Perrin Litigation, Ogletree Deakins, to act as an expert. *Id.* ¶ 6; Declaration of Rodney Harrison (Oct. 18, 2017) ("Harrison Dec.") ¶ 5 and attachment 1). In the Summer of 2013, the New York Attorney General ("New York AG") subpoenaed several Papa John's franchisees. Oyler Dec. ¶ 7. In September 2013, the New York AG opened an investigation regarding PJI's involvement with franchisee wages and reimbursement of delivery driver's vehicle related expenses. *Id.* In January 2016, the court granted final settlement approval in the Perrin Litigation. *Id.* ¶ 8. The New York AG investigation remains open. *Id.* ¶ 7.

---

[2] ████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
████████████████████████████

3

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

█████████████

### III.    Documents Related To Motus Are Not Relevant To This Case

Plaintiffs in this litigation have defined the putative class and collective action to include "all delivery drivers Papa John's reimbursed on a per-delivery basis." (ECF No. 161). PJI has *not* used information provided by Motus for the per delivery reimbursement program that is at issue in this case, ██████████████████████████████

████████████████████████████████████████████████

███████████████

███████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████

41719431v.7

**IV.    Plaintiffs' Motion Is Based On Inaccurate Assumptions And Mischaracterized Documents**

The key factual premises underlying Plaintiffs' Motion are simply incorrect.  Plaintiffs claim that communications and data involving Motus are "the same types of responsive documents PJI exchanged with another vendor, Runzheimer International, Inc." (ECF No. 243 at 1).  ███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████

█████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████

Plaintiffs also base their motion on a May 14, 2016 email exchange between PJI executive Keeta Fox and a number of other PJI employees.  (Exhibit 3 to Frei-Pearson Decl. (the "Fox E-mail").  ██████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

41719431v.7

41719431v.7

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

**ARGUMENT**

**I.      Documents Related To Motus Are Protected From Disclosure Under The Attorney Work Product Doctrine And The Attorney-Client Privilege**

**A.      The Work Product Doctrine**

The work product doctrine shields from disclosure materials prepared "in anticipation of litigation or for trial by or for another party or its representative."  Fed. R. Civ. P. 26(b)(3)(A). Consultants can be a part of the creation of protected attorney work product.  *ECDC Envtl. v. New York Marine & Gen. Ins. Co.*, No. 96-CV-6033 (BSJ) (HBP), 1998 WL 614478, at *15 (S.D.N.Y. June 4, 1998) ("Beyond applying to documents prepared by attorneys, the work product privilege applies also to documents prepared by a 'party' and 'representatives' of that party, including consultants . . . and agents.").

The documents at issue in this Motion fall squarely within the Work Product Doctrine.

██████████████████████████████████████████████

██████████████████████████████████████████████

7

████████████████████████  Indeed, Plaintiffs' Amended Class/Collective Action Complaint highlights the litigation that PJI was facing at this time.  (ECF No. 35 at ¶ 35). "Regulatory investigations by outside agencies present more than a mere possibility of future litigation, and provide reasonable grounds for anticipating litigation." *Garrett v. Metro. Life Ins. Co.,* No. 95 CIV. 2406 (PKL), 1996 WL 325725, at *3 (S.D.N.Y. June 12, 1996), *report and recommendation adopted,* No. 95 CIV. 2406 (PKL), 1996 WL 563342 (S.D.N.Y. Oct. 3, 1996) (citing *Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1261 (3d Cir. 1993) (OSHA inquiry sufficient to anticipate litigation so that privilege protected defendant's consultant's report); *Martin v. Monfort, Inc.*, 150 F.R.D. 172, 173 (D. Colo. 1993) (citations omitted) (Department of Labor investigation provides reasonable grounds to anticipate litigation so that defendant's internal studies were protected)).

