```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------------x

 3  WILLIAM DURLING, CHRIS
    BELLASPICA, TOM WOLFF, MICHAEL
 4  MORRIS and RICHARD SOBOL, for
    themselves and all others
 5  similarly situated ,

 6                  Plaintiffs,

 7            -against-                         16 Civ. 3592

 8  PAPA JOHN'S INTERNATIONAL, INC.,

 9                  Defendant.

10  ------------------------------------x

11
                                        United States Courthouse
12                                      White Plains, New York

13                                      March 12, 2018

14
    B e f o r e:
15                      HON. JUDITH C. McCARTHY,
                                  US Magistrate Judge
16

17  A P P E A R A N C E S:

18  JEREMIAH L. FREI-PEARSON
    ANDREW WHITE
19          Attorneys for Plaintiffs

20
    BRENDAN M. SWEENEY
21          Attorneys for Defendant

22

23

24

25

              Angela O'Donnell, RPR, 914-390-4025
```

| | |
|---|---|
| 1 | P R O C E E D I N G S |
| 2 | THE CLERK: In the matter of William Durling versus |
| 3 | Papa John's International. |
| 4 | Counsel, please state your appearances for the |
| 5 | record. |
| 6 | MR. FREI-PEARSON: Jeremiah Frei-Pearson for |
| 7 | plaintiffs. |
| 8 | MR. WHITE: Andrew White also for plaintiffs. |
| 9 | MR. SWEENEY: Brendan Sweeney, Seyfarth Shaw for |
| 10 | defendant. |
| 11 | THE COURT: Good afternoon, counsel. I hope everyone |
| 12 | is well. |
| 13 | So where are we at with discovery? But before I do |
| 14 | that, let me just deal with a kind of a housekeeping matter. |
| 15 | I see that plaintiffs filed an amended motion for |
| 16 | conditional certification. |
| 17 | MR. FREI-PEARSON: Yes, your Honor. |
| 18 | THE COURT: Okay. I notice that it says that it's a |
| 19 | redacted version on ECF. I don't think it's redacted. I think |
| 20 | there are highlighted portions which might be what you want to |
| 21 | redact. |
| 22 | MR. WHITE: We'll certainly look into that, your |
| 23 | Honor. |
| 24 | THE COURT: But I'm not sure it's redacted. |
| 25 | MR. FREI-PEARSON: Your Honor, thank you much. Thank |

1    you very much for letting us know that.  We will address it as
2    soon as we're out of this courtroom.
3           THE COURT:  Okay.
4           MR. FREI-PEARSON:  Counsel, I apologize.  I wasn't
5    aware that that happened.
6           THE COURT:  You just filed it; right?
7           MR. FREI-PEARSON:  We just filed it, like 30 minutes
8    ago.  My suspicion is we highlighted the documents, highlighted
9    the portions to be redacted and there's a miscommunication
10   amongst our staff, which I take full responsibility for and
11   will get it fixed immediately.
12          THE COURT:  I just thought you might like to know.
13          So that's the first thing I wanted to let you know
14   and then talk to you about where discovery is at and what are
15   the next steps and what are we doing.  I think we have all fact
16   discovery that's scheduled to be done by the end of April.
17          Does the decision on the motion and then I had -- I
18   have not read her decision.  I think she did it on the bench
19   and I don't know if there's a transcript.  So I have not seen
20   that yet.
21          So tell me what's going on.
22          MR. FREI-PEARSON:  So with respect to -- would your
23   Honor prefer I talk about the decision first?
24          THE COURT:  Whatever you want.
25          MR. FREI-PEARSON:  So with respect to discovery,

