```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   WILLIAM DURLING, for themselves and
     all others similarly situated, et al.,
 4
                  Plaintiffs,
 5

 6        v.                                   16 Civ. 3592(CS)

 7                                             CONFERENCE

 8   PAPA JOHN'S INTERNATIONAL, INC.,

 9                Defendant.

10   ------------------------------x

11
                                             United States Courthouse
12                                           White Plains, N.Y.
                                             March 29, 2017
13

14

15   Before:   THE HONORABLE JUDITH C. McCARTHY,

16                                           Magistrate Judge

17

18
                                APPEARANCES
19
     FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP
20        Attorneys for Plaintiffs
     JEREMIAH LEE FREI-PEARSON
21

22   SEYFARTH, SHAW, LLP
          Attorneys for Defendant
23   GERALD MAATMAN
     BRENDAN SWEENEY
24   GINA MERRILL

25   *Proceeding recorded via digital recording device.
```

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103

1           THE DEPUTY CLERK:  In the matter of William
2  Durling v. Papa John's International.
3           Counsel, please state your appearances for the
4  record.
5           MR. FREI-PEARSON:  Good afternoon, your Honor.
6  Jeremiah Frei-Pearson on behalf of plaintiffs in the putative
7  class.
8           And with me is Andrew C. White, who, as last time,
9  has not yet been admitted, but we would respectfully request
10 that he be permitted to attend.
11          THE COURT:  Yes, he can attend.
12          MR. FREI-PEARSON:  Thank you, your Honor.
13          THE COURT:  Thank you.
14          Mr. White, are you going to be admitted soon?
15          MR. WHITE:  Hopefully.
16          THE COURT:  Good luck with that.
17          Okay, counsel.
18          MR. MAATMAN:  Gerald Maatman, Seyfarth, Shaw, and I'm
19 joined by Brendan Sweeney and Gina Merrill, on behalf of the
20 defendant.
21          THE COURT:  Good afternoon, counsel.
22          Okay.  So this started as a regularly scheduled
23 status conference, but an issue came up.  A discovery dispute
24 issue came up regarding the Perrin documents.  What I would
25 like to do is start with that issue.  I have reviewed the

1    submissions on that.  I would like to give each side some time
2    to make further argument if you would like.
3           Since this is -- I believe it was plaintiffs who
4    originally brought this.  Yes.  Docket number 136.
5           So, Mr. Frei-Pearson, if you would like to add
6    anything to your letter or highlight anything for the Court --
7    unless this issue's been resolved since I received those
8    letters.
9           MR. FREI-PEARSON:  Unfortunately, it is not, your
10   Honor.
11          We first asked for the Perrin documents in June and
12   served document requests as soon as we were able seeking them.
13   Defendants have raised numerous issues justifying the delay,
14   and we respectfully seek a date certain for complete
15   production.
16          You know, the issues just by delay have been the
17   protective order in Perrin, the theory that they would be
18   violating the privacy of plaintiffs in Perrin, so we had to get
19   a stipulation from plaintiff's counsel in Perrin saying, no,
20   the only things that were designated confidential in Perrin
21   were things that were designated confidential by defendant; the
22   potential that somehow privileged documents were produced in
23   Perrin and might be produced to us, so they had to review each
24   document for privilege; and then the latest version -- the
25   latest issue is the potential date-range issue.

1                These are all documents that were produced in prior
2    litigation about the very same unlawful conduct that's at issue
3    here.  They told Judge Seibel that they would produce them in
4    July of 2016.  They're still not produced.  Now, I'll note
5    that -- or many of them are still not produced.  The majority
6    of data, possibly all data, has now been produced.
7                I'll note that, two days before our last scheduled
8    conference, before the snowstorm, they produced a massive
9    amount of data from Perrin.  We appreciate that, and we'll go
10   through that.  But, based on our review of the Perrin Bates
11   numbers up against the Bates numbers that have been produced
12   from Perrin to us, there are approximately 18,120 outstanding
13   documents still, and there are less than 3,000 non-data Perrin
14   documents that have been produced, meaning that we're still at
15   less than 15 percent of the documents that aren't data having
16   been produced.  They proposed to review each of these documents
17   ostensibly for date range, but it's been many, many months, and
18   that review should have long occurred.  And we were only told I
19   think a couple months ago that that latest review was the
20   latest reason for the delay.
21               And then to go to the substance of their purported
22   concern about dates, these are all documents that relate to the
23   exact same claim that is presently at issue.  To the extent
24   there is an early document, it's still relevant to the
25   foundational policy that we're exploring.  Defendants have