████████████████████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████████

██████████████████████████████████

█████████████████████

Plaintiffs' argument to the contrary is based on inaccurate facts and a misreading of the law.  Plaintiffs contend, with absolutely no support: "The reports that Motus created for PJI, like their counterparts from Runzheimer, primarily inform PJI's business decisions, not its litigation strategies."  (ECF No. 243 at 16).  ███████████████████

██████████████████████████████████

██████████████████████████████████

8

████████████████████████████████ Plaintiffs also argue that "the Motus documents would have been created in essentially similar form irrespective of any litigation." (ECF No. 243 at 19). ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Plaintiffs' argument that they have a "substantial need" for the Motus documents is also belied by the facts. ████████████████████████████

███████████████████████████████████████████████

██

Further, the work product doctrine is not limited to analysis of "litigation strategies." Plaintiffs argument is based on a test that was rejected by the Second Circuit. Plaintiffs argue that the Motus documents are "'protected from discovery 'only where the material is prepared <u>exclusively</u> and in specific response to <u>imminent</u> litigation.'" (ECF No. 243 at 17 (citing *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 435 (W.D.N.Y. 1997) (emphasis in original).) Plaintiffs' position and the language in *Occidental Chem. Corp.* cannot be reconciled with later Second Circuit authority, which rejects such a narrow application of the work-product doctrine.

In *United States v. Adlman*, the Second Circuit held that "a requirement that documents be produced primarily or exclusively to assist in litigation in order to be protected is at odds with the text and the policies of the Rule [26(b)(3)]." 134 F.3d 1194, 1198 (2d Cir. 1998). The Second Circuit explained that framing the inquiry, as Plaintiffs do, "threatens to deny protection to documents that implicate the key concerns underlying the work-product doctrine." *Id.*

9

Under *Adlman*, the work-product doctrine is applicable even if Plaintiffs' unsupported mischaracterization of the Motus documents were true.  Even if the Motus documents were "predominately business" in nature, the work-product doctrine would still protect against their disclosure. This is because according to *Adlman*, whether "a document's purpose is business-related" is "irrelevant to the question of whether it should be protected under Rule 26(b)(3)." *Id.* at 1200.  The court in *Adlman* held that "work-product protection should not be denied to a document that analyzes expected litigation merely because it is prepared to assist in a business decision." *Id.* at 1199.  Plaintiffs are simply incorrect that the Motus documents had to have been created "exclusively" for litigation to warrant protection.

Plaintiffs are similarly incorrect that work-product protection is limited to documents that are prepared in anticipation of a "specific litigation." Plaintiffs argue that the work product doctrine is not applicable because the Motus documents were "clearly not produced in anticipation of this, or any other specific litigation."  (ECF No. 243 at 18.)  Such a requirement, however, does not exist.[3]  *See Am. Civil Liberties Union v. United States Dep't of Justice*, 210 F. Supp. 3d 467, 482 (S.D.N.Y. 2016) ("the Court does not read a 'specific case' requirement in Second Circuit case law."); *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 25 (1983) ("[T]he Rule protects materials prepared for any litigation."); *Bruce v. Christian*, 113 F.R.D. 554, 561 (S.D.N.Y. 1986) (a document does not have to be created in anticipation of the "present" litigation).  Further, "there is no requirement that the anticipated litigation be imminent rather than merely a potential

---

[3] Plaintiffs similarly cite *Fustok v. Conticommodity Servs., Inc.*, 106 F.R.D. 590, 592 (S.D.N.Y. 1985) for the proposition that specific claims must have arisen before the documents were created in order to protect those documents under the work-product doctrine. (ECF No. 243 at 18). However, at least one district court has disagreed with *Fustok* concerning this requirement. *See Am. Civil Liberties Union,* 210 F. Supp. 3d at 482. More importantly, *Fustok* is incompatible with, and was decided before, *Adlman*, which explained that "the non-occurrence of events giving rise to litigation prior to preparation of the documents . . . does not necessarily preclude application of work-product privilege." *Adlman*, 134 F.3d at 1196.

10

future prospect." *Marsh v. Safir*, No. 99CIV.8605JGKMHD, 2000 WL 460580, at \*9 (S.D.N.Y. Apr. 20, 2000) (citing *Adlman*, 134 F.3d at 1198.)  "If the preparation of the document is attributable to concern about the possibility of such litigation in the future, Rule 26(b)(3) is triggered." *Id.* (citation omitted).