                   Angela O'Donnell, RPR, 914-390-4025

1   we're working collegially to schedule depositions and we're on
2   pace to try to get things done by the deadline.  Defendants
3   gave us a 54-page privilege log on Friday, which we're in the
4   process of going through and we're also finishing reviewing the
5   documents.  And of course the data still being outstanding.  I
6   actually think I'm pleased to report that at least right now we
7   don't have any disputes so that we'll be meeting and conferring
8   over the privilege log in the coming weeks or anticipate we
9   will be.
10              In terms of the decision, we thought that we followed
11  Judge Seibel's roadmap, but we were incorrect.  So we're moving
12  for a conditional certification again, as to people who worked
13  at the corporate stores and we'll be filing an amended
14  complaint.  Counsel's complained that our amended complaint has
15  been forthcoming for a long time.  We had an amended complaint
16  that we would have dropped the day after the conditional
17  certification decision, had it gone the way that we hoped it
18  went.  We're in the process of revising the amended complaint,
19  which involves talking to clients in many states and working
20  things out, and we expect we'll have that on file sometime next
21  week.
22              We also anticipate, without committing that we will
23  file additional conditional certification motions on behalf of
24  subcollectives.  So that's just a flavor for where we believe
25  the case will be going.

1           But in the meantime, we're working collegially on
2    discovery, and I don't have any disputes to report.
3           THE COURT:  Okay.
4           Mr. Sweeney, what are your thoughts on all of that
5    and more?
6           MR. SWEENEY:  Yes, thank you, your Honor.
7           I don't know what the amended complaint is going to
8    look like.  I don't know if the theory that my client is
9    responsible for the stores that are owned by franchisees is
10   still alive in the case.  Judge Seibel's decision certainly did
11   not reach the merits of that question, but certainly, I think,
12   saw some problems with that theory, which we certainly see some
13   problems with that theory.
14          But I think the next big step in this case is the
15   question of where the case should be.  We had filed a motion to
16   transfer the case to Kentucky very early in the case, which
17   Judge Seibel denied.  But in both of her decisions on
18   conditional cert, she said that, if this case is about
19   corporate stores, it may be more appropriate for it to be
20   transferred to Kentucky.
21          I only got notice that this new conditional cert was
22   filed as I was driving up here.  So I'm not saying that we want
23   to renew the motion to transfer, but in the very near future we
24   want to evaluate that and Judge Seibel had told us at the end
25   of her decision that it wasn't necessary to file anymore

1   premotion letter on that.  If we wanted to renew the motion to
2   transfer, we should just work out a briefing schedule.  So
3   we'll make that decision --
4              THE COURT:  Had you fully briefed that or had you
5   just written a letter?
6              MR. SWEENEY:  No, we had fully briefed it.
7              THE COURT:  Okay.
8              MR. SWEENEY:  Actually, it was before I was involved
9   in the case, but I'm pretty certain we fully briefed it.
10             MR. FREI-PEARSON:  We fully briefed it and Judge
11  Seibel rendered a decision without prejudice to their renewing,
12  which is what counsel's (inaudible)?
13             THE COURT:  Okay.
14             MR. SWEENEY:  Right.  So I think the question of
15  whether the case should be in Kentucky or not is a very
16  significant one.  I think it's appropriate that we hold a fact
17  discovery deadline where it is.  As I made the point last time
18  we were here that my client has been subject to discovery in
19  this case for a long time and I think it needs to reach an end,
20  at least on fact discovery.
21             THE COURT:  And that's April 30th; right?
22             MR. SWEENEY:  Right.  I don't see why we can't reach
23  that if conditional cert were granted here or in Kentucky, or
24  if now there's -- I don't know what the motions for
25  subcollectives refers to.  We may need to take discovery of