 1    argued that the policy has changed, but the end result that the
 2    drivers are receiving, which is a per-delivery reimbursement,
 3    remains exactly the same.
 4            And the purpose of having date limitations on
 5    discovery is to ease the burden.  There's no burden associated
 6    with defendant making an immediate production.  There isn't a
 7    burden associated with defendant reviewing each document for
 8    date range and withholding it from production.  If that sort of
 9    request had been made to me in July or August, we would have
10    been more amenable to it, but, at this point, after this
11    extensive delay, we would respectfully request that they be
12    ordered to immediately produce the remaining Perrin documents.
13            THE COURT:  Okay.  Thank you.
14            Who wants to talk on behalf of defendants?
15            MR. MAATMAN:  Ms. Merrill.
16            MS. MERRILL:  I will, your Honor.
17            The first thing I want to say is that we believe that
18    this issue has largely been resolved with the large production
19    of documents that we made not long before the last scheduled
20    conference.  There were approximately 144,800 documents
21    produced in the Perrin litigation.  The great, great majority
22    of that was data.  We have produced more than 144,000 of those
23    documents to the plaintiffs.  So there are several hundred --
24    I'm not sure of the exact number, but there are several hundred
25    remaining documents that we are still reviewing.  But, you

1    know, I think, for that reason, this issue has largely been
2    resolved.
3             We would expect to complete review in the next couple
4    weeks, and so that any documents that are within the statutory
5    look-back period in this case, according to the ESI protocol,
6    we would produce in the next few weeks.
7             THE COURT:  So you're still limiting it.  So this
8    issue isn't moot because what the issue -- I mean, the issue of
9    production and timeliness of production I'm not going to get
10   into.  You're continuing to produce.  You're going to produce
11   in the next couple weeks.  But the issue of the range in which
12   you're producing sounds like it's still at issue.
13            Plaintiffs want it not limited to the statutory time
14   frame that's in the ESI production that deals with the
15   discovery of documents that solely relate to the Durling
16   matter.  You're saying, if I'm hearing plaintiffs right and
17   if -- I think I'm part -- you know, hearing from what you have
18   said right now, is that you are only going to produce the
19   Perrin documents for the -- under the statutory time frame in
20   the ESI production that we have during Durling and you're not
21   going to be producing all of the Perrin documents.
22            MS. MERRILL:  That's correct.
23            THE COURT:  Why?
24            MS. MERRILL:  Because, your Honor, there's a
25   statutory period at issue in this case.

1          THE COURT:  For the records in Durling.  I was
2    involved in that.  Very familiar with that.  There was an
3    argument that was made here ad nauseam where we got to the
4    issue.  And I limited it, but I didn't say it was a blanket
5    end-all be-all.  I said that, you know, this is where we were
6    starting and there would be continuing discussion, even on just
7    the Durling case records, that if there is problems going on,
8    we would discuss that date range.
9          But that doesn't address the Perrin.  So tell me why
10   you shouldn't produce all the Perrin documents.
11         MS. MERRILL:  Yes, your Honor.
12         Perrin had a totally different time period and a
13   different policy at issue in that case.  So the policy at PJI
14   changed in the year 2012.  Many of the documents produced in
15   Perrin went all the way back to 2007.  Given that, you know,
16   we're agreeing to produce documents from May 13, 2010 forward,
17   to the extent that documents are within that period and were
18   produced in the Perrin litigation, we are turning them over
19   here, but documents from before that period are simply not
20   relevant to the PJI policy that is at issue in this lawsuit.
21   As we said, the policy changed in the year 2012.
22         MR. FREI-PEARSON:  Your Honor, two responses to that.
23         First of all, assuming counsel were correct that the
24   policy changed in 2012, the statutory period goes back to prior
25   to 2012 in this litigation, so I'm not sure what that gets

1   counsel.