Contrary to Plaintiffs' contentions, "*Adlman* is the governing precedent" and it "established a test to determine whether documents should be deemed prepared 'in anticipation of litigation' and therefore subject to work-product protection." *Schaeffler v. United States*, 806 F.3d 34, 43 (2d Cir. 2015).  This test does not ask whether a specific litigation or specific claim has arisen.  *See Am. Civil Liberties Union,* 210 F. Supp. 3d at 482.  Instead, a document will be protected if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Adlman*, 134 F.3d at 1202. Under this framework, the Motus documents were properly withheld as attorney work product.

### B.    The Attorney-Client Privilege

The attorney-client privilege protects "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

It is well accepted that the presence of a third party consultant does not necessarily destroy the attorney-client privilege.  *United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961); *In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003) ("it is

common ground that the privilege extends to communications involving consultants used by lawyers to assist in performing tasks that go beyond advising a client as to the law"); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 218–19 (S.D.N.Y. 2001) (finding no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses information needed by attorneys in rendering legal advice (citing *Upjohn Co. v. United States*, 449 U.S. at 390 (1981))).  Courts in the Second Circuit have repeatedly found such communications to be privileged in two situations.  First, a third party can participate in attorney-client communications where the purpose of the third party is to "improve the comprehension of the communications between attorney and client."  *United States v. Ackert*, 169 F.3d 136, 139-40 (2d Cir. 1999); *Montesa v. Schwartz*, 12 Civ. 6057, 2016 WL 3476431, at *5-6 (S.D.N.Y. June 20, 2016).  Second, a third party consultant may participate in privileged communications where the consultant is the "functional equivalent" of a corporate employee.  *CAC Atl. LLC v. Hartford Fire Ins. Co.*, No. 16CIV5454GHWJCF, 2017 WL 448957, at *1 (S.D.N.Y. Jan. 19, 2017) (finding that communications between a consultant and counsel for defendant "might be privileged if [the consultant] were the functional equivalent of an employee" of defendant); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV. 3016 (AGS), 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002) ("Since the employees in issue were the functional equivalent of employees, disclosure of otherwise privileged documents to them does not operate as a waiver of the attorney-client privilege.").

Communications with Motus are privileged under either line of cases.  █████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████ (ECF No. 243 at 14). ██████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████ *Id.* at 14-15. ██████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████

Plaintiffs' assertion that PJI has "admitted to using the Motus data to roll out a new reimbursement program" (ECF No. 243 at 15) is also incorrect.  ███████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████  In their pending Renewed Motion for Conditional Certification, Plaintiffs very clearly state that they seek to bring a collective action on behalf of "all delivery drivers Papa John's reimbursed on a per-delivery basis."  (ECF No. 161).  ███████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████████

## II.    PJI Properly Withheld Privileged Email Strings and Privileged Emails That Include Attachments

PJI's handling of email strings and emails that include attachments is entirely appropriate.  PJI only withheld emails if they are privileged.  If a privileged email includes an attachment, the attachment is part of the email communication and was accordingly withheld.

PJI's position is entirely consistent with the current state of the law.  For example, the court in *Gen. Elec. Co. v. United States*, No. 3:14-CV-00190 (JAM), 2015 WL 5443479 (D. Conn. Sept. 15, 2015) rejected the precise argument that Plaintiffs are making.  In that case, the Government argued that GE had improperly asserted privilege for attachments to "otherwise privileged email communications."  *Id.* at *1.  The court rejected the Government's argument

---

[4] ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

because it "runs contrary to well-established law that information communicated to an attorney in connection with obtaining or rendering legal advice is properly subject to a claim of privilege, even if the information standing alone would not otherwise be subject to a claim of privilege." *Id.* (citing *Upjohn*, 449 U.S. at 390 (noting that "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").)  The court also squarely rejected the argument that "only confidential or secret facts that may have been communicated in an attachment to an otherwise privileged communication may be subject to a claim of privilege." *Id.* at *2.  Relying on *United States v. Cunningham*, 672 F.2d 1064, 1073, n.8 (2d Cir. 1982), the court held:

> [A]ny public document that a client sends a lawyer might be subject to a claim of privilege if disclosure would reveal that it was communicated in confidence to an attorney in connection with the seeking or receipt of legal advice. Imagine, for example, that a company executive sent the company's counsel a news article about alleged bid-rigging activities within the company's industry; if the executive did so for the confidential purpose of seeking advice about the company's legal obligations or liability exposure, the fact that the news article is a quintessentially public document would not defeat a claim of privilege. Accordingly, the fact that numerous and concededly privileged GE email communications included attachments (such as draft board meeting minutes, presentations, and spreadsheets) evincing facts that were known to third parties who were not part of the privileged communications does not render these documents free from a valid claim of privilege in the context of their inclusion within otherwise privileged communications.

*Id.*

Plaintiffs argue: "Defendant is likely able to justify withholding vendor documents that are not independently privileged merely because Defendant's internal counsel strategically attached the documents to communications that are privileged."  (ECF No. 243 at 21).  Again, Plaintiffs' argument is based entirely on unsupported speculation.  Plaintiffs cannot point to any evidence that PJI's in-house counsel engaged in such conduct.

15

Plaintiffs cite *Astra Aktiebolag v. Andrx Pharmas., Inc.*, 208 F.R.D. 92 (S.D.N.Y. 2002), but this case does not support their argument.  After reciting general principles, the court in that case found that most of the documents at issue were privileged or work product.   The court concluded a number of documents were not privileged because the party claiming privilege had not provided translated versions of the documents that would allow the court to evaluate the claims.  Accordingly, this case is limited to its facts.

PJI reviewed the most inclusive e-mail strings that it collected and claimed privilege if the string included confidential communications with an attorney.  If a string existed in a non-privileged form (i.e., before an attorney was involved), it was produced (580 documents that exist within email threads are currently recorded on PJI's privilege log were produced).  The review and redaction suggested by Plaintiffs would be unduly burdensome as it would require PJI to review and potentially redact 1,630 individual email messages currently included in 1,064 logged email threads.

## III.    PJI Redacted Documents For Appropriate Reasons

Plaintiffs argue that "Defendant must produce clean copies of the documents it improperly redacted" but then acknowledge that "the parties have not yet conferred on these issues on a document-by-document basis."  (ECF No. 243 at 23).  As stated in PJI's September 21, 2017 letter responding to Plaintiffs' September 19 letter brief, if PJI redacted information and did not include that document on its privilege log PJI only would have done so to redact irrelevant personal information of non-parties.  PJI is prepared to explain these redactions in a conferral process.  But, clearly, Plaintiffs acknowledge that this issue is not ripe for decision by the Court.

41719431v.7

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that Plaintiffs' Motion to Compel Production of Documents be denied.

**Dated:** **October 18, 2017**

SEYFARTH SHAW LLP
*Attorneys for Defendant*
*Papa John's International, Inc.*

By: ___/s/Gerald L. Maatman, Jr._____
Gerald L. Maatman, Jr.
Gina R. Merrill
Brendan Sweeney
Matthew J. Gagnon
620 Eighth Avenue
New York, NY 10018-1405
Telephone:  (212) 218-5500
Facsimile:  (212) 218-5526

17

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2017, I electronically filed the foregoing

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS, DECLARATION OF GERALD L. MAATMAN, JR., ESQ., WITH EXHIBITS 1-3** with the Clerk of the Court using CM/ECF, which will send electronic notification of such filing to the following counsel of record:

Jeremiah Frei-Pearson
D. Greg Blankinship
FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP
445 Hamilton Avenue, Suite 605
White Plains, NY  10601
jfrei-pearson@FBFGLaw.com

David J. Cohen
STEPHAN ZOURAS, LLP
604 Spruce Street
Philadelphia, PA  19106
dcohen@stephanzouras.com

James B. Zouras
Ryan F. Stephan
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL  60601
jzouras@stephanzouras.com
rstephan@stephanzouras.com

*/s/Gerald L. Maatman, Jr.*
Gerald L. Maatman Jr.