1   opt-ins, but I think there can be a period for opt-in discovery
2   without necessarily opening fact discovery up in general.  So I
3   think if we're going to need that, and I think it depends on
4   whether there ever is a collective or class in this case, I
5   think it shouldn't be wide open discovery.  I think it should
6   be carefully limited considering how long this case has been
7   around and it's where it is because plaintiffs decided to
8   pursue this novel theory and, obviously, it's their right to do
9   so, but I don't think my client should be subject to unlimited
10  discovery for years because of that theory.
11          So there's a lot we don't know, so it's hard to say
12  what's going to be in the amended complaint and what we need to
13  do, but I think we are in agreement that it doesn't make sense
14  to produce data at this stage.  I don't want to speak for
15  counsel.  He may disagree, but I think we're in agreement that
16  data can be produced if a collective is ever certified or a
17  class is ever certified.  But that deadline, I think it's just
18  efficient for everybody not to have that do that right now and
19  I think it's efficient for everybody to push off expert
20  discovery until we see what the case is.
21          So -- but, you know, where it is is, obviously, a big
22  question too.  So we just need a little time to evaluate that
23  now that we have their motion, although I understand there's
24  going to be more motions so --
25              THE COURT:  Looks like from just quickly looking at

1  it it has to deal with conditional certification of drivers in
2  the corporate stores.  Is that -- I didn't read the whole
3  thing.
4           MR. FREI-PEARSON:  That is correct as to the current
5  motion, drivers in the corporate stores, including joint
6  ventures, which includes a joint venture that Papa John's
7  itself transferred to this very venue.  So, yes.
8           THE COURT:  Okay.
9           MR. SWEENEY:  But what we don't know is what the next
10 set of motions is about, if that's still on the franchisee
11 theory, the subcollectives.
12          THE COURT:  The ones he talked about that he hasn't
13 filed that there may be some subcollectives?  Yes.
14          MR. FREI-PEARSON:  If your Honor wants, I'm happy to
15 preview that.
16          THE COURT:  Sure, why not.
17          MR. FREI-PEARSON:  So there was a case certified last
18 week against Domino's on this theory with subcollectives as to
19 each individual franchisee.  What Judge Seibel held in -- and
20 this is all subject to consultation with clients, your Honor,
21 so I'm just giving you a preview of where counsel believes the
22 case is going, but not certain.
23          What Judge Seibel held is that we did not establish
24 an overarching policy at all different franchisees, so our
25 position was there is a Papa John's policy that covers the

1   corporate stores and the franchisees' stores and it's one
2   policy.  She held that wasn't the case, but she also didn't
3   reach the merits on whether or not the individual franchisees
4   were liable.  We believe, especially under the Domino's case
5   which just came out on this very theory, that Papa John's
6   remains liable for the violations, but we have to do it
7   franchisee by franchisee.
8          Respectfully, respectfully wished Judge Seibel had
9   reached a different conclusion, but following her decision, we
10  think that's our path to get there, and so that's where we
11  anticipate taking it, subject to the fact that it's early and
12  we've got to talk with your clients and do all of those things.
13         Just to quickly respond on the idea of defendants
14  being able to take discovery while plaintiffs aren't able to
15  take discovery, I don't see any merit to that.  We're going to
16  work as expeditiously as we possibly can to minimize burden and
17  get discovery done.  But after that, if they choose to depose a
18  bunch of drivers and obtain new information, we believe we have
19  the right to obtain corresponding information and that there
20  shouldn't be some sort of -- defendants can take discovery and
21  we can't take discovery.
22         I'd also point out that the *Perrin* case, which I know
23  your Honor has heard me talk about before, which is a smaller
24  version of the same case we brought, went on for seven years.
25  This has not been seven years.  We're working as diligently as

1   we possibly can.  With your Honor's guidance and your Honor's
2   directive to get it done as quickly as possible, we're aiming
3   to wrap up what we can by April 30th.  But certainly if they
4   start deposing our guys and start taking depositions and
5   getting documentary evidence, we believe that if they uncover
6   something, we have the right to explore that and there
7   shouldn't be just discovery goes one way.  It's not for now,
8   but just to preview my response to counsel's argument.
9           THE COURT:  Mr. Sweeney, you understand any of that?
10  You got your preview.
11          MR. SWEENEY:  I think, yes, thank you for that
12  preview.  It's exciting, preview.
13          I think the point of whether discovery goes one way
14  or the other is we should have an opportunity to address this
15  theory that Papa John's is liable as a joint employer at some
16  point relatively soon in the case. We've been subject to
17  discovery on it for years.  I will tell you my view of the
18  record is the evidence is pretty clear and it's time to get
19  that issue dealt with, rather than a client be, you know, a
20  company being subject to years and years of discovery, changing
21  theories.  It's been two years.  I don't think it really
22  matters that *Perrin* was seven years.  I don't think anybody
23  involved in *Perrin* should be proud of a seven-year case.  I
24  mean, we all have an obligation to get to the real issues and I
25  think that plaintiffs have had ample opportunity to take