2          Second, we don't agree with the policy change.  In
3   2012, the drivers were reimbursed on a dollar-per delivery
4   rate, a monetary amount for each delivery, which we believe and
5   the Perrin plaintiffs believe was insufficient to compensate
6   them for their actual expenses.  In 2017, the drivers are
7   reimbursed a dollar amount for each delivery which we believe
8   is insufficient to compensate them for their policies.

9          Now, TJI's internal justifications have undoubtedly
10  shifted over time.  What PJI does is they consult with an
11  outside company called Runzheimer to come up with a variety of
12  justifications to justify the rate that they then reimburse the
13  drivers at.  And so their dialogue with Runzheimer has changed,
14  and it's going to be interesting for us to see how that's
15  changed over time, but the fundamental policy about which we
16  are complaining remains exactly the same.  And even if the
17  policy had changed, we have claims in this case, including
18  plaintiff Durling, that go back to prior to 2012.  So I'm a
19  little bit mystified.

20         I just also point out the reason why one has date
21  limitations is to minimize burden.  They already have these
22  documents.  By reviewing them for date range, they're creating
23  burden.  By just turning them over, there is no burden.

24         THE COURT:  Ms. Merrill, do you want to be heard on
25  that burden issue?

1          MS. MERRILL:  The burden is in having to review
2    documents, right?  Within a certain time period, right?  I
3    mean, it doesn't -- for us to simply turn over the documents,
4    the assumption that plaintiffs' counsel is making is that that
5    means that we don't have to review them.  Documents that are
6    produced in this litigation and that are part of the record in
7    this litigation, plainly defendant is going to review those
8    documents, right?  So just turning them over tomorrow doesn't
9    minimize the burden because of course we're going to look at
10   documents prior to turning them over to another side.
11         THE COURT:  These are documents that have been
12   produced already in another case.
13         MS. MERRILL:  Correct, your Honor.
14         THE COURT:  So they do not have to be reviewed prior
15   to production.  Yes, of course, in the course of litigation,
16   you would have to review them because they're part of the --
17   they're part of the -- they'll become part of the documents in
18   this case, and if you weren't involved in Perrin, you might
19   want to review them.  But when we look at burdensomeness under
20   the Federal Rules and when we're looking at burdensomeness
21   under the law, you're looking at the burdensomeness of the
22   production, not the burdensomeness of the job of litigating the
23   case.  So you haven't mentioned the burdensomeness yet of
24   production.
25         MS. MERRILL:  And, your Honor, we are not making

1  burden arguments with regard to the Perrin documents.  We're
2  making arguments with regard to relevance.  So I think the
3  burden is maybe sort of tangential or a nonissue here.  At the
4  end of the day, we're just talking about several hundred more
5  documents for review and production.
6          THE COURT:  So what about plaintiffs' argument that
7  some of the plaintiffs date back before 2012?
8          MS. MERRILL:  So we are not saying that 2012 is going
9  to be our date and we're not producing anything prior to 2012.
10 We will go back to the statutory period, which is May 13, 2010.
11 But I raise the 2012 change in policy because your Honor asked
12 why is it that we wouldn't just turn everything over and, from
13 our perspective, even going back to 2012, right?  I mean,
14 excuse me.  Even going back to 2010, that's going to be
15 addressing a different policy.  But, look, we understand it's
16 within the statutory period, and so we're going to turn it
17 over.  But when you're talking about documents prior to May 13,
18 2010, we don't see how they're relevant to this litigation.
19         THE COURT:  If you want to respond.
20         MR. FREI-PEARSON:  Sure.
21         Your Honor, Perrin was filed in 2009.  I've actually
22 asked counsel if any document productions were made in 2009.
23 They weren't counsel in Perrin, so I don't believe that they've
24 responded on that point.
25         But, again, I do not believe the policy has changed.