1 discovery about how Papa John's runs its franchise system.
2 We're ready to go on that.
3      It doesn't need to be, you know, two more years of
4 discovery on that. I think we're at a point where we want to
5 put those facts in front of the Court and get to a decision
6 point on that.
7      The corporate store case -- by the way, all of this
8 is because of plaintiff's choice to sue one defendant and argue
9 that they're responsible for this whole system, which is not a
10 theory that has been the theory in many cases. So that's their
11 choice, and I commend them for being willing to think about
12 something in a novel way. I just don't agree with them.
13      But they've had a lot of time to do that and now it's
14 time to get to an end on that. So I think my client deserves
15 that.
16      You know, if they bring new theories and new
17 plaintiffs in, and we just have to assess those as they come,
18 but this theory has been around for a while. So I don't think
19 there's a lot of reason to be subject to more and more
20 discovery and we want to get to a point where it's decided. So
21 that's our concern.
22      THE COURT: I appreciate that concern. I appreciate
23 the desire to move it along.
24      I also know that plaintiffs have zealously advocated
25 on behalf of their clients. I think that I'm not going to make

```
 1   any ruling.  You're going to go and object to discovery you
 2   don't think is appropriate, and if you can't come to a
 3   resolution, I will address each issue on hand.
 4              I think we're close to the end of discovery, at least
 5   the corporate issue and the fact issue.  I think -- and I think
 6   you have information about some franchisees.  You may not have
 7   all the franchisees' information.  But you do have a sense of
 8   what's going on.
 9              We'll keep plugging along on parallel tracks with the
10   conditional certification and see how Judge Seibel -- did
11   she -- I assume she didn't require any premotion conference.
12              MR. FREI-PEARSON:  We asked about this at the end of
13   the -- at the hearing yesterday.  Whether or not -- I'm sorry,
14   not yesterday, it all blurs, but last week.
15              THE COURT:  I don't think you were there on Sunday.
16              MR. FREI-PEARSON:  Just in my mind, your Honor.
17              And it was our understanding that she didn't want --
18   that we could just move.
19              THE COURT:  Okay.  So we had had all fact discovery
20   by April 30th and the 150 days from the decision to complete
21   expert discovery and five days after the decision to submit a
22   schedule for expert discovery.
23              I think everybody's in agreement that, if you're
24   going to be moving for class certification again, there's no
25   reason to go for the experts until that's fully resolved and we
```