1    Certainly none of the drivers who have worked there full-time
2    would say the policy has changed.  They still get reimbursed
3    exactly the same way.
4            To the extent an internal policy has changed, let's
5    say there's a totally new policy in 2012, plaintiff Durling's
6    claims go back to 2010.  So, assuming that the policy was the
7    same from 2009 to 2012, a 2009 document would plainly be
8    relevant.  Furthermore, if it's not relevant, we won't use it
9    or it will not be helpful to us in the case.  But the
10   assumption should be that it's relevant because they all date
11   with the exact same policy, which is how Papa John's reimburses
12   its delivery drivers, and the internal methodology certainly
13   doesn't appear to have changed at any juncture prior to 2012.
14   And again, from our perspective, it's exactly the same.
15           And seeing how Papa John's internal methodology has
16   changed is going to, we believe, go to willfulness because it's
17   going to show that their internal methodology, when they claim
18   they're changing the policy, every internal policy they have is
19   aimed at justifying the low reimbursement rate they pay their
20   drivers, which they have calculated saves them millions of
21   dollars.
22           THE COURT:  Okay.  I'm prepared to rule on this.  And
23   I'm going to read my ruling now into the record.
24           Before the Court is plaintiffs' motion to compel
25   discovery, which is docket number 136.  Plaintiffs seek "all

            1    nonprivileged documents produced by defendant in Perrin v. Papa
            2    John's International, Incorporated, case number 9 Civ. 1335
            3    AGF, Eastern District of Missouri."  Docket number 136, Exhibit
            4    A.  Defendant argues that the production of documents from
            5    Perrin should be limited to documents from the relevant
            6    statutory period, which includes electronically stored
            7    information, hereinafter ESI, created or edited since May 13,
            8    2010 and the documents outside of that period are "generally
            9    irrelevant and not discoverable."  Docket numbers 138,
           10    paragraph 4(d) and 1379 at 1 to 2.
           11            First, defendant mischaracterizes the Court's ruling
           12    on the record at the status conference held on January 11,
           13    2017.  Docket number 139 at 1.  After hearing oral argument,
           14    the Court applied the May 13, 2010 date to the production of
           15    documents.  However, the Court was clear that this date would
           16    remain flexible and could be modified subject to the burden on
           17    the parties.  Indeed, the stipulation order concerning
           18    production of ESI indicates that "should a party discover that
           19    the search and review of the ESI within this date range is
           20    unnecessarily burdensome, then the parties agree to meet and
           21    confer on modifying the date range parameters."  Docket number
           22    138, paragraph 4(d).  Therefore, defendant's contention that
           23    "producing all the documents produced in Perrin would be in
           24    contravention of the Court's January 11, 2017 order," docket
           25    number 139 at 1, misconstrues the Court's order and is without

1   merit.

2       Next, defendant has not provided any reason why the
3   production of all nonprivileged documents produced in Perrin
4   would be burdensome or cite any case law to support their
5   position, nor does defendant provide any convincing reason why
6   the documents produced in Perrin are not relevant to the
7   instant litigation.  Generally, courts allow the production of
8   documents that are relevant to the dispute as long as
9   production of such documents is not unduly burdensome.  Federal
10  Rules of Civil Procedure 26(b)(1).  See also Agerbrink v. Model
11  Services, LLC, No. 14 Civ. 7841(JPO)(JCF), 2017 WL 933095, at
12  *3, (S.D.N.Y. March 8, 2017), compelling broad discovery
13  pursuant to Federal Rules of Civil Procedure 26(b)(1) in a Fair
14  Labor Standards Act class action.

15      Courts in this district have compelled discovery from
16  prior litigation where the request is specific and relevant to
17  the disputed issue and the prior litigation is based on similar
18  allegations.  See Lifeguard Licensing Corporation v. Kozak, 15
19  Civ. 8459(LGS)(JCF), 2016 WL 3144049, at *5, (S.D.N.Y. May 23,
20  2016) compelling production of responsive documents from prior
21  litigations even though prior counsel possess the documents.
22  See, also, Carter-Wallace, Incorporated v. Hartz Mountain
23  Industries, Incorporated, 92 F.R.D. 67 at 70 (S.D.N.Y. 1981)
24  compelling production of deposition transcripts from recently
25  settled litigation even though depositions were subject to

```
 1   protective order; cf Johnson Matthey, Incorporated v. Research
 2   Corp., No. 1 Civ. 8115 (MBM)(FM), 2002 WL 31235717, at *1-2,
 3   (S.D.N.Y. October 3, 2002) denying motion to compel discovery
 4   from prior litigation on the ground that it was not relevant to
 5   the claim or defense at issue.
 6           Indeed, defendant does not object to the production
 7   of documents from Perrin, and the District Court in the Eastern
 8   District of Missouri granted the defendant's motion on sealed
 9   documents in that case for the limited purpose of producing
10   such documents to plaintiffs in the instant action.  Perrin, 9
11   Civ. 1335(AGF), (E.D. Mo,) docket numbers 456, 457.
12           Moreover, courts in this district have allowed
13   discovery outside of the relevant statutory period where the
14   documents are relevant and the production of such documents is
15   not unduly burdensome.  See Deluca v. Sirius XM Radio,
16   Incorporated, No. 12 CV 8239, 2016 WL 3034332, at *2 (S.D.N.Y.
17   May 27, 2016) compelling production of documents outside of the
18   statute of limitations that were likely to be relevant;
19   Khan v. Sanofi-Synthelabo, Incorporated, No. 1 Civ.
20   11423(JSM)(DF), 2002 WL 31720528, at *4 (S.D.N.Y., December 3,
21   2002) compelling production of documents related to company
22   policy that predated applicable statute of limitations, where
23   company policy was at issue, plaintiff's claim was in the
24   statutory period, and defendant had not shown burden.  See,
25   also, Chao v. Gotham Registry, Incorporated, 514 F.3d 280 at
```