1  know exactly what's going on.
2      I see nods; is that accurate?
3      MR. FREI-PEARSON:  Yes, your Honor.
4      MR. SWEENEY:  Yes, your Honor.
5      THE COURT:  So I think we continue to do the same
6  ruling, which is five days after final decision to submit the
7  schedule for expert discovery, and that it has to be done 150
8  days from decision to complete.
9      So you have 150 days from the decision to complete
10 the expert discovery.  And I think I already ruled that and I
11 think that remains.  All I'm going to do today is say that that
12 timeframe has not been triggered yet, given the fact that there
13 is a pending amended motion for conditional certification,
14 which seems just on the corporate stores at this point.
15     So but I'm going to reiterate what Mr. Sweeney said.
16 If you continue -- if you kind of pick lots of group to move
17 for class certification and as it relates to the franchisees,
18 and hold Papa John's responsible and you want to do that, we
19 can't have that go on forever.  We need to get to a point where
20 we know what this case is and this case moves forward.
21     So if you are going to be moving for subgroups, I
22 think is how you described them and how they would be properly
23 described, we need to get that done promptly so that we can see
24 this case move forward.  I'm not going to give a deadline at
25 this point, because I think you're still trying to analyze it.

```
 1   But I would say by the next conference that, if that's going to
 2   happen, it should be done.
 3              The question is, when will the next conference be?
 4              When do you intend, Mr. Frei-Pearson, to make the
 5   decision on subgroup class certification?
 6              MR. FREI-PEARSON:  It's hard to say, your Honor.
 7   We'd like to move as quickly as possible on that.  But I don't
 8   think I'm in a position to commit to dates at all.  We've got
 9   to confer with different clients and put that together.  But
10   we're certainly not dragging our heels.  We moved for
11   conditional certification as quickly as we possibly could every
12   single time we've moved.
13              And we'll move forward as expeditiously as we
14   possibly can.
15              THE COURT:  Okay.
16              MR. FREI-PEARSON:  Sitting here today, we've got to
17   get declarations.  There's a lot of stuff that we have to do,
18   you know, we're not ready to pull the trigger right now.
19              THE COURT:  Okay.
20              MR. FREI-PEARSON:  We also have to file an amended
21   complaint that pleads the collectives which we haven't done
22   yet.
23              THE COURT:  When do you plan on doing that?
24              MR. FREI-PEARSON:  As soon as we possibly can.  I
25   think I indicated towards the end of next week.  We have to
```

```
 1   confer with clients and our clients, for example, there's many
 2   of them that we communicate with, and if we have to send them a
 3   draft complaint, we've got to send it to them by regular mail
 4   and talk it through with them on the phone.  So there's moving
 5   parts, but we intend to do that as quickly as we can.
 6              THE COURT:  Should I put a deadline?
 7              MR. FREI-PEARSON:  Respectfully, I don't believe
 8   there's a need to.  We've -- so I'd respectfully request no.
 9   It's in our interest to move it as quickly as possible, right,
10   the statute of limitations for folks in the collectives rolls
11   until we get a decision granting it.  So we want to move as
12   quickly as possible.  So we're going to do it as quickly as we
13   possibly can.
14              The real holdup is you have to communicate with
15   clients across the country and that can be a process.  Our
16   clients aren't the most sophisticated.  They believe
17   passionately in the case, but we have to explain legal
18   theories.  We have to get them to review documents that --
19   while they take time off from their work to do so.  So we'll do
20   it as quickly as we possibly can.  I certainly expect to do
21   it -- our aim is to do it next week.  If it slips a week after
22   that, okay.  So we're going to do as quickly as we can.
23              I don't think there's a need for a hard deadline
24   because it's in our interest to do it.  We're not dragging our
25   heels.
```

```
 1                THE COURT:  Mr. Sweeney.
 2                MR. SWEENEY:  Well, your Honor, there is, just so
 3     we're clear, aside from the expert deadlines, it was a Rule 23
 4     deadline triggered by the last decision, which I understand
 5     that maybe needs to move, but I think it should just be
 6     considered.
 7                But again, that goes to the point of the question of
 8     whether Papa John's is responsible for this very large
 9     potential class that includes employees of franchisees or not.
10     I think that issue would come to a head on Rule 23
11     certification.  I think counsel's mostly referring to 216(b),
12     conditional certification, and a different standard.  But if
13     you can't win on conditional certification, I don't see how you
14     win on class certification.
15                So I think that all -- again, I don't need to repeat
16     myself for you.  I just think it's time to get that issue in
17     front of everybody.  There's still a case aside from that issue
18     of the joint employer, but it's a different case.
19                So I think we want to move it as reasonably quickly
20     as possible subject, again, and I assume -- I think this is
21     probably really Judge Seibel's call -- but I think we may need
22     to build in time for a motion to transfer, but we just need to
23     evaluate that.
24                THE COURT:  Yes.  That is Judge Seibel's call.
25                MR. SWEENEY:  Right.
```

```
 1              THE COURT:  She handled the first one.  She'll handle
 2    that also.
 3              Okay.  I'm not going to -- you know, you are moving
 4    forward; everybody is.  It's just, unfortunately, sometimes the
 5    court slows things down and sometimes plaintiffs don't accept
 6    the court's decision as final and keeps moving on.  So the case
 7    can't have kind of an end date or we don't know exactly what
 8    the parameters of the case looks like right now.
 9              But I think I want to keep you on kind of a tight
10    leash, and rather than give you a deadline, I'll have you come
11    back in four weeks.  And at that time my expectation is going
12    to be that, you know, amended complaint's filed.  You figure
13    out if you're doing cert for any subgroups and this case is
14    really on track to getting done.  And that should give you
15    plenty of time, as long as you work diligently to get it all
16    done.
17              So without any specific deadline, you understand what
18    my intention is.  Okay?
19              Looking at the calendar for March 12th or April 12th,
20    I don't think I'm here that week.
21              THE CLERK:  You are not.
22              THE COURT:  So it would be the week of April 16th.
23              THE CLERK:  We can do the 18th of 11:30.
24              THE COURT:  Did we just give that time away?
25              THE CLERK:  We just gave away 11:00.
                     Angela O'Donnell, RPR, 914-390-4025
```

```
 1              MR. SWEENEY:  I'm sorry, 18th at 11:30.
 2              THE COURT:  Yes.  Does that work for everyone?
 3              MR. FREI-PEARSON:  That works for plaintiffs.
 4              MR. SWEENEY:  Yes, your Honor.
 5              THE COURT:  Okay.
 6         When do you think you'll deal with the motion to move
 7    the case, after you see the complaint or -- and the condition,
 8    the new conditional certs, or are you going to try to do it
 9    before then?
10              MR. SWEENEY:  No, I'm not sure.  I'm not sure because
11    I need to see what's in the motion for conditional
12    certification, which I haven't seen yet, and the amended
13    complaint, I think, is probably logical for everybody to
14    consider it, otherwise, we're going to make a motion and then
15    things sort of change.  So we can all just be efficient about
16    that.
17         So probably after their amended complaint, I think,
18    makes the most sense, as long as it's clear that this issue is
19    still on the table.
20              THE COURT:  Okay.  Definitely raise that before Judge
21    Seibel.
22              MR. SWEENEY:  Okay.  And she --
23              THE COURT:  That will go on her docket.
24              MR. SWEENEY:  Yes.  Okay.  And she had already said
25    she didn't need a premotion letter.
```