1  285 (2d Cir. 2008) noting that "the Supreme Court consistently
2  has interpreted that the Fair Labor Standards Act liberally and
3  afforded its protections exceptionally broad coverage."
4  　　　　　At oral argument today, plaintiffs established, to
5  the satisfaction of this Court, the relevance of the Perrin
6  documents to the instant litigation.  Defendant failed to
7  identify any burden of producing the nonprivileged documents
8  from Perrin.  For the foregoing reasons, plaintiffs' motion to
9  compel discovery is granted.  Docket number 136.
10  　　　　　Okay.  So now we're going to move on to the status
11  conference.
12  　　　　　How is discovery going, other than that issue?
13  　　　　　MR. FREI-PEARSON:  Your Honor, it's going
14  collegially, but much more slowly than plaintiffs would like.
15  We're working together on the ESI protocol, or the ESI search
16  terms.  I know defendants and their counsel are working very
17  hard on that, but we're having a back and forth on the ESI
18  search terms which we still have not reached agreement on.  I'm
19  hopeful we will be able to reach agreement or at least narrow
20  the differences at a point that we can come back before your
21  Honor fairly soon.  At that point, they can produce e-mail.
22  And once e-mail has been produced, we can start taking
23  defense's depositions.  To this point, plaintiffs have only
24  been able to take depositions on documents and data.  So
25  hopefully we will be able to move a little bit more quickly

1   soon.  That's, I think, where it's at.  They have deposed I
2   think four plaintiffs and one-third party witness of a
3   plaintiff, and they have another plaintiff deposition, which I
4   believe, if we have an agreement on a date, will likely take
5   place in April.
6             THE COURT:  To date, you've deposed how many?
7             MR. FREI-PEARSON:  Well, so, your Honor, we've only
8   had one (30)(b)(6) deposition, which has been three witnesses
9   that they designated.
10            THE COURT:  Okay.
11            MR. FREI-PEARSON:  They have deposed I believe --
12  counsel will correct me if I'm wrong -- four drivers with a
13  fifth driver coming up in April, and a manager who put in a
14  declaration on behalf of the driver they've also deposed.
15            We look forward to taking substantive depositions,
16  but we can't until we have the e-mails, and the search terms
17  are taking a while to resolve.
18            THE COURT:  Okay.
19            MR. FREI-PEARSON:  And to that end, I will want to
20  confer more with counsel on this, but I wanted to preview for
21  the Court that plaintiffs will likely seek relief from the
22  close of fact discovery in July given the pace at which
23  discovery has proceeded so far.
24            THE COURT:  Counsel, what's your response to that?
25            MS. MERRILL:  We would generally agree that the