Angela O'Donnell, RPR, 914-390-4025

```
1              THE COURT:  She's already ruled on it once, so she'll
2     handle that.
3              Anything else we need to deal with today?  Otherwise,
4     if you do have problems with the privilege log and there are
5     issues with that, please -- should I give you deadlines?  I
6     would like to deal with that at the next conference.
7              MR. FREI-PEARSON:  I think that's reasonable.
8              THE COURT:  And if you can't get it done by then
9     basically write before that conference with what the issues are
10    and ask that the conference get moved, because we could do it
11    all at the next conference.  Okay?
12             MR. FREI-PEARSON:  Certainly, your Honor.
13             MR. SWEENEY:  Sure.
14             THE COURT:  Great.  Hopefully there are no issues and
15    you will have resolved it all.
16             MR. FREI-PEARSON:  We hope so, too.
17             MR. WHITE:  Even though we didn't agree with your
18    decision (inaudible).
19             THE COURT:  I know.
20             MR. WHITE:  I think we'll be okay.
21             THE COURT:  I'm sure you did.
22             So I'm hoping that there are no issues with that;
23    okay?
24             Anything else today?  Otherwise, I will see you on
25    April 18 at 11:30 in person.
```

Angela O'Donnell, RPR, 914-390-4025

1              Thank you very much.
2              MR. FREI-PEARSON:  Thank you, your Honor.
3              (Proceedings concluded)

                Angela O'Donnell, RPR, 914-390-4025