1    parties have been working to resolve the ESI search terms in
2    this matter.  Most recently, that's resulted into broken-down
3    searches that number more than 500.  And so running the test
4    search terms and getting results has been a more cumbersome
5    process than we would have hoped.  But we are also hopeful that
6    the parties will be able to resolve their discussions of ESI
7    search terms in the near term.
8           We have produced over 170,000 pages of documents in
9    this matter.  We've made more than 20 productions.  And so
10   defendant has -- sort of aside from the ESI subject to the
11   search terms, defendant has been working to identify categories
12   of documents that are responsive and to produce those on a
13   rolling basis.
14          THE COURT:  Okay.  What do you think about the
15   extension of time?
16          MS. MERRILL:  Your Honor, we would have to discuss
17   that with our client.
18          THE COURT:  Yes.  In my mind, it's too early.  We're
19   at the end of March.  We have April, May, June and all of July.
20   We have four months.  I think it's way too early to know if
21   you're going to need fact discovery extended.
22          I also firmly believe that you don't have a good
23   idea -- you won't have a good idea at this time how much you're
24   even going to need it extended.  And I don't like granting
25   extensions until I know they're really needed, one, and, two, I

1  know what's needed.  And so I would want the parties to be able
2  to tell me what's left.
3           So I understand you're anticipating needing more
4  time.  At this point, it's denied with leave to renew at a
5  later point, after the parties have a better sense.
6           Now, I know you were just before, this morning, Judge
7  Seibel, and I think that there was a request for a premotion
8  conference to file a motion to strike the declaration of John
9  Hall and to file supplemental declarations.
10          MS. MERRILL:  Yes, your Honor.
11          THE COURT:  What happened as a result of that?
12          MS. MERRILL:  Those motions are moot as a result of
13  the denial of conditional certification, your Honor.
14          THE COURT:  Okay.  So she denied this morning
15  conditional certification?
16          MS. MERRILL:  Yes, that's correct, your Honor.
17          THE COURT:  Okay.
18          So the parties had a mixed day.  One case went -- one
19  decision went one way and the other decision went the other
20  way.
21          Yes, counsel.
22          MR. FREI-PEARSON:  Respectfully, the denial was
23  without prejudice, and we believe we were given a road map.  We
24  congratulate counsel on the result.
25          THE COURT:  Okay.

1              Do you have a time frame?  Just so that I know how
2      things are proceeding on that front as you're doing discovery.
3      Do you have a time frame that Judge Seibel has said you can
4      resubmit or it's just a --
5              MR. FREI-PEARSON:  No time frame was given.
6              Plaintiffs would like to make motions as
7      expeditiously as possible, but I'll, of course, have to consult
8      with my clients and my colleagues.
9              THE COURT:  Okay.  Is there anything else we need to
10     deal with today?  Otherwise, I think what I'll do is schedule
11     another conference.
12             MS. MERRILL:  Nothing else from defense counsel, your
13     Honor.
14             MR. FREI-PEARSON:  No, thank you, your Honor.
15             THE COURT:  Okay.  What's your belief as the
16     appropriate time to do the next conference?
17             MS. MERRILL:  We believe eight weeks would make
18     sense, your Honor.  I think that reflects about what we've been
19     doing in the case so far.
20             MR. FREI-PEARSON:  Assuming we're able to work out
21     the search terms, eight weeks works for plaintiffs as well.
22             THE COURT:  So that's like the end of May, beginning
23     of June, which I think is a good strike, because it's also
24     halfway between that and the end of fact discovery.
25             So, Ms. Hummel, what's my schedule look like then?

 1            THE DEPUTY CLERK:  We could do June 1st.
 2            THE COURT:  What time?  That's a Thursday?
 3            THE DEPUTY CLERK:  That's a Thursday.
 4            THE COURT:  What time?
 5            THE DEPUTY CLERK:  10:30.
 6            THE COURT:  Does that work for everyone?  That's
 7    Thursday, June 1st, at 10:30 a.m.
 8            MS. MERRILL:  Yes, your Honor.
 9            MR. FREI-PEARSON:  Subject to check, your Honor, that
10    should work for plaintiffs.  We'll immediately inform the Court
11    if there's an issue.
12            THE COURT:  Okay.
13            You really should get a pass for your phone.
14            MS. MERRILL:  Is that in person?
15            THE COURT:  Yes.  We're going to do it in person for
16    this case.
17            You come in here enough.  You should get that pass so
18    you can bring your phone in.
19            MR. FREI-PEARSON:  I absolutely agree, your Honor.
20            THE COURT:  Okay.  So June 1st, 10:30, in person for
21    the next status conference.  Anything else, counsel?
22            MS. MERRILL:  No, your Honor.  Thank you.
23            THE COURT:  Thank you.  Have a good day.
24            MR. FREI-PEARSON:  Thank you.
25                             - - - -